1  Mark B. Wilson. - CA State Bar No. 137400
   Eric A. Ybarra – CA State Bar No. 334673
2  KLEIN & WILSON LLP
   4770 Von Karman Avenue
3  Newport Beach, California 92660
   (949) 631-3300; Facsimile (949) 631-3703
4  wilson@kleinandwilson.com; eybarra@kleinandwilson.com

5  Attorneys for Plaintiffs REDONDO MANAGEMENT, LLC and
   MARK J. KOETTING

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        EUREKA DIVISION

11  REDONDO MANAGEMENT, LLC, a          CASE NO. 1:24-cv-6104
    Delaware limited liability company; and
12  MARK J. KOETTING, an individual,

13                 Plaintiffs,           COMPLAINT FOR:
                                         (1) PROFESSIONAL NEGLIGENCE;
14         v.                            (2) BREACH OF WRITTEN CONTRACT;
                                         (3) BREACH OF IMPLIED CONTRACT;
15                                       AND (4) BREACH OF FIDUCIARY DUTY;
    BRADLEY ARANT BOULT CUMMINGS         DEMAND FOR JURY TRIAL
16  LLP, an Alabama limited liability partnership;
    and SAM DAVID SMITH a.k.a. S. DAVID
17  SMITH, an individual,

18                 Defendants.

19

20         Plaintiffs Redondo Management, LLC ("Redondo") and Mark J. Koetting ("Koetting")

21  (collectively, "Plaintiffs"), allege the following against defendants Bradley Arant Boult Cummings

22  LLP ("BABC") and Sam David Smith a.k.a. S. David Smith ("Smith") (collectively, "Defendants")

23  (Plaintiffs and Defendants are collectively referred to as the "Parties").

24                              **JURISDICTION**

25         1.     This Court has jurisdiction to hear and determine the claims presented in this suit

26  pursuant to 28 U.S.C. § 1332(a)(1). The Parties are "citizens of different states," and the amount in

27  controversy exceeds the sum of $75,000, exclusive of interest and costs.

28  / / /

976845

**DIVISIONAL ASSIGNMENT**

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred within this District.

**PARTIES**

3.     Redondo is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Overland Park, Johnson County, Kansas.

4.     Koetting is an individual who resides in the county of Johnson, Kansas.

5.     Plaintiffs are informed and believe, and thereon allege, that BABC is a limited liability partnership organized under the laws of the state of Alabama, with its principal place of business in Birmingham, Jefferson County, Alabama.

6.     Plaintiffs are informed and believe, and thereon allege, that Smith is an individual who resides in Houston, Texas, is an attorney licensed to practice law in the state of Texas, and who at all times relevant, served as a partner of BABC.

7.     Each defendant was the agent, alter-ego, employee, principal, partner, joint venturer, employer, or in some other capacity derivatively responsible for each of the acts of the other defendants.

**STATEMENT OF FACTS**

**A.          Background Of The Tribal Lending Entity Agreement**

8.     In August of 2013, Redondo entered into a Consultant and Independent Contractor Agreement (the "Tribe Agreement") with Clear Loan Solutions ("CLS"), a tribal lending entity ("TLE") organized under the laws of the federally-recognized Native American tribe called Big Lagoon Rancheria ("Big Lagoon").

9.     Koetting previously operated consumer lending platforms and brought over a decade of experience, as well as consumer information and leads, which were then used to develop and expand the consumer lending business governed by the Tribe Agreement.

/ / /

/ / /

/ / /

/ / /

**COMPLAINT; DEMAND FOR JURY TRIAL**

976845

10.     Under the Tribe Agreement, Redondo would serve as the executive director of CLS, managing the day-to-day operations of the consumer lending platform, including marketing, generating leads, underwriting, and loan servicing for and on behalf of CLS. Redondo arranged for the monies to fund the loan program through a related company and generated the leads and arranged for affiliates to put up the capital to finance loans made through the consumer lending platform.

11.     Plaintiffs allege on information and belief, that one purpose of the Tribe Agreement was to allow consumer lending programs to be created that are qualified for sovereign immunity afforded to Big Lagoon. Native American tribes are allowed to do this via compliance with an "arm of the tribe" analysis which essentially requires the tribe to pass a tribal lending code, create a TLE wholly owned by the tribe, with the tribe exercising some control over the tribal entity and establishing a program to ensure compliance with the tribal lending code.

