**EXHIBIT R**

| | |
|---|---|
| **From:** | Anderson, Jeff |
| **Sent:** | Thursday, April 11, 2019 12:36 PM PDT |
| **To:** | Mark K; Dan. K |
| **CC:** | Allen, Wendell |
| **Subject:** | Humboldt Superior Court Hearing |

Mark and Dan –

Here's my report from the hearing in the Humboldt County Superior Court on Monday – a quick summary, followed by a more detailed summary of the arguments.

Overall, the hearing went as expected; there were no surprises from the judge or the other side. The judge was attentive and took lots of notes throughout the hearing, but only asked two or three questions. My sense was that she had read some of the papers before the hearing but had not yet dug in to the substantive issues on vacatur of the award. The judge said she intends to deny our motion to quash the summons as to Mark, but she had not decided how she would rule on our other motions --- the motion to dismiss as to Dan (which will apply to Mark as well) and the petition to vacate the award. She didn't give any indication during the hearing that she was leaning one way or the other on those motions. I asked our local counsel, Nancy Delaney, when she thought the judge would issue her orders, and she said she thought it would be within the next couple weeks. She said this judge generally acts promptly, and she heard the judge tell the clerk that she would be out of town for a week at the end of the month; Nancy suspects that the judge will want to get these orders out before then. We will be on the lookout for those orders and pass them along as soon as we see them.

* * *

The hearing lasted about an hour and fifteen minutes. Nancy Delaney handled the argument on our motion to quash, and then I handled the arguments on our motion to dismiss and our petition to vacate the award. Brendan Johnson handled the arguments for the other side. The judge allowed our side to make the opening argument and then a brief reply argument on each motion. The arguments from both sides tracked the arguments made in the opposition and reply briefs.

1. On the motion to quash, we argued that there was no basis for general jurisdiction or specific jurisdiction over Mark because he's a resident of Kansas and he has no contacts with California that relate to the arbitration. The other side said Mark should be subject to jurisdiction in California because his company did business with California residents and that business was the subject of this dispute. We said that's not the right analysis, because this suit is not about the underlying business dispute but about the validity of the arbitration award. Although the judge said she intends to deny our motion, she did not give specific reasons from the bench.

2. On the motion to dismiss, we argued that Mark and Dan never consented to arbitration and thus never should have been forced to arbitrate the claims made against them. Only Rockhill and Redondo had agreed to arbitration, and so the arbitrator had no power to determine the rights and liabilities of the individuals. The other side argued (as they did in their opposition brief) that (1) Mark and Dan waived any objection to the arbitrator's jurisdiction by asking the arbitrator to rule on the objection and then by participating in the arbitration and (2) the arbitrator found that Rockhill and Redondo were alter egos of Mark and Dan, such that the arbitration provision could be applied to Mark and Dan. We responded that Mark and Dan had made a proper, formal objection to the arbitrator's jurisdiction and

**EXHIBIT R-1**

then defended themselves in the arbitration only after the arbitrator overruled the objection. We explained that under the cases cited in our briefs, that was the proper way to preserve the objection to the arbitrator's jurisdiction. We also argued that the arbitrator did not, in fact, make any finding of alter ego in the order compelling Mark and Dan to arbitrate; all he said was that GGS and CLS had made allegations that, if proven, would put in question several of the alter ego factors. What the arbitrator actually found was that Mark and Dan were not allowed to object to arbitration because their alleged conduct was "intertwined" with the contracts containing the arbitration provisions. We explained that the "intertwined" standard was the wrong legal standard to apply, and the other side hasn't shown otherwise.

The judge asked me one question on this motion, relating to the arbitrator's order that GGS and CLS couldn't sue Mark and Dan in court while the arbitration was pending. She asked me whether, if GGS and CLS had sued Mark and Dan in court, we wouldn't have argued that claims against Mark and Dan must be arbitrated. I said we wouldn't have taken that position, because Mark and Dan weren't parties to the arbitration agreement. I also said the arbitrator's order was a stipulated/agreed order whereby everyone agreed that this dispute would be dealt with in one forum at a time, not in arbitration and court <u>at the same time</u>. So the other side couldn't properly characterize that order as Mark and Dan using the arbitration to gain some advantage for themselves.

