**EXHIBIT 3**

## AMENDED AND RESTATED CONSULTANT AND INDEPENDENT CONTRACTOR AGREEMENT
### AUGUST 30, 2013 with retroactive effect to DECEMBER 27, 2012

This Amended and Restated Consultant and Independent Contractor Agreement (this "Agreement"), is made and entered into effective as of August 30, 2013 and hereby amends and restates, in its entirety, the December 27, 2012 Consulting Agreement ("Effective Date"), entered into between Clear Loan Solutions ("CLS"), an entity organized under the laws of the Big Lagoon Rancheria Nation, a federally-recognized Indian tribe (the "Tribe"), and wholly owned by the Tribe and Redondo Management, LLC ("Contractor"), a company located in Delaware in order to incorporate amendments agreed to by and between CLS and Contractor effective August 30, 2013, specifically including but not limited to the Tribe's adoption of a consumer financial services regulatory code and ordinance, and to make such amendments both CLS and Contractor agree more accurately reflect the operation of the CLS and the role of the Contractor. This Agreement and the terms provided for herein shall be retroactively effective to December 27, 2012. CLS and Contractor may be individually referred to as a "Party" and, collectively, as the "Parties."

### RECITALS

WHEREAS, the Tribe is a federally-recognized American Indian tribe. The Tribe possesses sovereign governmental authority pursuant to the Tribe's inherent and recognized powers of self-government; and

WHEREAS, in furtherance of its objectives of economic self-sufficiency and political self-determination, the government of the Tribe has authorized the operation of a Business Council to implement all economic and commercial development for the Tribe and said Business Council has approved the Big Lagoon Rancheria Financial Services Ordinance in accordance with Tribal law in order to support a consumer lending program, and has formed several entities, each an arm of the Tribe explicitly possessing the sovereign immunity of the tribal government, to engage in facets of the consumer lending program, including CLS which offer goods and services from within the Indian Country of the Tribe; and

WHEREAS the Tribe has established CLS as an instrumentality of the Tribe to advance the economic development of the Tribe and its Members, and particularly to promote the self-sufficiency of the Tribe and the socioeconomic needs of its members; and

WHEREAS, CLS seeks to retain an experienced independent contractor to serve (through its designated employee) as the executive director of CLS in order to manage, advise and assist CLS and its Board of Directors in the day to day operations of its business; and

WHEREAS, Contractor has represented to CLS that it possesses the requisite skill and expertise in this industry, and has a sufficient familiarity with the consumer lending program to ensure that CLS acts in compliance with the applicable law.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1

201398011

CONFIDENTIAL

REDONDO 010248

**EXHIBIT 3-1**

## AGREEMENT

1.    **Definitions.** Capitalized terms used throughout this Agreement shall have the definitions as used below.

a.  "Board of Directors" means the Board of Directors of Green Gate Services, exercising control over CLS.

b.  "Bank" refers to the bank wherein CLS holds accounts in its name for purposes of conducting its business.

c.  "Business Council" means the governing body of the Big Lagoon Rancheria Nation of all economic and commercial development for the Tribe.

d.  "Consumer Lending Program" means Consumer loans offered by CLS to Applicants who apply for a consumer loan through the internet or other channels under criteria established by CLS and in compliance with applicable Tribal Law and the Big Lagoon Rancheria Consumer Financial Services Ordinance and Code. CLS shall have the exclusive right to discretion whether to make or not make any loans, decline to offer a loan to any particular consumer.

e.  "Code" means the Big Lagoon Rancheria Consumer Financial Services Code, as may be amended from time to time, and approved and adopted by the Big Lagoon Rancheria Business Council, pursuant to the Tribe's Constitution and subsequent Resolutions.

f.  "Executive Director" shall mean the position created and filled by the power and authority of CLS, to be performed by Contractor pursuant to the terms of this Agreement.

g.  "Law" means any and all Tribal and federal law applicable to the operation of the Consumer Lending Program, including any applicable regulatory authority, agency or body asserting jurisdiction pursuant to such applicable Law. This shall not include state law.

h.  "Losses" means all out of pocket costs, damages, losses, fines, penalties, judgments, settlement and expenses, including, without limitation, attorneys' fees, disbursements and court costs.

i.  "Net Revenues" means gross revenues of CLS derived from its performance of the Consumer Lending Program, less all operating expenses, including but not limited to employee and Contractor-related costs, bad debt loss, agreements with Third Party Service Providers and/or legal counsel.