12.     Under the Tribe Agreement, CLS and Big Lagoon were charged with complying with the arm of the tribe requirements.

13.     Throughout the negotiation of the Tribe Agreement and after, Redondo received legal advice from Jennifer Galloway, a Florida attorney, who Plaintiffs allege on information and belief was then operating as a solo practitioner in the State of Florida through her professional association, Jennifer Galloway, P.A. ("Galloway"). Galloway negotiated and participated in drafting the Tribe Agreement for Redondo. Plaintiffs allege on information and belief that CLS was also represented by counsel in negotiating the Tribe Agreement.

14.     In 2017, the relationship between CLS and Redondo became contentious and ultimately terminated on January 8, 2018 when CLS issued a termination letter.

15.     CLS then took control of all bank accounts associated with and used to operate the loan program, even though they contained monies raised by and belonging to Redondo.

16.     Similarly, Koetting's brother, Daniel Koetting ("Dan"), operated a nearly identical relationship with a separate TLE, Green Gate Services, LLC ("Green Gate Services") (also under Big Lagoon's control), by and through an entity called Rockhill Consulting Group, LLC ("Rockhill") (the Green Gate-Rockhill relationship referred herein as the "Rockhill Operation"). At all times, Koetting and Dan kept all operations separate and there was no overlap between Redondo and Rockhill.

**COMPLAINT; DEMAND FOR JURY TRIAL**

1   Plaintiffs allege on information and belief that the Rockhill Operation was significantly larger than
2   Redondo. Plaintiffs estimate that Redondo and CLS's loan program was approximately 30% the size
3   of the Rockhill Operation.

4   **B.        Retention Of BABC**

5          17.    Upon the termination of the Tribe Agreement, Galloway advised Plaintiffs to retain
6   counsel. Galloway provided only one recommendation and insisted Plaintiffs retain BABC, and Smith
7   specifically. On January 10, 2018, Plaintiffs and BABC entered into an Attorney Client Engagement
8   Agreement, a copy of which is attached hereto as Exhibit 1 and is incorporated herein by reference.
9   The Attorney Client Engagement Agreement includes an implied term that BABC would meet the
10  standard of care. Galloway served as Plaintiffs' co-counsel for Plaintiffs, until the representation was
11  consolidated when Galloway joined BABC as a partner in or about April or May 2018.

12         18.    There is no written engagement agreement between Koetting and Defendants.
13  Nevertheless, Defendants served as Koetting's attorney in the dispute with CLS. Accordingly, on
14  information and belief, Plaintiffs allege that Koetting and Defendants entered into an implied-in-fact
15  contract for Defendants to represent Koetting. That implied-in-fact contract included the following
16  terms:  (a) Defendants would represent Koetting in the dispute with CLS; (b) Defendants would meet
17  the standard of care; (c) Defendants would bill reasonable Koetting on an hourly basis at reasonable
18  rates; and (d) Koetting would pay for Defendants' services, so long as they met the terms of the
19  implied-in-fact contract.

20         19.    At the same time Defendants represented Plaintiffs in the dispute with CLS, Defendants
21  also represented Dan and Rockhill in the dispute with Green Gate Services. At no time did Defendants
22  advise Plaintiffs of any actual or potential conflict of interest that could arise out of the representation
23  of Koetting, Redondo, Dan, and/or Rockhill, and Defendants did not get Plaintiffs' informed written
24  consent to represent all those parties, even though there were potential and possibly actual conflicts
25  of interest.

26  **C.        Underlying Arbitration**

27         20.    On or about January 8, 2018, CLS filed a demand for arbitration with the American
28  Arbitration Association ("AAA") against Redondo and Koetting personally, including claims for

4

breach of fiduciary duty, fraud, conversion/theft, misuse of consumer data (Gramm-Leach-Bliley Act), breach of contract, violation of the BLR Consumer Financial Services Regulatory Code, and alter ego asserting that Koetting and Redondo are one in the same. On or about February 14, 2018, Redondo filed a counter demand for arbitration against CLS for multiple breaches of the Tribe Agreement.