3. On the petition to vacate the award, we began by emphasizing the importance of the judge's reviewing the arbitration award to determine whether the arbitrator exceeded his powers. We said arbitration is important, and the law favors arbitration, because it's a matter of agreement between the parties. So even though judicial review of arbitration awards is limited, Congress and the California Legislature have determined that an award should be set aside where the arbitrator strays beyond the parties' agreement and exceeds the powers granted to him by the agreement. When the arbitrator exceeds his powers, the parties no longer get what they bargained for in the arbitration agreement. We argued that there were two important limitations on the arbitrator's powers here: (1) the identities of the parties to the contracts, who are the only parties over whom the arbitrator could exercise jurisdiction, and (2) the limitation of remedies in the arbitration provision, which said that the remedies available in the arbitration were limited to enforcement of the provisions of the Agreements. Since we had already discussed issues relating to the arbitrator's jurisdiction over Mark and Dan, I focused on the limitation of remedies and especially the arbitrator's failure to apply the 1.5% formula in determining the damages for the lost loans.

I said the limitation of remedies meant that any breach-of-contract damages must be tied to the specific provisions of the Agreements. For lost loans, the damages must be tied to the contractual compensation formula, which called for GGS and CLS to receive 1.5% of the combined active loan advances. The arbitrator exceeded the limitation of remedies when he awarded the loan principal amounts, because (1) the loan principal amounts are the amounts that were paid out to borrowers, not amounts paid to GGS and CLS, and (2) GGS and CLS were never entitled to the loan principal amounts under the compensation formula. A couple of times I referred to Shawna Neyra's testimony at the hearing that the measure of damages for lost loans was reduced payments under the 1.5% formula. So everyone acknowledged the 1.5% formula, but the arbitrator inexplicably failed to apply it. I said the correct damages figure for lost loans was zero, because GGS and CLS failed to present evidence showing what they would have received absent the alleged breach. But at the very least, the arbitrator was required to apply the 1.5% formula in calculating the damages for lost loans. Failure to do so resulted in a significant windfall award, contrary to Delaware law. I also briefly addressed the other damages issues --- the failure to acknowledge expenses paid pursuant to Section 5(c), the failure to acknowledge amounts due

**EXHIBIT R-2**

at the time of termination pursuant to Section 5(c), and the Legal Defense Fund --- along the lines of our reply brief. I told the court that this case is precisely the reason why the law gives courts authority to set aside arbitration awards when the arbitrator exceeds his power.

The judge said we would have to stop at noon, which left Brendan about 10 minutes to respond to our arguments. He said Rockhill and Redondo breached the Agreements by moving customers to other lenders and doing what the arbitrator said they did, GGS and CLS can't get a remedy from Rockhill and Redondo so they need a judgment against Mark and Dan as alter egos, and the arbitrator didn't use the 1.5% formula because the damages were actually for misuse of customer data, etc. Brendan said the arbitrator had wide discretion to fashion a remedy.

The judge allowed me to make a brief reply, so I wrapped up by saying that while an arbitrator ordinarily has discretion to fashion a remedy, this arbitrator did not have such discretion --- because the parties, in their Agreements, had specifically limited his power. The whole point of this case is that an arbitrator must stay within the bounds set by the parties' contracts, and here the parties said the remedies available in arbitration were limited to enforcement of the provisions of the contracts. The arbitrator ignored that limitation and awarded damages far in excess of the compensation called for by the Agreements, which means that his award must be set aside.

As noted above, the judge said she was not yet prepared to make a ruling on the motion to dismiss or the motion to vacate the award.

You can tell from this recap that the arguments at the hearing closely tracked the arguments set forth in both sides' written papers. Based on her attentiveness and note-taking at the hearing, I am hopeful that the judge will give the papers a careful read before reaching her decision. We will let you know as soon as we see her orders.

Let us know if you have any questions.

Jeff



**Jeffrey M. Anderson**
Attorney
e: janderson@bradley.com  w: bradley.com
d: 205.521.8173
Bradley Arant Boult Cummings LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, AL 35203-2119
LinkedIn |Facebook |Twitter |Instagram |Blogs | My Bio

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**EXHIBIT R-3**