2

2013930.1

CONFIDENTIAL

REDONDO 010249

**EXHIBIT 3-2**

j.  "Ordinance" means the Big Lagoon Rancheria Consumer Financial Services Ordinance, as may be amended from time to time, and approved and adopted by the Big Lagoon Rancheria Business Council, pursuant to the Tribe's Constitution and subsequent Resolutions.

k.  "Third Party Service Provider" means those vendors or third parties necessary to assist both CLS and Contractor perform its day-to-day business, including but not limited to credit decisioning software, call center services, and loan management systems.

l.  "CLS" means a lending company or companies established as wholly owned Tribal entities formed by and authorized pursuant to Tribal law, to engage in the Tribe's Consumer Lending Program.

m.  "Regulatory Authority" means the Tribal governmental authority created pursuant to a Big Lagoon Rancheria Resolution and responsible for serving as the Tribe's regulator of the Consumer Lending Program, its Tribal businesses, and all Lender, Vendor and Employee Licensees, as such terms are defined in the Resolution.

2.  **Appointment as Executive Director and Consultant.** As of the Effective Date, as illustrated through the execution of this Agreement and the appropriate resolution of the Board of Directors of CLS, Contractor shall be hired as a consultant to CLS and appointed as Executive Director. CLS shall provide such resolution approving this Agreement and the hiring of Contractor to Contractor upon execution of this Agreement.

a.  Independent Contractor Status. The Parties agree that Contractor shall be an independent contractor. Contractor may not receive any fringe benefits or other perquisites that CLS may provide to its employees. Contractor shall be responsible for paying all taxes on payments received pursuant to this Agreement and CLS shall have no obligation to withhold taxes from amounts payable to Contractor hereunder. Contractor indemnifies and holds CLS harmless of any obligation that may be imposed on CLS related to this Agreement to pay in withholding taxes or similar items.

3.  **Duties and Limitations of Executive Director.** Contractor shall manage and perform tasks, with direction and input from the CLS Board of Directors, in running the day-to-day operations of CLS and such services shall include, but not be limited to the following:

a.  Supervision. Contractor will be primarily responsible for the supervision, management, and oversight of Tribe's Consumer Lending Program, the performance of its contractual obligations, contacts with Third Party Service Providers, and the Bank, among other things and will report directly to the CLS Board of Directors. Contractor will also manage and facilitate the acquisition of capital ("Capital") from certain investors ("Investors").

3

CONFIDENTIAL

20139301

REDONDO 010250

**EXHIBIT 3-3**

b. Interaction with Third Party Service Providers. Contractor shall be responsible for identifying, negotiating, and contracting with vendors and other necessary Third Party Service Providers, as required to assist CLS in the operation of its business. It is contemplated that Third Party Service Providers may include marketing, risk assessment, software, customer service support, and other similar services. Both parties agree that all fees and obligations from contracts with Third Party Service Providers shall be the sole responsibility of CLS. Contractor shall have the ability to sign agreements with Third Party Service Providers to bind CLS, *provided however*, any such agreement requesting or requiring a waiver of sovereign immunity by CLS shall be presented for review and approval to the Board of Directors. Contractor has no authority, permission, or legal basis to waive the sovereign immunity of the Tribe, CLS, or any other entity, subdivision or subunit of the Tribe. Any and all purported waivers of sovereign immunity of CLS must be accompanied with an approving and authorizing resolution of the Board of Directors, which may authorize Contractor, or a member of the Board of Directors to sign, at its sole and absolute discretion.

c. Regulatory Compliance. Contractor shall take reasonable measures to ensure compliance with CLS's day-to-day activities as required by all applicable Law, and shall recommend and take reasonable measures to ensure that all Third Party Service Providers engaged to act on behalf of CLS comply with all applicable Law. Contractor shall cooperate with the Regulatory Authority, and may be subject to licensure by the Regulatory Authority as a condition of his retention under this Agreement. Contractor shall also consult with the Board of Directors and the Regulatory Authority regarding development and implementation of controlling regulations and a comprehensive audit and/or compliance management program to safeguard the operation of the Tribe's Consumer Lending Program.

d. Reporting Requirements and Financial Statements. Contractor shall be responsible for preparing monthly, quarterly, and annual financial statements for the CLS Board of Directors.

e. Consumer Communications. Contractor shall promptly attempt to resolve any and all material consumer complaint communications and shall provide timey reports to the CLS Board of Directors, as required.

f. Communication with Legal Counsel. Contractor shall correspond directly with CLS's legal counsel, as appropriate, to address any issues requiring legal review, without needing to first obtain the express written consent of the Board of Directors. Such engagement with legal counsel, and legal counsel's billed time, shall be an operating expense of CLS. Nothing in this paragraph shall limit Contractor from contacting its own legal counsel if it so desires in its sole discretion, provided however that such expense shall be an expense of Contractor, not CLS.