21. Even though the Tribe Agreement contains only a permissive arbitration clause under section 8(a)(ii), which provides that either party "*may*" refer disputes regarding their Tribe Agreement to arbitration under the rules of the American Arbitration Association, Defendants never advised Plaintiffs that conventional litigation was an option (and probably a much better option) and never explained the differences (procedurally or substantively) between arbitration and conventional litigation.

22. Plaintiffs are informed and believe that at no time did Defendants evaluate Plaintiffs' claims and/or defenses in the arbitration and did not advise Plaintiffs of the chances of success at arbitration. Plaintiffs are further informed and believe that at no time throughout the arbitration did Defendants update Plaintiffs as to the chances of success, nor did Defendants ever advise of alternative options or early resolution. Rather, Defendants always exuded positivity and all but guaranteed success, despite almost nothing but grim and disappointing results.

23. Pursuant to the Tribe Agreement, on or about March 22, 2018, CLS and Plaintiffs participated in a mediation. Plaintiffs are informed and believe that Defendants filed to ensure that representatives from Big Lagoon and/or CLS with settlement authority would be present at the mediation.

24. The mediation concluded without resolution.

25. After the failed mediation, Plaintiffs, Dan, Rockhill, and CLS and Green Gate Services began to select an arbitrator. CLS and Green Gate Services are collectively referred to as the "TLEs." Plaintiffs, Dan, Rockhill, and the TLEs agreed to allow Gordon Netzorg ("Netzorg") to act as the arbitrator based on the strong recommendation of Smith and Galloway.

/ / /

/ / /

/ / /

976845

**COMPLAINT; DEMAND FOR JURY TRIAL**

26. Plaintiffs allege on information and believe that Netzorg previously worked for and/or with CLS's counsel and had practiced in representing Native American tribes. Plaintiffs allege on information and believe that that Defendants failed to properly vet Netzorg's background before recommending him as an arbitrator. Defendants did not ever advise Plaintiffs of these obvious conflicts.

27. On May 7, 2018, at a preliminary hearing, BABC agreed to an expedited scheduling order, setting the arbitration for September 10, 2018. Of note, BABC also agreed to consolidate claims between Plaintiffs and CLS to be heard with the claims between Green Gate Services and Dan and Rockhill.

28. On information and belief, Defendants did not advise Plaintiffs as to the benefits or pitfalls of consolidating these two cases, and Defendants did not seek permission from Plaintiffs to consolidate the matters. Plaintiffs allege on information and belief that Defendants unilaterally consolidated the arbitrations for their own convenience.

29. Plaintiffs allege on information and believe that consolidation was a poor strategic decision given that Redondo and Rockhill had no operating overlap, and Rockhill significantly overshadowed Redondo in terms of size of the loan operations. Plaintiffs allege on information and belief that Big Lagoon was more concerned with the alleged breaches in the Rockhill Operation.

30. On May 18, 2018, Defendants filed a Motion Relating to Joinder of Parties ("Joinder Motion"), seeking to dismiss Koetting and Dan from the arbitration on the ground that they were not parties to the respective contracts with the TLEs. Despite full access to documents and other supportive evidence, the Joinder Motion was woefully insufficient. In contrast, the TLEs' opposition to the Joinder Motion was packed full of detailed alter ego allegations and documentary support as to Dan and Rockhill but lacked significant evidence regarding Koetting and Redondo. Plaintiffs allege on information and belief that despite this lack of evidence that Koetting and Redondo were alter egos, Defendants failed to effectively raise this weakness to combat the opposition, and the arbitrator denied the Joinder Motion. Ultimately, the arbitrator ruled that the claims against Koetting, personally, would proceed.

/ / /

/ / /

6

**COMPLAINT; DEMAND FOR JURY TRIAL**

31.     Plaintiffs allege on information and belief that Defendants failed to evaluate the alter ego allegations and did not take them seriously. Even after the ruling on the Joinder Motion, Plaintiffs allege on information and belief that Defendants ignored the gravity of the arbitrator's ruling and assured Plaintiffs that everything would be put in the "proper context" at the arbitration.

32.     Between the scheduling order and the arbitration hearing, Plaintiffs allege on information and belief that Defendants did little to prepare for arbitration. Plaintiffs allege on information and belief that Defendants waited until July 2018 to begin serving basic discovery on behalf of Plaintiffs and left no time for any follow up discovery. Plaintiffs allege on information and belief that Defendants did not take any depositions.