4

CONFIDENTIAL

2013930.1

REDONDO 010251

**EXHIBIT 3-4**

g. Lease of Contractor's Intellectual Property. During the term of this Agreement, Contractor will provide CLS a non-exclusive license to use Intellectual Property owned or licensed by Contractor as contemplated hereunder. Such Intellectual Property shall include but not be limited to websites, domain names, business names, marketing and underwriting criteria, trademarks, logos and copyrights (collectively, "Intellectual Property"). Contractor reserves the right to terminate all or any portion of such license at any time, and such license shall expire upon termination or expiration of this Agreement.

h. Manage Bank Relationships. One of Contractor's obligations is to manage and facilitate the acquisition of Capital for the Consumer Lending Program. Contractor shall be solely responsible for managing and accessing bank accounts related to this Agreement in order to ensure proper and timely satisfaction of obligations under or related to this Agreement. This specifically includes but is not limited to the bank accounts related to the Consumer Lending Program, CLS and any related accounts containing Capital from Investors. Any change in bank account control and access requires prior written notice to Contractor pursuant to Section 13(d). CLS shall have access to monitor the current status of the loan portfolio, but shall not have access to the Capital which may be held in a bank account or other related account. The CLS may however choose to maintain a separate bank account ("CLS Exclusive Bank Account") that contains the portion of revenue retained by the CLS after other payments and expenses have been made pursuant to Exhibit A. CLS may have sole control and authority over the CLS Exclusive Bank Account.

i. Legal Defense Fund. Additionally, CLS and Contractor shall maintain and fund a Legal Defense Fund for legal matters and expenses related to the Consumer Lending Program.

   4.    **Warranties and Representations.**

a. CLS warrants and represents as of the Effective Date:

   i. CLS is a duly organized business entity, validly existing under Tribal law, and is authorized to conduct its business as described in this Agreement. CLS has the power and authority and all requisite licenses, permits and authorizations under applicable Law to execute and deliver this Agreement and perform its obligations contemplated hereunder.

   ii. CLS is authorized under applicable Tribal law to service loans originated by CLS and is not prohibited by applicable Tribal Law to contract with a third-party to provide the services which Contractor will provide under this Agreement.

5

CONFIDENTIAL

20139301

REDONDO 010252

**EXHIBIT 3-5**

iii. This Agreement has been duly authorized, executed, and delivered by CLS and constitutes its legal, valid and binding agreement, enforceable against CLS in accordance with its terms.

iv. The execution, delivery and performance of this Agreement by CLS does not violate or conflict with (A) any provision of the entity creation documents or other governance documents of CLS or (B) any applicable Law, or any agreement, order, arbitration award, judgment or decree to which CLS is a party or by which CLS or any of its assets may be bound.

v. CLS will use best efforts to assist Contractor in the performance of its duties under this Agreement, including but not limited to notification requirements and assistance with obtaining required license renewals and tribal resolutions as needed.

vi. To CLS's knowledge the execution, delivery, and performance of this Agreement does not violate, conflict with, permit the cancellation of, or constitute a default under any agreement to which CLS is a party or by which CLS is bound.

vii. The Tribe and/or CLS will inform the Contractor in writing of any changes to the conditions, terms and features of the loans at least thirty (30) days before they are adopted and/or implemented by the Tribe and CLS, unless such changes are mandated by applicable law or the interpretation of such law by federal regulatory authorities with jurisdiction upon which immediate written notice shall be given to Contractor.

b. Contractor warrants and represents as of the Effective Date:

i. Contractor has the requisite knowledge, skill and expertise to make recommendations and manage CLS's day to day business.

ii. Contractor has the legal capacity and authority to enter this Agreement.

iii. To Contractor's knowledge, the execution, delivery and performance of this Agreement by Contractor does not violate or conflict with (A) any provision of the applicable governance documents, if any, of Contractor or (B) any applicable Law, or any order, arbitration award, judgment or decree to which Contractor is a party or by which Contractor or any of his assets may be bound.

iv. To Contractor's knowledge the execution, delivery, and performance of this Agreement does not violate, conflict with, permit the cancellation of, or constitute a default under any agreement to which Contractor is a party or by which Contractor is bound.