33.     When it came to discovery issued to Plaintiffs, Plaintiffs allege on information and belief that Defendants waited until the last-minute to prepare responses and request necessary information, often causing Plaintiffs to work late nights and up to the deadlines to provide information and documents. Plaintiffs allege on information and belief that this last-minute work caused Defendants to produce documents and responses without review or concern for privacy or privilege protections.

34.     Additionally, despite the clear indication that experts were necessary, Defendants failed to engage or hire any experts to present testimony at the arbitration.

35.     In August 2018, Defendants first advised that they would "need some additional time to pull together information to be able to present our case. It is [Defendants] recommend [*sic*] that we ask the arbitrator to move the hearing to November." On August 21, 2018, three weeks short of the arbitration, Defendants filed a request to continue the arbitration to November.

36.     In the request, Defendants stated, "Based on the current state of discovery, it has become evident that this case is not ready for Arbitration in September.  In addition to the above, neither party has taken depositions, designated experts, etc." Defendants conceded: "At this point, it is just not possible to prepare this case for hearing in three weeks."

37.     On August 26, 2018, the arbitrator denied the request for continuance. In his ruling, the arbitrator found that there was no good cause for a continuance, stating:

/ / /

/ / /

**COMPLAINT; DEMAND FOR JURY TRIAL**

976845

> [M]uch of the compression of the time available for discovery has been caused by Claimants' own substantial delay in making timely disclosures. This is not a finding of wrongdoing, but it is *a determination that Claimants have caused much of the delay which they argue results in this case not being ready for arbitration in September*.

(emphasis added)

38.     Defendants caused the referenced delay.

39.     On the same day arbitrator denied the request for a continuance, Galloway, then an attorney with BABC, conveyed a settlement proposal from both TLEs, settling all claims in the arbitration for $2.5 million. Plaintiffs allege on information and belief that BABC advised against accepting this offer or even making a counterproposal.

40.     The denial of the continuance left Defendants with just two weeks to prepare for the hearing, without having taken a single deposition, in the absence of experts to present an accounting, damages or arm of the tribe analysis, and with no damage model.

41.     Defendants did next to nothing to prepare Koetting to testify at the arbitration, on his personal behalf and on Redondo's behalf, spending as little as one hour with Koetting. Neither Smith, nor Galloway, explained the process of presenting testimony, or presented Koetting with documents or notes, nor did they engage in any mock examinations. Late the night before the arbitration Smith tried to remedy this failure, but it was far too late to do so.

42.     Plaintiffs allege on information and belief that Defendants focused their little preparation on Plaintiffs' affirmative claims, and little to no time preparing to defend against the TLEs' claims, especially the alter ego allegations. Plaintiffs allege on information and belief that Defendants were more focused on their representation of Dan and Rockhill, not Plaintiffs.

43.     Just before arbitration commenced, Defendants informed Plaintiffs that a key witness, Galloway, would not appear as a witness on Plaintiffs' behalf, despite that she was to serve as co-counsel at the arbitration. This was surprising because Galloway was the attorney who negotiated the Tribe Agreement and advised Redondo throughout its relationship with CLS. Smith advised that Galloway was ill. Plaintiffs allege on information and belief that Galloway did not want to testify under oath due to an unrelated personal matter because testifying might expose her to liability. On information

**COMPLAINT; DEMAND FOR JURY TRIAL**

and belief, Plaintiffs allege that Defendants did not take any steps to secure Galloways' testimony by videotape, deposition, or declaration.

44.     Once Netzorg heard of Galloway's unavailability, he offered a continuance. Over Plaintiffs' objection, Smith declined the continuance.

45.     BABC and Smith did not disclose anything to Plaintiffs regarding the conflict of interest that arose between their clients' interests and Galloway's interests in not testifying under oath.

46.     The arbitration was an unmitigated disaster. Defendants' lack of preparation was apparent from the outset. Plaintiffs allege on information and belief that Defendants failed to object to the TLEs' "expert," failed to object to the presentation of a speculative damage model, failed to present the evidence necessary to prove Plaintiffs' defenses and failed to rebut the alter ego allegations.

47.     Plaintiffs allege on information and belief that the TLEs' expert relied almost exclusively on documents and information related to Rockhill and Dan and offered little evidence regarding Redondo and Koetting. Despite this failure, Plaintiffs allege on information and belief that Defendants did not discredit the evidence or object to it on Plaintiffs' behalf.