6

CONFIDENTIAL

20189930.1

REDONDO 010253

**EXHIBIT 3-6**

5.    **Term of Agreement and Termination.** The term of this Agreement shall commence as of the Effective Date and shall continue for a period of five (5) years (the "Initial Term"), subject to such Renewal Terms, as may be elected by and between CLS and Contractor. Either Party may terminate this Agreement by providing at least ninety (90) days prior written notice to the other Party or as set forth below.

a.    Event of Default. If a default has occurred and is continuing, the non-defaulting Party shall be entid to pursue, either before or after termination, such rights and remedies as provided for under the terms of this Agreement. Each of the following shall constitute an Event of Default, triggering termination of this Agreement (following the expiration of any applicable cure period and with written notice to the other Party of said termination):

i.    Failure to remit payment as set forth in Section 6 of this Agreement.

ii.    If either Party breaches this Agreement including, without limitation, any breach of any representation, warranty or covenant contained herein, the non-breaching Party may immediately suspend its obligations under this Agreement and/or terminate this Agreement by providing written notice thereof to the breaching Party if such breaching Party does not cure such breach within twenty (20) calendar days after receipt of the written notice of the breach.

iii.    Upon the occurrence of an Insolvency Event (as defined below) by either Party, this Agreement shall automatically and immediately terminate. It shall constitute an insolvency event ("Insolvency Event"), if CLS files for protection under Tribal Law or if either Party files for protection under any chapter of the federal Bankruptcy Code, or if an involuntary petition is filed against either Party under any such chapter and is not dismissed within thirty (30) calendar days of such filing, or a receiver or any Regulatory Authority takes control of either Party.

b.    Force Majeure/Change in Law. In the event of an act of God or other natural disaster which makes the carrying out of this Agreement impossible, or if a Party's performance hereunder is rendered illegal or materially adversely affected, specifically including but not limited to a material decrease in the fees and/or interest that can be charged by the Tribe on the loans, by reason of changes in Law applicable to the Consumer Lending Program or to either Party, or if a Party is advised in writing by any Regulatory Authority having jurisdiction over such Party or the loans that the performance of its obligations under this Agreement is or may be unlawful, then the Party unable to perform, or whose performance has been rendered illegal or who has been so advised by a Regulatory Authority, may terminate this Agreement by giving written notice at least sixty (60) calendar days in advance of termination to the other Party; unless such changes in Law or communication from such Regulatory Authority require earlier termination, in which case termination shall be effective upon such earlier required date.

7

CONFIDENTIAL

2013930.1

REDONDO 010254

**EXHIBIT 3-7**

c. <u>Termination for Cause.</u>  CLS expressly reserves the right to terminate this Agreement and discharge Contractor for cause, subject to the terms in Section 8. Such cause shall consist of one or more of the following: (i) material willful violation of the terms of this Agreement, (ii) violation of the representations and warranties made herein that cannot be cured or were materially false when made, (iii) in the event that Contractor engages in fraud or theft or is convicted of a felony or misdemeanor involving moral turpitude, (iv) fails to materially comply with the Ordinance as determined by the Regulatory Authority and written notice given to Contractor with an opportunity to cure or (v) death.  If CLS terminates this Agreement pursuant to this Section 5(c), written notice thereof shall be given to Contractor and shall be effective as of the date stated in Section 12 of this Agreement, and CLS agrees to promptly tender payment for all services rendered by Contractor in accordance with the terms set forth in this Agreement, and for all approved expenses incurred prior to the date of such termination (including, but not limited to any approved vendor agreements signed by Contractor for the benefit of CLS or the Tribe).  However, unless specifically referenced in this Agreement, Contractor shall have no other right of recovery against CLS.  If Contractor is terminated per this Section 5(c), Contractor and CLS shall continue (unless the immediate termination is agreed to by the mutual consent of the parties) in the performance of its duties unless and until the dispute or termination is decided per the terms of Section 8.

d. <u>Good Will.</u>  In order to preserve the goodwill of each Party with the customer, both Parties shall act in good faith and cooperate wherever possible in order to ensure a smooth and orderly termination of their relationship and the termination and wind-down of the Consumer Lending Program, regardless of the reason for termination.