48.     Plaintiffs allege on information and belief that Defendants' failure to properly prepare Koetting for examination lead to a devastating cross-examination.

49.     The arbitration hearing concluded on September 12, 2018. The arbitrator permitted the parties to file closing briefs. Plaintiffs allege on information and belief that Defendants' closing brief was woefully insufficient. Among other failures, Defendants did not adequately rebut the arguments and evidence the TLEs presented including the TLEs' damages analysis and the differences between Plaintiffs and the Rockhill Operation.

50.     Following an adverse interim award, Netzorg issued the final adverse ruling on December 26, 2018. The final ruling found wholly for the TLEs, denied all of Plaintiffs' claims, and found Koetting as an alter ego of Redondo, and therefore personally liable. Netzorg awarded damages in favor of the TLEs and against Plaintiffs totaling $3,159,443, attorney fees in the amount of $193,822.50, and prejudgment interest on the combined amount of 7.25% per annum, from May 31, 2018 until paid.

/ / /

976845

51.     After the final award, Defendants tried to address issues in the final award, via a Motion for Modification. In support, Defendants presented a report prepared by an expert that Plaintiffs insisted that Defendants retain. Plaintiffs allege on information and belief that the expert concluded that Plaintiffs' liability was much less than the final award—approximately in the range of $100,000-$300,000.

52.     Plaintiffs allege on information and belief that this belated expert-supported evidence should have been presented *during* the Arbitration.

53.     Netzorg summarily denied the motion since it sought a redetermination of the merits, not correction of "clerical, typographical, or computational errors" allowed to be addressed by such motions under AAA Rules.

**D.       The Subsequent State Court Action And Appeals**

54.     The TLEs filed a Petition to Confirm the Arbitration Award in the Humboldt County Superior Court in a case entitled *Green Gate Services, LLC et al., v. Dan Koetting, et al.,* Humboldt County Superior Court, Case No. CV190030 (the "State Court Action"). BABC's attorneys appeared *pro hac vice* in the State Court Action for Plaintiffs, Dan, and Rockhill.

55.     Defendants' attempts in the State Court Action to get Koetting and Dan dismissed and avoid personal liability as alter egos were unsuccessful. On July 11, 2019, the Superior Court entered judgment against Plaintiffs, Dan, and Rockhill.

56.     Plaintiffs, Dan, and Rockhill appealed the judgment.

57.     Plaintiffs allege on information and belief that while the appeal was pending, the TLEs assigned their rights, title, and interest in the judgment to another tribal entity called JPV I, L.P. ("JPV").

58.     Plaintiffs allege on information and belief that confirmation of the judgment as to the individuals, including Koetting, has been marred with appeals (see e.g. *JPV 1 L.P. v. Koetting*, 88 Cal. App. 5th 172 (2023)), and has yet to be confirmed. However, in April 2024, the case was remanded back to the Superior Court, and Plaintiffs anticipate that judgment will be entered against Plaintiffs soon.

/ / /

**COMPLAINT; DEMAND FOR JURY TRIAL**

976845

**E.**       **Plaintiffs Would Have Received A Better Result At Arbitration**

59.     Plaintiffs would have obtained a better result if Defendants had acted as reasonably careful attorneys.

60.     The same harm would not have occurred anyway without Defendants' conduct.

61.     Plaintiffs allege on information and belief that Defendants fell below the standard of care as alleged in this complaint. Among other mistakes, Defendants failed to:  (a) competently evaluate the conflicts of interest triggered by Defendants' representation of all Plaintiffs, Dan, and Rockhill and obtain Plaintiffs' informed written consent to accept the representation; (b) competently evaluate the strengths of the claims raised against Plaintiffs and advise Plaintiffs what to do about those claims; (c) competently evaluate Plaintiffs' risks of losing and competently advise Plaintiffs about settlement; (d) competently evaluate and present Plaintiffs' claims; (e) competently prepare for arbitration and present Plaintiffs' case; and (f) competently evaluate the alter ego allegations against Plaintiffs and advise Plaintiffs of same.

62.     Alternatively, Plaintiffs allege on information and belief that had Defendants competently prepared for the arbitration (including conducting sufficient discovery, taking depositions, designating experts) and competently presented Plaintiffs' case, then Plaintiffs would have prevailed at the arbitration.