6. **Compensation.** CLS agrees to pay to Contractor a salary and a percentage fee based on the size of the loan portfolio(s) serviced by CLS through its participation in the Consumer Lending Program.  Pursuant to Contractor's duties under Section 3(d) to prepare monthly reports and financial statements for the benefit of the CLS Board of Directors, Contractor shall identify the total loan volume serviced by CLS for the preceding month and identify CLS's Net Revenues for the preceding month.  Contractor shall be entitled to compensation based on the attached Exhibit A, to be paid on or before the tenth (10th) day of the month for the preceding month, following Contractor's presentation of monthly reports and financial statements.  Contractor shall be able to cause its self to be paid for so long as no properly noticed Event of Default exists.

7. **Confidentiality and Proprietary Information.**

a. Contractor and CLS mutually agree that from September 1, 2012 and for a term of three (3) years after the term of this Agreement, not to reveal confidential information or trade secrets to any person, firm, corporation or entity.

8

2013030.1

CONFIDENTIAL

REDONDO 010255

**EXHIBIT 3-8**

b.  Contractor and CLS shall treat in confidence the provisions of this Agreement and all documents, materials, and other information related to this Agreement including, but not limited to, all proprietary information, data, trade secrets, business information and other information of any kind whatsoever which (a) a Party ("Discloser") discloses, in writing to the other Party ("Recipient") or to which Recipient obtains access in connection with the negotiation and performance of this Agreement or a related agreement, and which (b) relates to (i) the Discloser, (ii) CLS and its customers or affiliates, or (iii) consumers who have made confidential or proprietary information available to CLS or a Third-Party Service Provider, that were obtained during the course of negotiations leading to, and during the performance of, this Agreement (collectively "Confidential Information"), including without limitation the reports Contractor shall prepare pursuant to Section 3(d), and not to communicate Confidential Information to any third-party, except that Confidential Information may be provided to a Tribal Regulatory Authority having jurisdiction over a Party or a Party's affiliates, counsel, accountants, financial or tax advisors without the consent of the other Party; *provided* that such parties agree to hold such Confidential Information in confidence. As used herein, and for the avoidance of doubt, the term "Confidential Information" does not include information which (i) becomes generally available to the public other than as a result of a disclosure by a Party receiving such information (a "Restricted Party"), (ii) is independently developed by a Restricted Party without violating this Agreement, (iii) was available to the Restricted Party on a non-confidential basis prior to its disclosure to the Restricted Party, (iv) becomes available to the Restricted Party on a non-confidential basis from a source other than the other Party, provided that such source is not bound by a confidentiality agreement with the other Party or otherwise prohibited from transmitting the information to the Restricted Party by a contractual, legal or fiduciary obligation or (v) is required by Law to be disclosed, subject to Section 7(d) below,

c.  If a Restricted Party is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any Confidential Information, then Restricted Party will provide the other Party with prompt notice of such request(s) so that the other Party may seek an appropriate protective order or other appropriate remedy and/or waive the Restricted Party's compliance with the provisions of this Agreement. If the other Party does not seek such a protective order or other remedy, or such protective order or other remedy is not obtained, or the other Party grants a waiver hereunder, then Restricted Party may furnish that portion (and only that portion) of the Confidential Information which the Restricted Party is legally compelled to disclose and will exercise such efforts to obtain reasonable assurance that confidential treatment will be accorded any Confidential Information so furnished as a Restricted Party would reasonably exercise in assuring the confidentiality of any of its own Confidential Information.

d.  The Parties agree that monetary damages would not be adequate compensation in the event of a breach by a Restricted Party of its obligations under Section 7 and,

9

CONFIDENTIAL

2013930.1

REDONDO 010256

**EXHIBIT 3-9**

therefore, the Parties agree that in the event of any such breach the Restricted Party, in addition to its other remedies at law or in equity, shall be entitled to an order requiring the Restricted Party to specifically perform its obligations under Section 7 or enjoining the Restricted Party from breaching Section 7 without the necessity of posing a bond or other security, and the Restricted Party shall not plead in defense thereto that there would be an adequate remedy at law.