63.     Absent Defendants' negligence the damages awarded against Plaintiffs would have been far less, and the arbitrator would not have imposed alter ego liability upon Koetting. Further, Plaintiffs allege on information and belief that Defendants' negligence cost Plaintiffs substantial amounts to mitigate the damages, attorney's fees and other costs in the State Court Action, the bond, and the appeals.

64.     Plaintiffs allege on information and belief that as a proximate result of Defendants' wrongful conduct herein alleged, Plaintiffs have suffered damages of no less than $5 million.

65.     Plaintiffs allege on information and belief that Defendants' services in the arbitration were of little to no value, and Defendants should also disgorge the fees Plaintiffs paid them.

/ / /

/ / /

**COMPLAINT; DEMAND FOR JURY TRIAL**

976845

**F.      Defendants Continued To Represent Plaintiffs Through October Of 2019 And Agreed To Toll The Statute Of Limitations.**

66.     Defendants continued representing Plaintiffs through at least September 27, 2019.

67.     On September 11, 2020, Plaintiffs and Defendants entered into an agreement tolling the applicable statutes of limitations for the claims asserted herein. This tolling agreement has been continuously extended, with no gaps or breaks, through August 30, 2024.

**FIRST CAUSE OF ACTION**

**FOR PROFESSIONAL NEGLIGENCE**

**(By All Plaintiffs Against All Defendants)**

68.     Plaintiffs incorporate by reference paragraphs 1 through 67 of this complaint as though fully set forth.

69.     Defendants were Plaintiffs' attorneys in the arbitration and the subsequent State Court Action.

70.     As Plaintiffs' attorneys, Defendants had a duty to provide legal services consistent with the standard of care for attorneys in California, Texas, and/or Alabama; i.e., the duty to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

71.     Smith held Defendants out has having expertise in the applicable law and held himself out as Board Certified Legal Specialists in Consumer and Commercial Law, thus further touting his qualifications.

72.     In representing Plaintiffs, Defendants performed legal services below the standard of care for the legal profession, and, therefore, breached their duty of care to Plaintiff.

73.     Among other ways, Defendants fell below the standard of care as described above.

74.     Plaintiffs would have obtained a better result in both the arbitration and the subsequent State Court Action if Defendants had acted as reasonably careful attorneys. The same harm would not have occurred anyway without Defendants' conduct.

75.     As a proximate cause of Defendants' negligence, Plaintiff suffered damages in an amount to be proven at trial, but not less than $5 million, subject to proof at trial.

/ / /

12

**COMPLAINT; DEMAND FOR JURY TRIAL**

**SECOND CAUSE OF ACTION**

**FOR BREACH OF WRITTEN CONTRACT**

**(By Redondo Against BABC)**

76.     Redondo incorporates by reference paragraphs 1 through 67 and 69 through 75 of this complaint as though fully set forth.

77.     Redondo entered into the Engagement Agreement with BABC. (Exhibit 1) Redondo performed all the significant things that the Engagement Agreement required it to do, except for those obligations that it was excused or prevented from performing.

78.     BABC breached the Engagement Agreement by failing to provide competent legal services consistent with the applicable standard of care.

79.     Redondo did not receive fair value for the fees it paid BABC.

80.     As a result of BABC's breach of the Engagement Agreement, Redondo has been damaged in the amount of approximately $90,000, subject to proof at trial, together with interest as provided by law.

**THIRD CAUSE OF ACTION**

**FOR BREACH OF IMPLIED IN FACT CONTRACT**

**(By Koetting Against BABC )**

81.     Koetting incorporates by reference paragraphs 1 through 67, 69 through 75, and 77 through 80 of this complaint as though fully set forth.

82.     Koetting entered into an implied in fact contract with Defendants for legal services created by the parties' conduct.

83.     The Parties' conduct was intentional, and each knew, or had reason to know, that the other party would interpret the conduct as an agreement to enter into a contract.

84.     Koetting performed all the significant things that the implied in fact contract required him to do, except for those obligations that it was excused or prevented from performing.

85.     BABC breached the Engagement Agreement by failing to provide competent legal services consistent with the applicable standard of care.

86.     Koetting did not receive fair value for the fees he paid BABC.

976845

87.     As a result of BABC's breach of the implied in fact contract, Koetting has been damaged in the amount of approximately $90,000, subject to proof at trial, together with interest as provided by law.