8.  **Dispute Resolution.**

   a.  Dispute Resolution. If either Party believes that the other Party has breached this Agreement, or in the event of any dispute hereunder including, but not limited to, any dispute over the proper interpretation of the terms and conditions hereof, the following procedures may be invoked:

   i.  The goal of the Parties shall be to resolve all disputes amicably and voluntarily whenever possible. The Party asserting breach, termination for cause or seeking an interpretation of this Agreement first shall serve written notice on the other Party. The notice shall identify the specific Agreement provision alleged to have been violated or in dispute and shall specify in detail the asserting Party's contention and any factual basis for the claim. Representatives of the Parties shall meet within thirty (30) days of receipt of notice in an effort to resolve the dispute.

   ii.  Either Party may refer a dispute arising under this Agreement to arbitration under the rules of the American Arbitration Association ("AAA"), subject to enforcement as provided in this Section 8(a) by the United States District Court for the Northern District of California or, if federal district court refuses to exercise jurisdiction, the Humboldt County Superior Court, California. Arbitration shall take place in Sacramento, California. The remedies available through arbitration are limited to enforcement of the provisions of this Agreement. The Parties consent to the jurisdiction of such arbitration forum and court for such limited purposes and no other. One (1) arbitrator shall be chosen by the Parties from a list of qualified arbitrators to be provided by the AAA. If the Parties cannot agree on an arbitrator within ten (10) business days, then the arbitrator shall be named by the AAA. The expenses of arbitration shall be borne equally by the Parties. The arbitrator shall apply the substantive laws of the Tribe, to the extent such laws are in place, and, in the absence of such substantive laws, the arbitrator shall apply the substantive laws of the State of Delaware as well as the Federal Rules of Civil Procedure;

   iii.  The Party asserting breach, termination for cause or seeking an interpretation of this Agreement under this Section 8(a) shall be deemed to have certified that to the best of such Party's knowledge, information, and belief formed after reasonable inquiry, the claim of noncompliance or the request for interpretation of this Agreement is warranted and made in good

10.

CONFIDENTIAL

20013930.1

REDONDO 010257

**EXHIBIT 3-10**

faith and not for any improper purpose, such as to harass or to cause unnecessary delay or the needless incurring of the cost of resolving the dispute. If the dispute is found to have been initiated in violation of this Section 8(a), then the arbitrator, upon request or upon his or her own initiative, may impose upon the violating Party an appropriate sanction, which may include an award to the other Party of its reasonable expenses incurred in having to participate in the arbitration;

iv. Either Party may bring an action in the United States District Court for the Northern District of California or, if federal district court refuses to exercise jurisdiction, the Humboldt County Superior Court California for enforcement of the arbitration provision of this Section 8(a)(ii) (in an action to compel arbitration) or of any arbitration award under Section 8(a)(ii). CLS hereby expressly, unequivocally and irrevocably waives any right or claim of right requiring the exhaustion of any tribal court remedies as a prerequisite, prudential or otherwise, for arbitration or litigation proceedings for this Agreement as provided in Paragraph 8. CLS agrees that it shall not initiate any action in any tribal court or tribal forum, and waives to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in the courts referenced above, including any claim that the action has been brought in an inconvenient forum. Notwithstanding the above, both Parties shall use best efforts in following an arbitration award and resolving all related issues to the same prior to bringing an action in accordance with this Section 8(a)(iv); and

v. The Parties hereby acknowledge that the limited waiver of sovereign immunity set forth in Section 9 is a limited waiver by CLS that extends to actions brought by Contractor against CLS for claims arising under this Agreement. Furthermore, Contractor does not consent to tribal jurisdiction in the event of a related dispute. Contractor will however be subject only to the tribal process for the sole purpose of obtaining any required licensing under the applicable tribal regulatory ordinance. Nothing herein shall be construed to authorize a money judgment other than for damages ordered by an arbitrator or for failure to comply with an arbitration decision requiring the payment of monies.

b. **Waiver of Rights to Trial By Jury.** EACH OF CLS AND CONTRACTOR IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. CONTRACTOR AND CLS ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

9. **Limited Waiver of Sovereign Immunity.** The Tribe and CLS do not waive their sovereign immunity except as expressly set forth in this Section 9. CLS hereby (a)