## FOURTH CAUSE OF ACTION

### FOR BREACH OF FIDUCIARY DUTY

### (By All Plaintiffs Against All Defendants)

88.     Plaintiffs incorporate by reference paragraphs 1 through 67, 69 through 75, 77 through 80, and 82 through 87 of this complaint as though fully set forth.

89.     Defendants, as a matter of law, owed fiduciary duties to Plaintiffs of undivided loyalty, integrity, diligence, candor, communication, full and fair disclosure, and utmost good faith.

90.     By coming to California to undertake the representation herein alleged, and by acting as Plaintiffs' legal counsel as herein alleged, Defendants, and each of them, became subject to the Cal. R. of Professional Conduct, the Cal. State Bar Act, and the fiduciary obligations of lawyers toward their clients.

91.     Defendants breached their fiduciary duties to Plaintiffs as well as those duties established by applicable provisions of the Cal. State Bar Act, the Cal. Bus & Prof. Code, and the Cal. R. of Prof. Conduct, including, without limitation, former rules 3-110, 3-310, 3-500, 3-700(D) of the California Rules of Professional Conduct, and rules 1.1, 1.4, 1.7 and 1.16(e)(1), of the Rules of Professional Conduct that became effective November 1, 2018, and other applicable rules and statutes.

92.     Among other things, Defendants breached such fiduciary duties to Plaintiffs by the following conduct:

- Not providing competent and diligent representation;
- Not disclosing conflicts of interest and obtaining Plaintiffs' informed written consent to conflicts of interest;
- Not disclosing and advising Plaintiffs regarding potential defects in the CLS Tribe Agreement that Galloway drafted before her tenure at BABC and how that could affect Plaintiffs' claims and defenses in the arbitration;

/ / /

976845

- • Failing to advise, consult with and communicate with Plaintiffs regarding foreseeable risks in the arbitration, and how Plaintiffs' goals could be achieved;

- • Failing to advise, consult with and communicate with Plaintiffs regarding the risks and benefits of settlement, when the opportunity for reasonable settlement existed; and

- • Failing to deliver the entire client file upon Plaintiffs' reasonable request therefor, and concealing, and continuing to conceal to the present day, the content of the client file from Plaintiffs including but not limited to the internal communications among BABC personnel, research, memoranda, and work product to which the Plaintiffs are entitled.

93.     Plaintiffs placed confidence, trust, good faith, and reliance upon the conduct and behavior of Defendants.

94.     As a proximate result of the wrongful conduct alleged above, Plaintiffs have suffered at least $5 million in damages, subject to proof at trial.

95.     Defendants' conduct was a substantial factor in causing Plaintiffs' damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants.

**As to the First and Fourth Causes of Action:**

1.     Damages according to proof of not less than $5 million.

**As to the Second and Third Causes of Action:**

1.     Disgorgement of all fees paid to Defendants by Plaintiffs according to proof, but in the amount of approximately $90,000.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT; DEMAND FOR JURY TRIAL**

976845

1 | **As to All Causes of Action:**

2 |         1.        Prejudgment interest;

3 |         2.        Costs of suit; and

4 |         3.        Any and all relief the court may deem just and proper.

5 |                                                    Respectfully submitted,

6 |                                                    KLEIN & WILSON LLP

7 |

8 | Dated:  August 28, 2024                    By: _/s/ Mark B. Wilson_____
                                                          Mark B. Wilson
9 |                                                    Attorneys for Plaintiffs Redondo Management,
                                                    LLC and Mark J. Koetting
10 |

11 |                          **JURY TRIAL DEMANDED**

12 |         Pursuant to Fed. R. Civ. P. 38, Plaintiffs Redondo Management, LLC and Mark J. Koetting

13 | hereby demand a trial by jury as to all issues so triable.

14 |                                                    Respectfully submitted,

15 |                                                    KLEIN & WILSON LLP

16 |

17 | Dated:  August 28, 2024                    By: _/s/ Mark B. Wilson_____
                                                          Mark B. Wilson
18 |                                                    Attorneys for Plaintiffs Redondo Management,
                                                    LLC and Mark J. Koetting

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

976845

**COMPLAINT; DEMAND FOR JURY TRIAL**