11

2018930.1

CONFIDENTIAL

REDONDO 010258

**EXHIBIT 3-11**

clearly, expressly, irrevocably and unequivocally grants to Contractor a limited waiver of any claim of sovereign immunity, specifically including but not limited to any claim seeking enforcement of Section 8 (for actions to compel arbitration) and for enforcement of any arbitration award, and any other privilege that may be asserted from its status as an instrumentality or entity of the Tribe and any defenses associated with such immunity or privilege from unconsented suit and (b) consents to arbitration between the Parties, enforcement and collection of judgment or award pursuant to the terms of this Agreement, including but not limited to monetary relief, injunction, specific performance, money damages or declaratory relief conditioned upon following limitations: (i) this limited waiver is limited to actions brought against CLS, and does not extend to an action against any division of the Tribal government, or any entity or subunit thereof, and shall not be deemed a waiver of the rights, privileges and immunities of the Tribal government, or any entity or subunit thereof, (ii) the limited waiver is limited to actions (ii.i) brought by Contractor against CLS to (ii.ii) interpret or enforce the provisions of this Agreement, and (ii.iii) enforce any agreement, order, judgment or ruling resulting from such an action including, subject to the limitation upon enforcement set forth in Section 10, and (iii) the limited waiver shall expire at the conclusion of the longer of one (1) year after the termination or expiration of this Agreement, or at the conclusion of any mediation, arbitration or litigation matter with respect to this Agreement pending at the termination or expiration of this Agreement. CLS represents warrants and covenants that this waiver of sovereign immunity is pursuant to Tribal law and has been duly authorized by the appropriate bodies of Tribal government with full understanding of this Agreement, all related agreements and the transactions contemplated therein.

10. **Limitation Upon Enforcement.** Any amounts due and owing to Contractor are hereby limited solely to the assets of CLS. In the event an arbitration action or judicial order brought pursuant to Section 8 of this Agreement awards damages to Contractor to be paid by CLS, such damages awarded against CLS shall be satisfied solely from the assets of CLS, which shall be timely paid and not withheld or otherwise made unavailable to Contractor. In no instance shall any enforcement of any kind whatsoever be allowed against any assets the Tribe.

11. **Indemnity.**

a. **By Green Gate Services.** CLS shall indemnify and hold harmless Contractor, its affiliates and its members, managers, officers, directors, agents and employees from and against any claims, loss, cost, liability, damage or expense (including, without limitation, reasonable attorney's fees and costs of suits) that arise out of or relate to (i) any breach by CLS of its express representations, warranties, covenants or other responsibilities set forth in this Agreement or (ii) any willful misconduct or gross negligence by the CLS with respect to the operation of its day-to-day business or performance of this Agreement. CLS shall not be liable to Contractor for the foregoing to the extent the Losses arise from Contractor's gross negligence or willful misconduct, as determined by arbitration pursuant to this Agreement.

b. **By Contractor.** Contractor shall indemnify and hold harmless CLS, its affiliates and its members, managers, officers, directors, agents and employees from and

12

CONFIDENTIAL

2013930.1

REDONDO 010259

**EXHIBIT 3-12**

against any claims, loss, cost, liability, damage or expense (including, without limitation, reasonable attorneys' fees and costs of suits) that arise out of or relate to (i) any material breach by Contractor of its express representations, warranties, covenants or other responsibilities set forth in this Agreement or (ii) any willful misconduct or gross negligence by any Contractor with respect to Contractor's performance of this Agreement. Contractor shall not be liable to CLS for the foregoing to the extent the Losses arise from CLS's gross negligence or willful misconduct, as determined by arbitration pursuant to this Agreement.

12.    **Notices.** Any notice hereunder by a Party shall be given to the other party at its address set forth below or at such other address designated by notice in the manner provided in this Section 12, by personal delivery, certified mail or private courier service, or by facsimile with a confirmation copy by first class mail, postage prepaid. Any notice shall be duly and properly given if delivered as described in this Section 12. Such notice shall be deemed to have been given (a) when received if by personal delivery or private courier service, (b) when faxed if by facsimile, and (c) three (3) calendar days after mailing, if sent by certified mail; provided, however, that any notice given by a Party changing its address for notice shall be deemed given only upon actual receipt by the other Party. Unless otherwise agreed, notice shall be sent to the contact persons at the addresses or facsimile numbers, as the case may be, set forth below:

If to Clear Loan Solutions:

Clear Loan Solutions
Attn: Chairperson
271 Lynda Lane
Trinidad CA 95570

If to Contractor:

Redondo Management, LLC
10561 Barkley Street, Ste. 620
Overland Park, KS 66212

With copy, which shall not constitute notice to:

Jennifer Galloway, PA
711 S Howard Ave, Suite 200
Tampa, Florida 33606.

13.    **Miscellaneous.**

a.    Entire Agreement. This Agreement and any related agreements supersede any negotiations, discussions or communications between CLS and Contractor and constitute the entire agreement of CLS and Contractor with respect to the specific subject matter hereof.

13

CONFIDENTIAL

2013930;1

REDONDO 010260

**EXHIBIT 3-13**

b. Waiver. Failure of any Party to insist, in one or more instances, on performance by any other Party in accordance with the terms and conditions of this Agreement shall not be deemed a waiver or relinquishment of any right granted hereunder or of the future performance of any such term or condition or of any other term or condition of this Agreement unless and to the extent that such waiver is in a writing signed by or on behalf of the Party alleged to have granted such waiver.

c. Assignment. This Agreement is for the sole and exclusive benefit of the Parties and shall not be deemed to be for the benefit of any third-party. Neither Party shall assign any of its rights or delegate any of its obligations hereunder without the other Party's prior written consent, which shall not be unreasonably withheld or delayed.

d. Notice. Each Party shall provide the other with written notice promptly (but not later than five (5) business days) after becoming aware of any threatened or actual investigation, regulatory action, arbitration, lawsuit, fees or penalties pertaining to the loans, this Agreement or any similar marketing agreements of third-parties, the effect of which may materially impact the obligations or rights of the Parties under this Agreement. Additionally, CLS agrees to give Contractor at least thirty (30) days prior written notice of a change to the signatory authority of any bank account (or ACH or other similar account) related to this Agreement.

e. Headings. The headings and captions of the several sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

f. Governing Law and Jurisdiction. This Agreement has been delivered to and accepted by the Contractor and will be deemed to be made on the Big Lagoon Rancheria Nation. THIS AGREEMENT WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE EXCLUDING ITS CONFLICT OF LAWS RULES.

g. Unauthorized Disclosure. Both Parties shall immediately notify the other of any situation which may result in the loss or unauthorized disclosure of customer information related to the Consumer Lending Program or Confidential Information as defined herein and shall take all commercially reasonable means to remedy any such loss or unauthorized disclosure as required by Law or upon the agreement of the Parties.

h. Compliance with Applicable Laws. All actions taken by both Parties, their employees, agents and contractors, and any Third Party Service Providers retained pursuant to this Agreement shall comply with applicable Laws with respect to all activities relating in any way to the servicing of loans as contemplated in the Tribe's Consumer Lending Program and Ordinance. Additionally, CLS shall act to ensure that the structure of the Consumer Lending Program remains legally

14

CONFIDENTIAL

2013930.1

REDONDO 010261

**EXHIBIT 3-14**

defensible and aligned with the requirements of Tribal and applicable federal Indian law.

i.  Counterparts.  This Agreement may be executed by the Parties in separate counterparts, each of which is an original but all of which together shall constitute one and the same document. Signatures received by facsimile, PDF file and other electronic format shall be deemed to be originals.

IN WITNESS WHEREOF, CLS and Contractor, intending to be legally bound hereby, have caused this Agreement to be executed by their duly authorized officers as of the Effective Date.

Clear Loan Solutions (CLS)

By: _____

Name: _____

Its: _____

Date: _____

Redondo Management, LLC (Contractor)

By: _____

Name: MARK KOETTING

Its: Managing Partner

Date: 9/23/13

15

2013930.1

CONFIDENTIAL

REDONDO 010262

**EXHIBIT 3-15**

Exhibit A

Compensation Schedule

Any principal, interest and/or fees received on consumer loans from the Consumer Lending Program of CLS shall be paid out and distributed monthly in the following order by Contractor on behalf of and at the direction of CLS[1]:

Payments of interest and principal to the applicable creditor for each period pursuant to the terms of the applicable credit agreement between CLS and a creditor, then; CLS shall be paid a monthly minimum amount of $5,000 or $15,000 per one million dollars of gross combined active loan advances as of the last business day each month, whichever is greater then; Contractor shall be paid all expenses and salary for Contractor, with a starting annual salary of $50,000 for the full-term of the Agreement, then; all other operating expenses, fees and cost associated with CLS Consumer Lending Program shall be paid, specifically including but not limited to the Third Party Service Provider contracts, and then; any remaining sums to be paid to Contractor as a performance based fee.

---

[1] Unless otherwise agreed to by an executed writing between the parties.

16

2013930.1

CONFIDENTIAL

REDONDO 010263

**EXHIBIT 3-16**