**EXHIBIT 13**

| From: | Allen, Wendell |
|---|---|
| Sent: | Wednesday, February 6, 2019 2:35 PM PST |
| To: | Mark K; Dan. K |
| CC: | Anderson, Jeff; Gutierrez, Melissa |
| Subject: | FW: Current Drafts |
| Attachments: | Rockhill -- Motion to Quash Summons as to Mark Koetting (DRAFT), 4828-2476-7623, 1.docx, Rockhill -- Motion to Dismiss as to Dan Koetting, 4849-7120-5766, 1.docx, Rockhill -- Response to Petition to Confirm Award (SHORT), 4827-3865-6390, 2.docx, Rockhill -- Cross-Petition to Vacate Award, 4817-7815-5142, 2.docx, Rockhill -- Motion to File Docs Under Seal, 4824-9604-1606, 1.docx |

Mark and Dan,

I've attached our current drafts of the filings that we intend to make in California state court next week. After discussing these matters with our local counsel, Nancy Delaney, we think the best course is to file the Motion to Quash Summons (as to personal jurisdiction over Mark in California) next Tuesday, February 12. We want that motion to stand apart as the first paper we file, so (1) it's clear that Mark is objecting to any action by the California court against him and (2) we can eventually ask the judge to work through that threshold procedural issue before she can even start thinking about confirming (or vacating) the award. That might give us additional ground to fight in advance of the overall litigation, and show the other side that confirming this award won't be a simple matter.

Then on Thursday, February 14 (the deadline), we would file (1) a Motion to Dismiss Proceeding (as to Dan), arguing that he wasn't a proper party to the arbitration and can't be bound by the award; (2) a Response to the Petition to Confirm, which responds to the allegations in the petition (so they can't be deemed admitted) and says we're seeking other relief as well; (3) a Cross-Petition to Vacate Arbitration Award, which shows that the arbitrator "exceeded his powers" (the relevant legal standard); and (4) a Motion to File Documents Under Seal, which asks the judge to let us file the contracts and all of the arbitration documents we cite in our papers under seal. Of note, the motion to modify and the reports we filed in support of that motion (from John) will be included in this submission made under seal.

We would appreciate your comments on these drafts so we can get revised documents out to Nancy to put in "final" form. We will need a declaration from Mark (about personal jurisdiction) and probably one from Dan (about the importance of the confidential documents to Rockhill). If the facts in the drafts look right to you, we will get Nancy to prepare "final" versions for your signatures early next week.

Thanks

**F. Wendell Allen**
Partner | Bradley
wallen@bradley.com
205.521.8282

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**EXHIBIT 13-1**

D * R * A * F * T
2/6/19

Nancy K. Delaney
Mitchell, Brisso, Delaney & Vrieze
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Tel:
Fax:

Attorney for Respondent
MARK KOETTING

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF HUMBOLDT

| | | |
|---|---|---|
| GREEN GATE SERVICES, LLC and CLEAR LOAN SOLUTIONS, LLC, | ) ) ) | Case No. CV190030 |
| Petitioners, | ) ) ) | **NOTICE OF MOTION TO QUASH SUMMONS AS TO MARK KOETTING; MOTION TO QUASH SUMMONS AS TO MARK KOETTING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH; and DECLARATION OF MARK KOETTING IN SUPPORT OF MOTION TO QUASH** |
| vs. | ) ) ) | |
| DAN KOETTING, MARK KOETTING, ROCKHILL CONSULTING GROUP, LLC; and REDONDO MANAGEMENT, LLC; | ) ) ) ) | |
| Respondents. | ) | |

## NOTICE OF MOTION TO QUASH SUMMONS
## AS TO MARK KOETTING

To All Parties Now Appearing and Their Attorneys of Record:

Please take notice that on a date and time to be determined, in the Superior Court of

California, County of Humboldt, 825 5th Street, Eureka, California 95501, the Motion to Quash

Summons filed by Respondent Mark Koetting (specially appearing for the purpose of challenging

jurisdiction), a copy of which is served herewith, which will be heard by the Court.

1

**EXHIBIT 13-2**

D * R * A * F * T
2/6/19

The Motion is based on the following papers, which are served herewith:

1.    Notice of Motion;

2.    Motion;

3.    Memorandum of Points and Authorities in Support of Motion; and

4.    Declaration of Mark Koetting.

February 12, 2019                              Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondent
MARK KOETTING

2

**EXHIBIT 13-3**

D * R * A * F * T
2/6/19

## MOTION TO QUASH SUMMONS
## AS TO MARK KOETTING

Respondent Mark Koetting, specially appearing for the purpose of challenging jurisdiction, hereby moves the Court, pursuant to C.C.P. § 418.10(a)(1), to quash the summons served on him due to lack of personal jurisdiction.   This Motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Mark Koetting.

In support of this Motion, Respondent states the following:

1.      The pending Petition to Confirm Contractual Arbitration Award names Mark Koetting individually as one of four Respondents.

2.      This Court lacks general jurisdiction over Mark Koetting.  Mark Koetting is domiciled in Kansas, not California, and he does not have contacts with California that are so systematic and continuous that he is essentially at home in California.

3.      This Court also lacks specific jurisdiction over Mark Koetting.  The award that is the subject of this action resulted from an arbitration that was conducted in Colorado by an arbitrator who is located in Colorado.  The claim in this action—to enter judgment on the arbitration award issued in Colorado—does not arise from or relate to any contacts between Mark Koetting and California.

4.      Because this Court does not have general jurisdiction or specific jurisdiction over Mark Koetting, it lacks authority to enter a judgment against him.

3

**EXHIBIT 13-4**

D * R * A * F * T<br>2/6/19

WHEREFORE, Respondent Mark Koetting respectfully requests that the Court enter an order quashing the summons that was served on him and dismissing this action against him.


<mark>February 12, 2019</mark>                          Respectfully submitted,


                                        _____

                                        Nancy K. Delaney

                                        Attorney for Respondent
                                        MARK KOETTING

4

**EXHIBIT 13-5**

D * R * A * F * T
2/6/19

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF MOTION TO QUASH SUMMONS AS TO MARK KOETTING

Respondent Mark Koetting, specially appearing for the purpose of challenging jurisdiction, submits this Memorandum of Points and Authorities in support of his Motion to Quash Summons pursuant to C.C.P. § 418.10(a)(1).

### Facts

This is an action to confirm an arbitration award.  The Petition to Confirm Contractual Arbitration Award names Mark Koetting individually as one of four Respondents.  The summons directed to Mr. Koetting was served on him in Kansas.

Mark Koetting resides, and intends to remain, in Kansas.  He works at an office in Kansas. He has a Kansas driver's license.  He is registered to vote in Kansas.  He pays personal income taxes in Kansas.  He maintains a bank account in Kansas.  Although Mark Koetting previously resided, worked, held a driver's license, and paid personal income taxes in California, that was *more than 15 years ago*.  He moved from California to Kansas.  Mark Koetting does not have any bank accounts in California.

The arbitration that is the subject of this action was conducted in Colorado.  The arbitrator who conducted the hearing and issued the Final Award was located in Colorado.  Mark Koetting attended the hearing in Colorado.

### Argument

The summons directed to Mark Koetting should be quashed because this Court lacks personal jurisdiction over him.  *See* C.C.P. § 418.10(a)(1).  "Personal jurisdiction may be either general or specific."  *David L. v. Superior Court* (2018), 29 Cal. App. 5th 359, 366 (quotations omitted).  Petitioners cannot establish *either* general jurisdiction *or* specific jurisdiction over Mr. Koetting.

5

**EXHIBIT 13-6**

D * R * A * F * T
2/6/19

**A.      This Court lacks general jurisdiction over Mark Koetting.**

At the outset, this Court plainly lacks general jurisdiction over Mark Koetting.  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection *unrelated* to the underlying suit (*e.g.*, domicile)."  *Walden v. Fiore* (2014), 571 U.S. 277, 283 n.6 (emphasis added).  For general jurisdiction to exist, the defendant's contacts with the forum state must be "so continuous and systematic as to render [the defendant] *essentially at home* in the forum State."  *Goodyear Dunlop Tires Operations S.A. v. Brown* (2011) 564 U.S. 915, 919 (emphasis added); *accord Daimler AG v. Bauman* (2014) 571 U.S. 117, 139; *David L.*, 29 Cal. App. 5th at 366.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Goodyear*, 564 U.S. at 924; *accord David L.*, 29 Cal. App. 5th at 366.

Mark Koetting resides, and intends to remain, in Kansas.  He works at an office in Kansas.  He has a Kansas driver's license.  He is registered to vote in Kansas.  He pays personal income taxes in Kansas.  He maintains a bank account in Kansas.  Although Mark Koetting previously resided, worked, held a driver's license, and paid personal income taxes in California, that was *more than 15 years ago*.  He moved from California to Kansas.  Mark Koetting does not have any bank accounts in California.

Thus, the "paradigm forum" for general jurisdiction over Mr. Koetting is Kansas, not California.  And Mr. Koetting does not have contacts with California that are "so continuous and systematic" that he is "essentially at home" in this State.  This Court therefore lacks general jurisdiction over Mr. Koetting.  *See David L.*, 29 Cal. App. 5th at 366-67 (no general jurisdiction over a Connecticut resident who did not live or own property, pay taxes, register to vote, have bank account, or hold a driver's license in California).

**B.      This Court lacks specific jurisdiction over Mark Koetting.**

6

**EXHIBIT 13-7**

D * R * A * F * T
2/6/19

This Court also lacks specific jurisdiction over Mark Koetting. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.* (2017), 137 S. Ct. 1773, 1781 (quotations and brackets omitted); *accord Goodyear*, 564 U.S. at 919. "What is needed . . . is a connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781. In other words, the [respondent's] "suit-related conduct must create a substantial connection with the forum state." *Walden*, 571 U.S. at 287; *accord David L.*, 29 Cal. App. 5th at 366. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."[1] *Bristol-Myers*, 137 S. Ct. at 1781.

There is no specific jurisdiction over Mark Koetting because there is no "substantial connection" between Mr. Koetting's "suit-related conduct" and California. The claim against Mr. Koetting in this lawsuit is a claim seeking entry of a judgment on the Final Award that was entered in the arbitration. That arbitration was conducted in Colorado, by a Colorado arbitrator. Although Mr. Koetting participated in the arbitration—pursuant to the arbitrator's order, over Respondents' objection—he did so in Colorado, not in California. In sum, Mr. Koetting did not engage in any conduct *related to the arbitration* that was purposefully directed toward California.[2] *See International Truck v. Haden Schweietzer Corp.*, 2004 WL 2801151, at *1 (N.D. Ill. Jan. 28, 2004)

---

[1] *Bristol-Myers* expressly *rejected* the California Supreme Court's "sliding scale approach" whereby "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." 137 S. Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").

[2] Because specific jurisdiction focuses on the specific claim before the Court—and thus the out-of-state respondent's "suit-related conduct"—it is appropriate to focus on Mr. Koetting's contacts relating to *the arbitration proceeding*, not the underlying dispute.

7

**EXHIBIT 13-8**

D * R * A * F * T
2/6/19

(finding specific jurisdiction where "[t]his claim, a petition to confirm the award, arises directly out of [the defendant's] activities in this district—its participation in the arbitration").

Because there is no meaningful connection "between the forum and the specific claims at issue" in this post-award litigation, *Bristol-Meyers*, 137 S. Ct. at 1781, there is no specific jurisdiction over Mark Koetting.

C.    **Petitioners bear the burden to establish jurisdiction by the preponderance of the evidence.**

Since Respondent has objected to personal jurisdiction, Petitioners now bear the burden to establish jurisdiction by the preponderance of the evidence. *See BBA Aviation PLC v. Superior Court* (2010) 190 Cal. App. 4th 421, 428 ("When a nonresident [respondent] challenges personal jurisdiction, the [petitioners] must prove, by a preponderance of the evidence, the factual basis justifying the exercise of jurisdiction."). Petitioners cannot carry that burden.

### Conclusion

Because this Court lacks general or specific jurisdiction over Mr. Koetting, the summons directed to him should be quashed and this action should be dismissed as to him.

February 12, 2019                                    Respectfully submitted,

                                                                                                        
                                                     Nancy K. Delaney

                                                     Attorney for Respondent
                                                     MARK KOETTING

8

**EXHIBIT 13-9**

D * R * A * F * T
2/6/19

## DECLARATION OF MARK KOETTING
## IN SUPPORT OF MOTION TO QUASH SUMMONS

1.      My name is Mark Koetting.  I am a named Respondent in the above-captioned action.  I am over the age of 18 years and a citizen of the United States.  The facts stated herein are within my personal knowledge.

2.      The summons directed to me was served on me in Kansas.

3.      I am a resident of Kansas, and intend to remain in Kansas.  I work at an office in Kansas.  I have a Kansas driver's license.  I am registered to vote in Kansas, and I pay personal income taxes in Kansas.  I maintain a bank account in Kansas.  Although I previously resided, worked, held a driver's license, and paid personal income taxes in California, that was more than 15 years ago.  I moved from California to Kansas.  I do not have any bank accounts in California.

4.      Petitioner Clear Loan Solutions ("CLS") named me as a party to the arbitration that is the subject of this action.  I was not a party to the Consultant and Independent Contractor Agreement between CLS and Redondo Management, LLC ("Redondo") dated August 30, 2015 (the "Agreement") that contained the arbitration provision.  I signed the Agreement in my capacity as the managing member of Redondo, not in my personal capacity.  I never consented to arbitrate claims asserted against me personally.

5.      The arbitrator was Gordon W. Netzorg of Colorado.  The arbitration hearing was conducted in Denver, Colorado.  I attended the hearing.

6.      The arbitrator's Final Award assessed damages against me personally, under an alter ego theory.

9

**EXHIBIT 13-10**

D * R * A * F * T
2/6/19

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February _____, 2019

_____
Mark Koetting

10

**EXHIBIT 13-11**

D * R * A * F * T
2/6/19

Nancy K. Delaney
Mitchell, Brisso, Delaney & Vrieze
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Tel:
Fax:

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF HUMBOLDT

| | | |
|---|---|---|
| GREEN GATE SERVICES, LLC and CLEAR LOAN SOLUTIONS, LLC, | ) ) ) | Case No. CV190030 |
| Petitioners, | ) ) ) | **NOTICE OF MOTION TO FILE DOCUMENTS UNDER SEAL; MOTION TO FILE DOCUMENTS** |
| vs. | ) ) ) | **UNDER SEAL; MEMORANDUM OF POINTS AND AUTHORITIES; and** |
| DAN KOETTING, MARK KOETTING, ROCKHILL CONSULTING GROUP, LLC; and REDONDO MANAGEMENT, LLC; | ) ) ) ) | **DECLARATION OF NANCY K. DELANEY** |
| Respondents. | ) ) | |

## NOTICE OF MOTION TO FILE DOCUMENTS UNDER SEAL

To All Parties Now Appearing and Their Attorneys of Record:

Please take notice that on a date and time to be determined, in the Superior Court of

California, County of Humboldt, 825 5th Street, Eureka, California 95501, the Motion to File

Documents Under Seal filed by Respondents Dan Koetting, Rockhill Consulting Group, LLC

1

**EXHIBIT 13-12**

D * R * A * F * T
2/6/19

(Rockhill"), and Redondo Management, LLC ("Redondo"), a copy of which is served herewith,

which will be heard by the Court.[1]

The Motion is based on the following papers, which are served herewith:

1.     Notice of Motion;

2.     Motion;

3.     Memorandum of Points and Authorities in Support of Motion; and

4.     Declaration of Nancy K. Delaney.

February 14, 2019                                   Respectfully submitted,

_____
Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL  CONSULTING  GROUP,  LLC,
and REDONDO MANAGEMENT, LLC

---

[1]     Although the grounds for sealing documents apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons. Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this motion.

2

**EXHIBIT 13-13**

D \* R \* A \* F \* T
2/6/19

## MOTION TO FILE DOCUMENTS UNDER SEAL

Respondents Dan Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") hereby move the Court to enter an Order sealing the documents attached as Exhibits A-N to the Declaration of Nancy K. Delaney (filed herewith), as well as Respondents' Memorandum of Points and Authorities in Support of Motion to Dismiss Proceeding as to Dan Koetting and Mark Koetting, Respondents / Cross-Petitioners' Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award, and the Declaration of Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.[2]

In support of this Motion, Respondents state the following:

1.    The pending Petition to Confirm Contractual Arbitration Award, filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC ("CLS"), requests that the Court confirm the Final Award entered in the arbitration of disputes between GGS and CLS on the one hand and Respondents on the other hand.

2.    The subject of the arbitration was the parties' performance under two contracts: (a) the Consultant and Independent Contractor Agreement dated August 30, 2013 between Rockhill and GGS; and (b) the Consultant and Independent Contractor Agreement dated August 30, 2013 between Redondo and CLS (collectively, the "Agreements").

3.    **Exhibits A and B** to the Declaration of Nancy K. Delaney (filed herewith) are true and correct copies of the Agreements. The parties to the Agreements are required to keep the terms of the Agreements confidential. In addition, the Agreements contain competitive

---

[2]    Although the grounds for sealing documents apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons. Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this motion.

**EXHIBIT 13-14**

commercial information relating to the parties' business.  Given the terms of the Agreements, there is no less restrictive means available for Respondent to comply with its obligations and to protect the parties' confidential business information than to request that the Agreements be filed under seal.

4.     The arbitration proceeding, including the Final Award, is confidential.  On May 16, 2018, the arbitrator entered an Agreed Confidentiality Order binding all of the parties to this action. A true and correct copy of the Agreed Confidentiality Order is attached as **Exhibit C** to the Declaration of Nancy K. Delaney (filed herewith).

5.     The following documents, attached as **Exhibits D-N** to the Declaration of Nancy K. Delaney (filed herewith), were filed, produced, or presented in the arbitration proceeding (collectively, the "Arbitration Documents"), comprising and containing confidential information of the parties:

| | |
|---|---|
| **D** | Claimants' Motion Relating to Joinder of Parties |
| **E** | Claimants' Reply in Support of Motion Relating to Joinder of Parties |
| **F** | Order on Claimants' Motion Relating to Joinder of Parties |
| **G** | Excerpts from Hearing Transcript (Day 2) |
| **H** | Excerpts from Hearing Transcript (Day 3) |
| **I** | Hearing Exhibit 521 |
| **J** | Hearing Exhibit 520 |
| **K** | Hearing Exhibit 517 |
| **L** | Hearing Exhibit 321 |
| **M** | Final Award |
| **N** | Claimants' Motion for Modification of Final Award |

4

**EXHIBIT 13-15**

D * R * A * F * T
2/6/19

6.      These Arbitration Documents, which are subject to the arbitrator's confidentiality order, contain commercially sensitive financial information and information about the parties' businesses.  In addition, public dissemination of these documents would invade the privacy of the parties, including Respondents.

7.      Respondents would be substantially prejudiced if forced to choose between (a) challenging the validity of an adverse arbitration award and (b) respecting the confidentiality of the Agreements and the arbitration proceeding.  Confidentiality was an important aspect of the parties' contractual relationship as well as the arbitration.  But Respondents cannot adequately defend against the Petition to Confirm Contractual Arbitration Award, and show that the Final Award is due to be vacated, without relying on these confidential documents.

8.      Respondents have relied on the Agreements and the Arbitration Documents in their (a) Memorandum of Points and Authorities in Support of Motion to Dismiss Proceeding as to Dan Koetting and Mark Koetting; (b) Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award; and (c) Declaration of Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.  Those documents characterize, paraphrase, and sometimes quote directly from the Agreements and the Arbitration Documents.

9.      Given the pervasiveness of sensitive confidential information in the Agreements and the Arbitration Documents, as well as the papers relying on those documents, redaction is not a feasible alternative to sealing.  Accordingly, sealing the entirety of each document is the least restrictive means to the address the issues identified above.

10.     By order dated January 17, 2019, this Court granted Petitioners' similar request to file the Agreements, the arbitrator's Agreed Confidentiality Order, and the Final Award under seal.

5

**EXHIBIT 13-16**

D * R * A * F * T
2/6/19

The same reasoning applies to the Arbitration Documents identified above and the filings that rely on the Agreements and the Arbitration Documents.

WHEREFORE, Respondents respectfully request that the Court enter an order, pursuant to Rule 2.550(d)-(e), sealing the documents attached as Exhibits A-N to the Declaration of Nancy K. Delaney (filed herewith) as well as the Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award, the Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award; and the Declaration of Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.

February 14, 2019                          Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

6

**EXHIBIT 13-17**

D * R * A * F * T
2/6/19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO FILE DOCUMENTS UNDER SEAL**

Respondents / Cross-Petitioners Dan Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") submit this Memorandum of Points and Authorities in support of their Motion to File Documents Under Seal.[3]

**Introduction**

Respondents / Cross-Petitioners have conditionally lodged with the Court several documents—attached as Exhibits A-N to the Declaration of Nancy K. Delaney (filed herewith)— that should be filed only under seal. As explained below, the parties have contractual obligations to each other, and obligations under the arbitrator's confidentiality order, to maintain the confidentiality of information contained in these documents. To avoid conflict with those obligations, and to preserve the confidentiality of sensitive information of all parties, the Court should make the findings required by Rule 2.550 and order that these documents be filed under seal. All parties to this proceeding have significant interests in maintaining the confidentiality of information relating to their contractual relationships and the private arbitration of their dispute.

Petitioners previously filed a similar motion to file documents under seal, for many of the same reasons set forth below. By order dated January 17, 2019, the Court granted Petitioners' motion and directed that several of the documents at issue here—the Agreements, the arbitrator's confidentiality order, and the Final Award—be filed under seal. This request is based on the same reasoning, such that the same result is appropriate.

**Argument**

---

[3] Although the grounds for sealing documents apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons. Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this motion.

7

**EXHIBIT 13-18**

D * R * A * F * T
2/6/19

This Court previously granted Petitioners' motion to file documents under seal, based on the same reasons set forth below.  The same result is appropriate here.

California Rule of Court 2.550(d) authorizes a court to order that records be filed under seal if the court expressly finds facts establishing that:

(1)    There exists an n overriding interest that overcomes the    right of public access to the records;

(2)    The overriding interest supports sealing the records;

(3)    A substantial probability exists that the overriding interest   will be prejudiced if the records are not sealed;

(4)    The proposed sealing is narrowly tailored; and

(5)    No less restrictive means exist to achieve the overriding    interest.

According to the Advisory Committee Comment to Rule 2.550, the legal standard reflected in the Rule is based on the California Supreme Court's decision in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 20 Cal. 4th 1178, 1218 (1999).  The Supreme Court in *NBC Subsidiary* explained that closing or sealing a civil trial may be appropriate, notwithstanding the general First Amendment right of access to court records, if the court gives notice and makes certain findings. *Id*. at 1216-18.

There are several overriding public interests here that support the sealing of the documents at issue, which would be prejudiced if the documents were not sealed:

*First*, California law reflects a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Haworth v. Superior Court*, 50 Cal. 4h 372, 380 (Cal. 2010) (quotations omitted).  One of the benefits of arbitration is confidentiality, as evidenced by the Agreed Confidentiality Order that was entered in the arbitration proceeding at issue here.  Respondents have now been required to appear in court for post-award litigation.  They

8

**EXHIBIT 13-19**

cannot defend against the Petition to Confirm, or seek vacatur or modification of the arbitration award, without relying on specific provisions of the Agreements and the documents that were filed, produced, or otherwise presented in the arbitration subject to a confidentiality order. The public interest supporting arbitration would be significantly prejudiced if parties to an arbitration, who filed and produced documents and information subject to confidentiality protections, were required to make such documents and information public in order to confirm or vacate an award.

*Second*, there is a strong interest in enforcing private contracts, including confidentiality agreements. *See NBC Subsidiary*, 20 Cal. 4th at 1222 n.46 (recognizing a potential overriding interest in "enforcement of binding contractual obligations not to disclose"). The interest in allowing parties to agree to maintain the confidentiality of sensitive business and financial information would be prejudiced if the documents at issue here were not sealed. Indeed, it would be grossly unfair to require Respondents to make public disclosures of such information simply because Petitioners commenced an action in court to enforce the arbitration award.

*Third*, there is a strong interest in protecting the confidentiality of trade secrets and sensitive business information. *See NBC Subsidiary*, 20 Cal. 4th at 1222 n.46 (recognizing a potential overriding interest in protecting trade secrets); *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (Cal. 2016) (concluding that an arbitration agreement was not invalid due to a confidentiality provision because "[a]greements to protect sensitive information are a regular feature of modern litigation").

The documents to be sealed are narrowly tailored. Respondents have requested sealing only for documents on which they rely to support the arguments set forth in the Memorandum in Support of Motion to Dismiss Proceeding as to Dan Koetting and Mark Koetting, the Memorandum in Support of Cross-Petition to Vacate Arbitration Award, and the Declaration of

**EXHIBIT 13-20**

Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.  And where possible, Respondents have provided only relevant excerpts from those documents.  Nevertheless, as Petitioners explained in their motion to file documents under seal, redaction is not feasible here given the pervasiveness of confidential information in the documents at issue.

The party opposing closure or sealing bears the burden to establish reasonable alternatives to closure or sealing.  *See NBC Subsidiary*, 20 Cal. 4th at 1218 n.40 ("We shall abide by the majority view that the burden of demonstrating reasonable alternatives to closure rests with the press.").  Respondents do not believe Petitioners will oppose sealing of the documents at issue here, because Petitioners themselves (properly) requested sealing of several of the same documents for the very same reasons.  In any event, because of the pervasiveness of sensitive, confidential information in the Agreements themselves and the arbitration-related documents, which are subject to binding confidentiality obligations, redaction is not a feasible alternative to sealing.  Thus, there is no less restrictive means to protect the overriding interests described above than to seal these documents.

### Conclusion

For these reasons, Respondents respectfully request that this Court enter an order sealing the documents attached as Exhibits A-N to the Declaration of Nancy K. Delaney (filed herewith), as well as the Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award; the Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award; and the Declaration of Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.

Respondents further request that the Court make the following findings in its order:

10

**EXHIBIT 13-21**

D * R * A * F * T
2/6/19

(a)     That an overriding public interest exists that overcomes the right of public access to the records;

(b)     That the overriding interest supports the sealing of the records;

(c)     That a substantial probability exists that the overriding interest will be prejudiced if the records are not sealed;

(d)     That the records proposed to be sealed are narrowly tailored; and

(e)     That no less restrictive means exist to achieve the overriding interest.

February 14, 2019                                   Respectfully submitted,


_____
Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

11

**EXHIBIT 13-22**

D * R * A * F * T
2/6/19

## DECLARATION OF NANCY K. DELANEY IN SUPPORT OF
## MOTION TO FILE DOCUMENTS UNDER SEAL

1.  My name is Nancy K. Delaney.  I am an attorney with Mitchell, Brisso, Delaney & Vrieze in Eureka, California, which serves as counsel for Respondents in this action.  I am over the age of 18 years, a citizen of the United States, and not a party to this action.  The facts stated herein are within my personal knowledge or based upon matters contained in the attached records, with which I am familiar.

2.  The pending Petition to Confirm Contractual Arbitration Award, filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC ("CLS"), requests that the Court confirm the Final Award entered in the arbitration of disputes between GGS and CLS on the one hand and Respondents on the other hand.

3.  The subject of the arbitration was the parties' performance under two contracts: (a) the Consultant and Independent Contractor Agreement dated August 30, 2013 between Rockhill and GGS; and (b) the Consultant and Independent Contractor Agreement dated August 30, 2013 between Redondo and CLS (collectively, the "Agreements").  True and correct copies of the Agreements are conditionally lodged herewith as **Exhibits A and B**.

4.  On May 16, 2018, the arbitrator entered an Agreed Confidentiality Order binding all of the parties to this action.  A true and correct copy of the Agreed Confidentiality Order is conditionally lodged herewith as **Exhibit C**.

5.  The following documents, conditionally lodged herewith as **Exhibits D-N**, were filed, produced, or presented in the arbitration proceeding (collectively, the "Arbitration Documents"), comprising and containing confidential information of the parties:

12

## EXHIBIT 13-23

D * R * A * F * T
2/6/19

| D | Claimants' Motion Relating to Joinder of Parties |
|---|---|
| E | Claimants' Reply in Support of Motion Relating to Joinder of Parties |
| F | Order on Claimants' Motion Relating to Joinder of Parties |
| G | Excerpts from Hearing Transcript (Day 2) |
| H | Excerpts from Hearing Transcript (Day 3) |
| I | Hearing Exhibit 521 |
| J | Hearing Exhibit 520 |
| K | Hearing Exhibit 517 |
| L | Hearing Exhibit 321 |
| M | Final Award |
| N | Claimants' Motion for Modification of Final Award |

6.      Respondents have relied on the Agreements and the Arbitration Documents in their (a) Memorandum of Points and Authorities in Support of Motion to Dismiss Proceeding as to Dan Koetting and Mark Koetting; (b) Memorandum of Points and Authorities in Support of Cross-Petition to Vacate Arbitration Award; and (c) Declaration of Nancy K. Delaney in Support of Cross-Petition to Vacate Arbitration Award.  Because those documents characterize, paraphrase, and sometimes quote directly from the Agreements and the Arbitration Documents, they have been lodged conditionally under seal.

7.      Given the pervasiveness of sensitive confidential information in the Agreements and the Arbitration Documents, as well as the papers relying on those documents, redaction is not a feasible alternative to sealing.

13

**EXHIBIT 13-24**

D * R * A * F * T
2/6/19

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February \_\_\_\_\_, 2019

_____

Nancy K. Delaney

14

**EXHIBIT 13-25**

D * R * A * F * T
2/6/19

### DECLARATION OF DAN KOETTING IN SUPPORT OF
### MOTION TO FILE DOCUMENTS UNDER SEAL

1.   My name is Dan Koetting.  I am a Respondent in this action and President of Respondent Rockhill Consulting Services, LLC ("Rockhill").  I am over the age of 18 years and a citizen of the United States.  The facts stated herein are within my personal knowledge or based upon matters contained in the attached records, with which I am familiar.

2.   The Agreements conditionally lodged herewith as **Exhibits A and B** are confidential competitive information belonging to Rockhill.  The terms on which Rockhill does business are material and non-public.  If Rockhill's business partners or competitors obtained this information, they may derive a competitive advantage from that knowledge.

3.   The documents conditionally lodged herewith as **Exhibits C-N** are part of a confidential arbitration proceeding.  The Final Award (Exhibit __), in particular, contains confidential and sensitive information regarding Rockhill's business.  If Respondents are required to file these documents publicly, not under seal, they will be forced to choose between defending themselves in this action and seeking vacatur of an improper arbitration award or complying with their contractual and other obligations to maintain the confidentiality of these documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February _____, 2019

_____
Dan Koetting

15

**EXHIBIT 13-26**

D * R * A * F * T
2/6/19

Nancy K. Delaney
Mitchell, Brisso, Delaney & Vrieze
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Tel:
Fax:

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF HUMBOLDT

| | | |
|---|---|---|
| GREEN GATE SERVICES, LLC and CLEAR LOAN SOLUTIONS, LLC, | ) ) ) | Case No. CV190030 |
| Petitioners, | ) ) | **NOTICE OF MOTION TO DISMISS PROCEEDINGS AS TO DAN** |
| vs. | ) ) | **KOETTING; MOTION TO DISMISS PROCEEDINGS AS TO DAN** |
| DAN KOETTING, MARK KOETTING, ROCKHILL CONSULTING GROUP, LLC; and REDONDO MANAGEMENT, LLC; | ) ) ) ) | **KOETTING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS; and DECLARATION OF** |
| Respondents. | ) ) ) | **NANCY K. DELANEY IN SUPPORT OF MOTION TO DISMISS** |

## NOTICE OF MOTION TO DISMISS PROCEEDING
## AS TO DAN KOETTING

To All Parties Now Appearing and Their Attorneys of Record:

Please take notice that on a date and time to be determined, in the Superior Court of

California, County of Humboldt, 825 5th Street, Eureka, California 95501, the Motion to Dismiss

Proceeding as to Dan Koetting filed by Respondents Dan Koetting, Rockhill Consulting Group,

1

**EXHIBIT 13-27**

D * R * A * F * T
2/6/19

LLC ("Rockhill"), and Redondo Management, LLC ("Redondo"), a copy of which is served herewith, which will be heard by the Court.[1]

The Motion is based on the following papers, which are served herewith:

1.    Notice of Motion;

2.    Motion;

3.    Memorandum of Points and Authorities in Support of Motion; and

4.    Declaration of Nancy K. Delaney.

February 14, 2019                               Respectfully submitted,

                                                _____

                                                Nancy K. Delaney

                                                Attorney for Respondents
                                                DAN KOETTING, MARK KOETTING,
                                                ROCKHILL  CONSULTING  GROUP,  LLC,
                                                and REDONDO MANAGEMENT, LLC

---

[1]    Although the grounds for dismissal apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons.  Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Motion to Dismiss.

2

**EXHIBIT 13-28**

D * R * A * F * T
2/6/19

## MOTION TO DISMISS PROCEEDING
## AS TO DAN KOETTING

Respondents Dan Koetting, Mark Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") hereby move the Court to enter an order dismissing this proceeding as to Dan Koetting.[2]

In support of this Motion, Respondents state the following:

1.    The pending Petition to Confirm Contractual Arbitration Award, filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC ("CLS"), requests that the Court confirm the Final Award entered in the arbitration of the dispute between GGS and CLS on the one hand and Respondents on the other hand.

2.    C.C.P. § 1287.2 provides that "[t]he court *shall dismiss* the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration."  (Emphasis added.)

3.    Dan Koetting was not a proper party to the arbitration and cannot be bound by the arbitration award that is the subject of this proceeding.

4.    The arbitration was conducted pursuant to arbitration provisions in (a) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Rockhill and GGS and (b) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Redondo and CLS.

5.    Although the Koettings signed those Agreements on behalf of Rockhill and Redondo, in their representative capacities, the Koettings individually were not parties to the

---

[2]    Although the grounds for dismissal set forth in this motion apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons.  Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Motion to Dismiss.

3

**EXHIBIT 13-29**

Agreements. The Agreements expressly defined the term "Party" or "Parties" to mean GGS, Rockhill, CLS, and Redondo. The Agreements did not even mention Dan Koetting or Mark Koetting in his personal capacity.

6. Nevertheless, GGS and CLS named the Koettings as parties to the arbitration. Respondents repeatedly objected to the arbitrator's assertion of jurisdiction over the Koettings.

7. Respondents filed a Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration because they were not parties to the Agreements and thus never consented to arbitrate claims asserted against them. The arbitrator denied that motion and required the Koettings to participate in the arbitration.

8. The arbitrator had no power to determine the rights and obligations of the Koettings, who were not parties to the Agreements and never consented to arbitration.

9. The Koettings were not proper parties to the arbitration, and cannot be bound by the Final Award in the arbitration.

WHEREFORE, Respondents respectfully request that the Court enter an order dismissing this proceeding as to Dan Koetting.

February 14, 2019                                         Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

4

**EXHIBIT 13-30**

D * R * A * F * T
2/6/19

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS PROCEEDING
## AS TO DAN KOETTING

Respondents Dan Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss Proceeding as to Dan Koetting.[3]

### Background

The pending Petition to Confirm Contractual Arbitration Award, filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC ("CLS"), requests that the Court confirm the Final Award entered in the arbitration of the dispute between (a) GGS and Rockhill Consulting Group, LLC ("Rockhill") and (b) CLS and Redondo Management, LLC ("Redondo").

The arbitration was conducted pursuant to identical arbitration provisions in (a) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Rockhill and GGS and (b) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Redondo and CLS (collectively, the "Agreements").

The Rockhill/GGS Agreement defined the term "Party" or "Parties" to mean Rockhill and GGS. Dan Koetting signed the Agreement in his capacity as President of Rockhill. The Rockhill/GGS Agreement did not mention Dan Koetting in his personal capacity.

Likewise, the Redondo/CLS Agreement defined the term "Party" or "Parties" to mean Redondo and CLS. Mark Koetting signed the Agreement in his capacity as Managing Member of Redondo. The Redondo/CLS Agreement did not mention Mark Koetting in his personal capacity.

---

[3] Although the grounds for dismissal set forth in this motion apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons. Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Motion to Dismiss.

5

**EXHIBIT 13-31**

D * R * A * F * T
2/6/19

GGS and CLS named the Koettings as parties to the arbitration and asserted claims against them personally, alleging that Rockhill and Redondo were their alter egos.  The Koettings did not assert any claims against GGS and CLS.  Respondents repeatedly objected to the arbitrator's assertion of jurisdiction over the Koettings.

On May 18, 2018, Respondents filed a Claimants' Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration.  Respondents argued that the Koettings were not parties to the agreements and thus had not consented to arbitrate claims asserted against them.  On June 12, 2018, the arbitrator entered an order denying the motion as to the Koettings and requiring them to participate in the arbitration.  The arbitrator ruled that the Koettings were estopped from objecting to arbitration because the allegations against them were "intertwined" with the Agreements.

The arbitrator issued a Final Award dated December 22, 2016, which was served on the parties on December 26, 2016.  In the Final Award, the arbitrator determined that the Koettings were personally liable (jointly and severally with Rockhill and Redondo) for millions of dollars in damages under an alter ego theory.

### Argument

**This Proceeding Should Be Dismissed as to Dan Koetting Because He Was Not a Proper Party to the Arbitration and Cannot Be Bound by the Final Award.**

C.C.P. § 1287.2 provides that "[t]he court *shall dismiss* the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration."  (Emphasis added.)  That is exactly the situation here, with respect to Dan Koetting.  He was not a party to the Agreement and thus not

6

**EXHIBIT 13-32**

D * R * A * F * T
2/6/19

a proper party to the arbitration, and he cannot be bound by the Final Award.  This proceeding therefore must be dismissed as to Dan Koetting.[4]

### A.    The arbitrator had no power to determine the rights of the Koettings, who were not parties to the Agreements.

At the outset, both federal law and California law recognize that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[5]  *AT&T Techs., Inc. v. Communications Workers of Am.* (1986) 475 U.S. 643, 648; *accord In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017); *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.* (2010) 186 Cal. App. 4th 696, 704; *Unimart v. Superior Court* (1969) 1 Cal. App. 3d 1039, 1045.[6]  From this bedrock principle it follows that except in limited circumstances, an arbitrator has "*no power* to determine the rights and obligations of one who is not a party to the arbitration agreement."  *American Builders Ass'n v. Au-Yang* (1990) 226 Cal. App. 3d 170, 179 (emphasis added).

---

[4]    As explained in their Cross-Petition to Vacate Arbitration Award (filed on this same date), Respondents have substantive arguments against confirmation of the Final Award in addition to this argument for dismissal as to the Koettings.

[5]    As Petitioners have acknowledged, the Agreements here are subject to the Federal Arbitration Act.  (Memorandum of Points and Authorities in Support of Petition to Confirm Contractual Arbitration Award at 6.)  Federal law and California law are similar as to the relevant issues here.

[6]    *See also EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 ("[N]othing in the [FAA] authorizes a court to compel arbitration . . . by any parties[] that are not already covered in the [arbitration] agreement."); *Benasra v. Marciano* (2001) 92 Cal. App. 4th 987, 990 ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."); *County of Contra Costa v. Kaiser Found. Health Plan, Inc.* (1996) 47 Cal. App. 4th 237, 245 ("Arbitration is consensual in nature. . . . A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration.").

**EXHIBIT 13-33**

The Koettings were not parties to the Agreements, including the arbitration provisions. The Agreements expressly defined the terms "Party" and "Parties" to mean only GGS, Rockhill, CLS, and Redondo. (Agreements at 1, opening paragraphs.) The Agreements did not even mention the Koettings in their personal capacities. Although Dan Koetting and Mark Koetting signed the Agreements, they did so *on behalf of Rockhill and Redondo*, not on their own behalf.[7] (Agreements at 15, signature blocks.)

"Persons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees." *Suh v. Superior Court* (2010) 181 Cal. App. 4th 1504, 1513. And a corporate officer is not bound by a contract simply because he or she signed the contract in his or her official capacity. *See Benasra*, 92 Cal. App. 4th at 991 (company president was not bound by arbitration agreement he signed only in his representative capacity).[8] Thus, the mere fact that the Koettings signed the Agreements as principals of Rockhill and Redondo does not make them parties to the arbitration agreements. *See Julian v. Glenair, Inc.* (2017) 17 Cal. App. 5th 853, 871-72 (Under "general principles regarding the significance of legal capacities," an arbitration agreement signed by a person in one capacity does not bind the person in another capacity.)

The simple fact is that Koettings are not parties to the Agreements and thus, "by definition, ha[ve] not consented to the arbitration." *Berglund v. Arthroscopic & Laser Surgery Ctr. of San*

---

[7]    Petitioners' allegations that GGS and CLS entered into written agreements with the Koettings (*see* Petition to Confirm, ¶¶ 2-3) are demonstrably false. The Agreements clearly identify the parties—GGS and Rockhill in one Agreement, CLS and Redondo in the other. The Koettings are not even mentioned in those written agreements, and they signed the Agreements only in their representative capacities.

[8]    Delaware law (which governs interpretation of the Agreements) is the same. *See Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) (corporate officers are not liable on corporate contracts unless they bind themselves individually).

8

**EXHIBIT 13-34**

D * R * A * F * T
2/6/19

*Diego, L.P.* (2008) 44 Cal. 4th 528, 539.  The arbitrator therefore had no power to determine their rights or obligations and was required to grant Respondents' motion to dismiss the Koettings from the arbitration proceeding (unless and until a court found a basis for compelling them to arbitrate).

## B.      Dan Koetting cannot be bound by the Final Award.

Because Dan Koetting was not a proper party to the arbitration, he cannot be bound by the Final Award.  The California Court of Appeal has made clear that where an arbitrator rules, absent prior judicial determination, that a nonsignatory is required to arbitrate, the error cannot be harmless and "the arbitration award must be set aside insofar as it binds [the nonsignatory]." *Benaroya v. Willis* (2018) 23 Cal. App. 5th 462, 475.

*Benaroya* is instructive here.   In that case, Bruce Willis and Westside Corporation commenced an arbitration against Benaroya Pictures, claiming breach of an escrow agreement. Willis and Westside Corporation then filed a motion with the arbitrator to join Michael Benaroya—a principal and officer of Benaroya Pictures—as an additional party under an alter ego theory.  *Id*. at 464-66.  Benaroya objected on the ground that he was not a party to the arbitration agreement, but the arbitrator granted the motion and Benaroya agreed to submit to that ruling.  *Id*. at 466.   Throughout the proceeding, Benaroya continued to dispute the arbitrator's exercise of jurisdiction based on the alter ego theory.  *Id*.  The arbitrator determined that Benaroya was liable as an alter ego, and Benaroya moved to vacate the award or correct it to remove him as a party. *Id*. at 466-67.  The trial court confirmed the award, but the Court of Appeal reversed—holding that the award must be vacated as to Benaroya.  *Id*. at 475-76.  The arbitrator "exceeded his authority by purporting to compel [Benaroya] to arbitrate."  *Id*. at 475.

This case is like *Benaroya*.  Here, GGS and CLS joined the Koettings as parties to the arbitration; there was no prior judicial proceeding to compel arbitration.  Respondents repeatedly

9

**EXHIBIT 13-35**

objected to the arbitrator's exercising jurisdiction over the Koettings.  On May 18, 2018, Respondents filed a Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration on the ground that they were not parties to the Agreements and thus had not consented to arbitration of claims against them.  The arbitrator was required to grant that motion—unless and until a court determined that there was some basis on which to require the Koettings to arbitrate.  The arbitrator denied the motion, however, and ordered that the Koettings "shall remain parties to [the] consolidated arbitration."  The arbitrator then issued a Final Award purporting to make the Koettings liable for damages under an alter ego theory.

Under *Benaroya*, the Final Award "must be set aside insofar as it binds" the Koettings.[9] 23 Cal. App. 5th at 475.  Thus, Dan Koetting cannot be bound by the Final Award and this proceeding should be dismissed as to him.

**C.      The arbitrator incorrectly ruled that the Koettings were estopped from objecting the arbitration.**

---

[9]      Petitioners cannot contend that the Koettings somehow consented to arbitration or waived their objection to the arbitrator's assertion of jurisdiction over them.  *See Woolls v. Superior Court* (2005) 127 Cal. App. 4th 197, 204 n.3 (person did not waive objection to arbitrator's authority by participating in arbitration, and even asserting cross-claims, after he presented written objections to the arbitrator, which were overruled); *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal. App. 3d 1057, 1064 ("Where an arbitration proceeds under a self-executing agreement without a preliminary court order, the objecting party is required to participate in the proceeding and then raise his objections by petition to vacate the award or by opposition to a petition to confirm.") (citation omitted).

Nor can Petitioners argue that the Koettings were required to go to court to make their objection to the arbitrator's assertion of jurisdiction.  "Merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point."  *Benaroya*, 23 Cal. App. 5th at 474.

Nor, finally, can Petitioners say that the arbitration provisions here (by incorporating AAA Rules) committed the determination of jurisdiction to the arbitrator.  *See Benaroya*, 23 Cal. App. 5th at 474 ("Appellant, as a nonsignatory to the agreement, did not agree to delegate *any* issues to the arbitrator."); *accord Soto v. American Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) ("The provisions granting authority to the arbitrator to decide issues of scope are by definition only applicable to the parties of the agreement . . . .").

**EXHIBIT 13-36**

D * R * A * F * T
2/6/19

The arbitrator overstepped the bounds of his authority, and the reasons he gave for doing so were incorrect as a matter of law. Specifically, there was no basis for the arbitrator's ruling that the Koettings were *estopped* from objecting to arbitration because their alleged conduct was "intertwined" with the Agreements. (June 12, 2018 Order at 2.)

Federal law recognizes an important distinction between two situations—(1) a signatory seeking to compel a nonsignatory to arbitrate (as here) and (2) a nonsignatory seeking to compel a signatory to arbitrate. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (explaining that the principle of equitable estoppel "has generated two lines of cases" for these different situations); *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779-80 (2d Cir. 1995) (concluding that cases addressing a nonsignatory's right to compel a signatory to arbitrate are "inapposite and insufficient justification" for requiring a nonsignatory to arbitrate). California recognizes the same distinction. *See Benasra*, 92 Cal. App. 4th at 991 (stating that "[t]he fact that a nonsignatory to a contract may in some circumstances be . . . entitled to compel arbitration [against a signatory] . . . is *legally irrelevant*" where the nonsignatory is objecting to arbitration) (emphasis added).[10]

The "intertwined" standard that the arbitrator applied is the standard for cases *where the nonsignatory seeks to compel the signatory to arbitrate*—not this case. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-47 (9th Cir. 2009); *Thomson-CSF*, 64 F.3d at 779. Under the correct standards—which the arbitrator failed to address—the Koettings could not be estopped from objecting to arbitration of claims asserted against them by GGS and CLS.

---

[10]    And in Delaware, "judges have been much more willing to estop a signatory from avoiding arbitration with a non-signatory, rather than vice versa." *NAMA Holdings, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 432-33 & n.35 (Del. Ch. 2007) (nonsignatories were not required to arbitrate under an estoppel theory); *accord Kuroda v. SPJS Holdings, LLC*, 2010 WL 4880659, at *6-*7 (Del. Ch. Nov. 30, 2010) (unpublished) (same).

11

**EXHIBIT 13-37**

Under federal law, a nonsignatory may be estopped from objecting to arbitration where he or she "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Comer*, 436 F.3d at 1101 (quotations omitted). For estoppel to apply against the nonsignatory, there must be evidence showing that he or she "sought to enforce" the terms of the agreement or "otherwise to take advantage of them." *Id*. at 1102 (holding that estoppel did not apply against a nonsignatory). The estoppel doctrine "typically applies to third parties who benefit from an agreement made between two primary parties"—that is, a third-party beneficiary to the agreement.[11] *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (holding that estoppel did not apply to a nonsignatory that was "not a third-party beneficiary to [the contract]").

Similarly, under California law, a nonsignatory may be estopped from objecting to arbitration where he or she has relied on contract terms in asserting claims against another party. *See Benasra*, 92 Cal. App. 4th at 991. In addition, estoppel may apply where the nonsignatory was "a third party beneficiary of the arbitration agreement," or where the nonsignatory effectively "authorized [a party to the contract] to act for [the nonsignatory] in executing such agreement." *Jensen v. U-Haul Co. of Cal.* (2017) 18 Cal. App. 5th 295, 300-01. As explained above, ownership of, or employment by, a signatory is not enough to make a person a party to the signatory's contract. *See Suh*, 181 Cal. App. 4th at 1513; *Benasra*, 92 Cal. App. 4th at 991.

---

[11] Moreover, the "benefits" flowing to the third-party beneficiary must be direct, not indirect. *See Nguyen*, 763 F.3d at 1179. Delaware law is similar: To justify estoppel, the signatory demanding arbitration must show that the nonsignatory "derived direct, rather than indirect, benefit" from the agreement during the course of performance. *NAMA Holdings*, 922 A.2d at 432. Benefits received by virtue of an ownership interest in a contracting party are *indirect* benefits that do not support application of an estoppel theory. *See id*.

12

**EXHIBIT 13-38**

Under these standards, the Koettings could not be estopped from objecting to arbitration. As the arbitrator acknowledged, the Koettings never asserted any claim or sought any remedy based on the Agreements. (Final Award at 3.) In other words, they never "sought to enforce" or "take advantage" of the terms of the Agreements against any other party. *Comer*, 436 F.3d at 1102. Likewise, the Koettings are not third-party beneficiaries of the Agreements: Section 13(c) expressly states that the Agreements are "for the sole and exclusive benefit of the Parties and shall not be deemed to be for the benefit of any third party."[12] And there is no evidence suggesting that the Koettings authorized Rockhill and Redondo to agree to arbitration of claims against the Koettings personally.

Petitioners cannot rely on the arbitrator's cursory (and somewhat cryptic) reference to alter ego to avoid dismissal. The arbitrator's order says that GGS and CLS had "*alleged* conduct relating to each of the Koettings which, *if proven*, would *put into question* (1) the adequacy of the capitalization of Redondo . . . and Rockhill . . . ; (2) whether the dominant members of such LLCs improperly diverted corporate funds; and (3) whether such LLCs simply functions as facades for their dominant members." (June 12, 2018 Order at 2 (emphasis added).) Although the arbitrator was referring to the alter ego allegations made by GGS and CLS, he plainly did not make any *finding* of alter ego in that order that could justify compelling the Koettings to arbitrate. The only finding that the arbitrator made was a finding of estoppel—which, as shown above, was incorrect as a matter of law.

---

[12]    Because the Agreements did not call for compensation or other benefits to be paid to the Koettings personally, whatever benefits they derived from the Agreements they derived as owners and principals of Rockhill and Redondo—not the kinds of direct benefits required to justify an estoppel. *See Benasra*, 92 Cal. App. 4th at 992 ("[T]he acceptance of [the contrary] position would be tantamount to a conclusion that every officer who signs a contract in his representative capacity is a third-party beneficiary of that contract. That would be wrong.").

13

**EXHIBIT 13-39**

D * R * A * F * T
2/6/19

\* \* \*

In sum, there was no justification for the arbitrator's decision to require the Koettings to participate in the arbitration, much less to make them personally liable for millions of dollars in damages.  Because Dan Koetting was not a proper party to the arbitration and cannot be bound by the Final Award, this proceeding should be dismissed as to him.

### Conclusion

Pursuant to C.C.P. § 1287.2, Respondents respectfully request that the Court enter an order dismissing this proceeding as to Dan Koetting.


February 14, 2019                                           Respectfully submitted,


_____

Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

14

**EXHIBIT 13-40**

D * R * A * F * T
2/6/19

## DECLARATION OF NANCY K. DELANEY
## IN SUPPORT OF MOTION TO DISMISS PROCEEDING
## AS TO DAN KOETTING

1.      My name is Nancy K. Delaney.  I am an attorney with Mitchell, Brisso, Delaney & Vrieze in Eureka, California, which serves as counsel for Respondents in this action.  I am over the age of 18 years, a citizen of the United States, and not a party to this action.  The facts stated herein are within my personal knowledge or based upon matters contained in the attached records, with which I am familiar.

2.      The pending Petition to Confirm Contractual Arbitration Award, filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC ("CLS"), requests that the Court confirm the Final Award entered in the arbitration of disputes between (a) GGS and Rockhill Consulting Group, LLC ("Rockhill") and (b) CLS and Redondo Management, LLC ("Redondo").

3.      The arbitration was conducted pursuant to identical arbitration provisions in (a) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Rockhill and GGS and (b) the Independent Contractor and Consultant Agreement dated August 30, 2013 between Redondo and CLS (collectively, the "Agreements").  True and correct copies of the Agreements are attached as **Exhibits A and B** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).

4.      The Rockhill/GGS Agreement identifies Rockhill and GGS as the parties to the Agreement.  Dan Koetting signed the Agreement in his capacity as the president of Rockhill.

5.      The Redondo/CLS Agreement identifies Redondo and CLS as the parties to the Agreement.  Mark Koetting signed the Agreement in his capacity as the managing member of Redondo.

15

**EXHIBIT 13-41**

D * R * A * F * T
2/6/19

6.    GGS and CLS joined Dan Koetting and Mark Koetting as parties to the arbitration and asserted claims against them personally, alleging that Rockhill and Redondo are their alter egos.  The Koettings did not assert any claims against GGS and CLS.  Respondents repeatedly objected to the arbitrator's jurisdiction over the Koettings.

7.    On May 18, 2018, Respondents filed Claimants' Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration.  A true and correct copy of the motion is attached as **Exhibit C** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).  Respondents argued that the Koettings were not parties to the agreements and thus had not consented to arbitrate claims asserted against them.

8.    On June 12, 2018, the arbitrator entered an order denying the motion as to the Koettings and requiring them to participate in the arbitration.  A true and correct copy of the order is attached as **Exhibit D** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).  The arbitrator ruled that the Koettings were estopped from objecting to arbitration because the allegations against them were "intertwined" with the Agreements.

9.    The arbitrator issued a Final Award dated December 22, 2016, which was served on the parties on December 26, 2016.  A true and correct copy of the Final Award is attached as **Exhibit E** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).  In the Final Award, the arbitrator determined that the Koettings were personally liable for breach of contract and breach of the implied covenant of good faith and fair dealing under an alter ego theory.  The arbitrator made them jointly and severally liable, with Rockhill and Redondo, for millions of dollars in damages.

**EXHIBIT 13-42**

D * R * A * F * T
2/6/19

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February ___, 2019

_____
Nancy K. Delaney

17

**EXHIBIT 13-43**

D * R * A * F * T
2/6/19

Nancy K. Delaney
Mitchell, Brisso, Delaney & Vrieze
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Tel:
Fax:

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF HUMBOLDT

| | | |
|---|---|---|
| GREEN GATE SERVICES, LLC and CLEAR LOAN SOLUTIONS, LLC, | ) ) ) | Case No. CV190030 |
| Petitioners, | ) ) | |
| vs. | ) ) ) | **RESPONSE TO PETITION TO CONFIRM CONTRACTUAL ARBITRATION AWARD;** |
| DAN KOETTING, MARK KOETTING, ROCKHILL CONSULTING GROUP, LLC; and REDONDO MANAGEMENT, LLC; | ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE; and DECLARATION OF NANCY K. DELANEY IN** |
| Respondents. | ) ) | **SUPPORT OF RESPONSE** |

### RESPONSE TO PETITION TO CONFIRM
### CONTRACTUAL ARBITRATION AWARD

Pursuant to C.C.P. §§ 1285.2, 1288.2, 1290, and 1290.6, Respondents Dan Koetting, Mark

Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC

("Redondo") submit the following Response to the Petition to Confirm Contractual Arbitration

Award filed by Petitioners Green Gate Services, LLC ("GGS") and Clear Loan Solutions, LLC

1

**EXHIBIT 13-44**

D * R * A * F * T
2/6/19

("CLS").[1]  This Response is supported by the accompanying Memorandum of Points and Authorities in Support of Response and the Declaration of Nancy K. Delaney in Support of Response.

In response to the allegations set forth in the Petition, Respondents state as follows:

1.      Respondents admit that GGS and CLS are limited liability companies organized under the laws of the Big Lagoon Rancheria Tribe.

2.      Respondents admit that GGS entered into a written Consultant and Independent Contractor Agreement with Rockhill Consulting Group, LLC dated August 30, 2013, and further admit that Dan Koetting was a principal of Rockhill.  Respondents further state that the Agreement speaks for itself.  Respondents deny that Dan Koetting was a party to the Agreement and further deny that Dan Koetting was identified in the Agreement as the person who would serve as Executive Director of GGS's consumer lending program.

3.      Respondents admit that CLS entered into a written Consultant and Independent Contractor Agreement with Redondo Management, LLC dated August 30, 2013, and further admit that Mark Koetting was a principal of Redondo.  The Agreement speaks for itself.  Respondents deny that Mark Koetting was a party to the Agreement and further deny that Mark Koetting was identified in the Agreement as the person who would serve as Executive Director of CLS's consumer lending program.

---

[1]      Respondent Mark Koetting, specially appearing for the purpose of challenging jurisdiction, has filed a Motion to Quash Summons pursuant to C.C.P. § 418.10.  Under Section 418.10(e), he is permitted to simultaneously respond to the initial pleading.  Until the Court rules on the pending Motion to Quash, Mark Koetting does not join in any affirmative request for relief made by the other Respondents in this Response or other filings.

2

**EXHIBIT 13-45**

D * R * A * F * T
2/6/19

4.      Respondents admit that Petitioners refer to the two contracts as the "Agreements." Respondents further admit that Petitioners conditionally lodged copies of the Agreements under seal pending determination of Petitioners' Motion to Seal Documents.[2]

5.      Respondents admit that the Agreements are substantively identical and both include an arbitration provision.  Respondents further state that the Agreements speak for themselves. Respondents further state that Paragraph 5 of the Petition paraphrases portions of the arbitration provision but does not set forth the precise language of that provision.  Respondents deny that Paragraph 5 of the Petition sets forth all of the material terms of the arbitration provision.

6.      Respondents state that the Agreements speak for themselves.  Respondents further state that Paragraph 6 of the Petition paraphrases the forum selection clause in the arbitration provision but does not set forth the precise language of that clause.

7.      Respondents admit that Petitioners purported to terminate the Agreements on January 8, 2018, and further admit that Rockhill, Redondo, GGS, and CLS brought numerous claims against each other in arbitration.  Respondents deny that Dan Koetting or Mark Koetting brought any claims against any person.

8.      Respondents admit that the parties agreed to the appointment of Gordon Netzorg as the arbitrator.

9.      Respondents admit that the two arbitration cases were consolidated by agreement, and that the parties agreed to conduct the arbitration in Denver, Colorado.

10.      Respondents admit that the arbitrator conducted a hearing on September 10-12, 2018 and thereafter received post-hearing briefing.  Respondents further admit that the arbitrator

---

[2]      Because copies of the Agreements were attached to the Petition (under seal), this Response does not attach those documents.  *See* C.C.P. § 1285.6 (a response must set forth or attach the agreement to arbitrate "[u]nless a copy thereof is set forth or attached to the petition").

3

**EXHIBIT 13-46**

issued a Final Award dated December 22, 2018 finding in favor of Petitioners on their claims for breach of contract and breach of the implied covenant of good faith and fair dealing but rejecting all other claims.  Respondents admit that the Final Award was served on all parties on December 26, 2018.

11.    Respondents admit that Petitioners conditionally lodged a copy of the Final Award under seal pending determination of Petitioners' Motion to Seal Documents.[3]

12.    Respondents state that the Final Award speaks for itself.

13.    Respondents state that the Final Award speaks for itself.

14.    Respondents lack information sufficient to admit or deny the allegation concerning Petitioners' awareness of other petitions or actions, but state that Respondents are filing a motion to dismiss this proceeding as to Dan Koetting and Mark Koetting, pursuant to C.C.P. § 1287.2, and a cross-petition to vacate the arbitration award, pursuant to 9 U.S.C. §§ 10-11 and C.C.P. § 1286.

In response to the paragraph beginning with "WHEREFORE," Respondents state that Petitioners are not entitled to any relief under 9 U.S.C. § 9 or C.C.P. § 1285 and further state that the Petition to Confirm Contractual Arbitration Award should be denied.

Further, for the reasons set forth in the Motion to Dismiss Proceedings as to Dan Koetting and Mark Koetting and the accompanying Memorandum of Points and Authorities (filed on this same date), the Petition to Confirm Contractual Arbitration Award should be denied as to the Koettings.  And for the reasons set forth in the Cross-Petition to Vacate Arbitration Award and accompanying Memorandum of Points and Authorities (filed on this same date), the Petition to

---

[3]    Because a copy of the Final Award was attached to the Petition (under seal), this Response does not attach that document. *See* C.C.P. § 1285.6 (a response must set forth or attach a copy of the award "[u]nless a copy thereof is set forth or attached to the petition").

4

**EXHIBIT 13-47**

D * R * A * F * T
2/6/19

Confirm Contractual Arbitration Award should be denied and the Final Award should be vacated

in its entirety or, in the alternative, modified or corrected.

February 14, 2019                                    Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

5

**EXHIBIT 13-48**

D * R * A * F * T
2/6/19

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF RESPONSE TO PETITION TO CONFIRM
## CONTRACTUAL ARBITRATION AWARD

Respondents Dan Koetting, Mark Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") submit this Memorandum of Points and Authorities in Support of their Response to Petition to Confirm Contractual Arbitration Award.[4]

### Background

The Petition to Confirm Contractual Arbitration Award requests that the Court confirm the Final Award of the arbitrator dated December 22, 2018, which was served on the parties on December 26, 2018, and enter a judgment in conformity with the Final Award. (Petition, ¶ 10 and paragraph beginning with "WHEREFORE.")  As alleged in the Petition, the parties arbitrated a dispute involving several claims in Denver, Colorado in September 2018.  (*Id*., ¶¶ 7-10.)  Copies of the arbitration agreements and the Final Award were conditionally lodged under seal pending determination of Petitioners' Motion to Seal Documents (*id*., ¶¶ 4, 11), and have since been filed under seal by order of the Court.

In addition to the responses made to the specific allegations set forth in the Petition, Respondents are filing (1) a motion to dismiss this proceeding as to Dan Koetting and Mark Koetting because they were not proper parties to the arbitration and cannot be bound by the Final Award and (2) a cross-petition to vacate the Final Award because the arbitrator exceeded his powers in several respects.

---

[4]    Respondent Mark Koetting, specially appearing for the purpose of challenging jurisdiction, has filed a Motion to Quash Summons pursuant to C.C.P. § 418.10.  Under Section 418.10(e), he is permitted to simultaneously respond to the initial pleading.  Until the Court rules on the pending Motion to Quash, Mark Koetting does not join in any affirmative request for relief made by the other Respondents in this Response or other filings.

6

**EXHIBIT 13-49**

D * R * A * F * T
2/6/19

**Argument**

The Petition to Confirm Contractual Arbitration Award should be denied.  C.C.P. § 1286

provides that:

> If a petition . . . under this chapter is *duly served* and filed, the court
> shall confirm the award as made, whether rendered in this state or
> another state, *unless* in accordance with this chapter it corrects the
> award and confirms it as corrected, vacates the award and confirms
> it as corrected, vacates the award or dismisses the proceedings.

(Emphasis added.)  Likewise, 9 U.S.C. § 9 provides that a court "must grant [an order confirming

an award] *unless* the award is vacated, modified, or corrected as prescribed in [9 U.S.C] sections

10 and 11."  (Emphasis added.)

The Petition should be denied because there are grounds for vacating or, in the alternative,

modifying or correcting the Final Award.  Respondents are filing a cross-petition to vacate or, in

the alternative, modify or correct the award pursuant to C.C.P. §§ 1285, 1286.2, and 1286.6, and

9 U.S.C. §§ 10-11, showing that the arbitrator exceeded his powers in several respects.  *See* C.C.P.

§ 1286.2(d) (a court "shall vacate the award" if "[t]he arbitrators exceeded their powers and the

award cannot be corrected without affecting the merits of the decision"); 9 U.S.C. § 10 (a court

may vacate an award "where the arbitrators exceeded their powers").

Moreover, the Petition should be denied because there are grounds for dismissing this

proceeding as to Dan Koetting.  Respondents are filing a motion to dismiss this proceeding as to

Dan Koetting, showing that the Koettings were not proper parties to the arbitration and cannot be

bound by the award.  *See* C.C.P. § 1287.2 (providing that "[t]he court shall dismiss the proceeding

under this chapter as to any person named as a respondent if the court determines that such person

was not bound by the arbitration award and was not a party to the arbitration").

7

**EXHIBIT 13-50**

**Conclusion**

The Petition to Confirm Contractual Arbitration Award should be denied.


February 14, 2019                                     Respectfully submitted,


_____

Nancy K. Delaney

Attorney for Respondents
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

8

**EXHIBIT 13-51**

D * R * A * F * T
2/6/19

**DECLARATION OF NANCY K. DELANEY
IN SUPPORT OF RESPONSE TO PETITION TO CONFIRM
CONTRACTUAL ARBITRATION AWARD**

1.    My name is Nancy K. Delaney.  I am an attorney with Mitchell, Brisso, Delaney & Vrieze in Eureka, California, which serves as counsel for Respondents in this action.  I am over the age of 18 years, a citizen of the United States, and not a party to this action.  The facts stated herein are within my personal knowledge or based upon matters contained in the attached records, with which I am familiar.

2.    In addition to their Response to the Petition to Confirm Contractual Arbitration Award, Respondents are filing a cross-petition to vacate or, in the alternative, modify or correct the arbitrator's Final Award.  The cross-petition shows that the arbitrator exceeded his powers in several respects, warranting vacatur of the award in its entirety or, in the alternative, modification or correction of the award.

3.    Respondents are also filing a motion to dismiss this proceeding as to Dan Koetting, showing that the Koettings were not proper parties to the arbitration and cannot be bound by the Final Award.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February ___, 2019

_____
Nancy K. Delaney

9

**EXHIBIT 13-52**

D * R * A * F * T
2/6/19

Nancy K. Delaney
Mitchell, Brisso, Delaney & Vrieze
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Tel:
Fax:

Attorney for Respondents / Cross-Petitioners
DAN KOETTING, ROCKHILL CONSULTING
GROUP, LLC, and REDONDO MANAGEMENT, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF HUMBOLDT

| | |
|---|---|
| GREEN GATE SERVICES, LLC and CLEAR LOAN SOLUTIONS, LLC,    ) | Case No. CV190030 |
| ) | |
| Petitioners / Cross-Respondents,    ) | **NOTICE OF CROSS-PETITION TO** |
| ) | **VACATE ARBITRATION AWARD;** |
| vs.    ) | **CROSS-PETITION TO VACATE** |
| ) | **ARBITRATION AWARD;** |
| DAN KOETTING, MARK KOETTING,    ) | **MEMORANDUM OF POINTS** |
| ROCKHILL CONSULTING GROUP, LLC;    ) | **AND AUTHORITIES; and** |
| and REDONDO MANAGEMENT, LLC;    ) | **DECLARATION OF NANCY K.** |
| ) | **DELANEY IN SUPPORT** |
| Respondents / Cross-Petitioners.    ) | |

## <u>NOTICE OF CROSS-PETITION TO VACATE ARBITRATION AWARD</u>

<u>To All Parties and Their Attorneys of Record:</u>

Please take notice that on a date and time to be determined, in the Superior Court of

California, County of Humboldt, 825 5th Street, Eureka, California 95501, the Cross-Petition to

Vacate Arbitration Award filed by Respondent / Cross-Petitioners Dan Koetting, Rockhill

1

**EXHIBIT 13-53**

D * R * A * F * T
2/6/19

Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo"), a copy of which is served herewith, will be heard by the Court.[1]

The Cross-Petition to Vacate Arbitration Award is based on the following papers, which are served herewith:

1.      Notice of Cross-Petition;

2.      Cross-Petition;

3.      Memorandum of Points and Authorities in Support of Cross-Petition; and

4.      Declaration of Nancy K. Delaney.

February 14, 2019                Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents / Cross-Petitioners
DAN KOETTING, MARK KOETTING,
ROCKHILL  CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

---

[1]    Although the grounds for vacatur of the arbitration award apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons.  Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Cross-Petition to Vacate Arbitration Award.

2

**EXHIBIT 13-54**

D * R * A * F * T
2/6/19

## CROSS-PETITION TO VACATE ARBITRATION AWARD

Pursuant to 9 U.S.C. § 10 and C.C.P. §§ 1286.2 and 1290, Respondents / Cross-Petitioners Dan Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") hereby petition the Court for an order vacating the arbitration award dated December 22, 2016.[2]  This Cross-Petition is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Nancy K. Delaney.

### The Parties and the Agreements

1.      Rockhill Consulting Group, LLC ("Rockhill") provided consulting services to Green Gate Services, LLC ("GGS") pursuant to a Consultant and Independent Contractor Agreement dated August 30, 2013.  Dan Koetting was Rockhill's president.

2.      Redondo Management, LLC ("Redondo") provided similar services to Clear Loan Solutions, LLC ("CLS") pursuant to a nearly identical Consultant and Independent Contractor Agreement dated August 30, 2013.  Mark Koetting was Redondo's managing partner.

3.      True and correct copies of the Agreements are conditionally lodged under seal pursuant to Respondents / Cross-Petitioners' Motion to File Documents Under Seal.

4.      GGS and CLS are "Tribal Lending Entities" established by the Big Lagoon Rancheria Tribe (the "Tribe").  Under the Agreements, Rockhill and Redondo served as the executive directors of GGS and CLS.  Among other things, the Agreements detailed the responsibilities of Rockhill and Redondo, as well as the compensation due for their services and

---

[2]      Although the grounds for vacatur of the arbitration award apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons.  Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Cross-Petition to Vacate Arbitration Award.

3

**EXHIBIT 13-55**

D * R * A * F * T
2/6/19

the compensation due to GGS and CLS for the loans within their portfolios.  In January 2018, GGS and CLS terminated the Agreements, giving rise to this dispute.

5.      The Agreements contain an arbitration provision, which defines the scope of arbitrable issues and includes an express limitation on the remedies available in arbitration.

6.      As Petitioners have acknowledged, the Agreements evidence a transaction involving commerce and thus are subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

**The Arbitration Proceeding and the Final Award**

7.      In January 2018, GGS commenced an arbitration against Rockhill, which filed a counterclaim against GGS.  Redondo then commenced an arbitration against CLS, which filed a counterclaim against Redondo.  The two cases were consolidated before a single arbitrator, Gordon W. Netzorg of Denver, Colorado.  (Copies of the arbitrator appointment papers are attached to the Petition to Confirm Contractual Arbitration Award.)

8.      On May 18, 2018, Respondents filed a Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration because they were not parties to the Agreements and thus had not consented to arbitration.  On June 12, 2018, the arbitrator entered an order denying that motion on the ground that the Koettings were estopped from objecting to arbitration.  (True and correct copies of the Claimants' Motion Relating to Joinder of Parties and the arbitrator's June 12, 2018 order are conditionally lodged under seal pursuant to Respondents / Cross-Petitioners' Motion to File Documents Under Seal.)

9.      The arbitrator conducted a hearing in Denver, Colorado from September 10 through September 12, 2018.  After further briefing, the arbitrator issued a Final Award dated December 22, 2018, determining that Rockhill and Redondo were liable for damages, jointly and severally with Dan Koetting and Mark Koetting, for breach of contract and breach of the implied covenant

**EXHIBIT 13-56**

D * R * A * F * T
2/6/19

of good faith and fair dealing.  (The arbitrator expressly rejected all other claims.)  The arbitrator ruled that the Koettings were also liable for the breaches of Rockhill and Redondo under an alter ego theory.  The amounts of the damages are set forth in the Final Award.  The Final Award was served on the parties on December 26, 2018.  (A true and correct copy of the Final Award is conditionally lodged under seal pursuant to Respondents / Cross-Petitioners' Motion to File Documents Under Seal.)

10.     Respondents timely filed a Motion for Modification of Final Award, which the arbitrator denied.  (A true and correct copy of the Motion for Modification of Final Award is conditionally lodged under seal pursuant to Respondents / Cross-Petitioner's Motion to File Documents Under Seal.)

### This Action

11.     GGS and CLS commenced this action by filing a Petition to Confirm Contractual Arbitration Award pursuant to 9 U.S.C. § 9 and C.C.P. § 1285.

12.     On February 12, 2019, Respondent Mark Koetting specially appeared for the purpose of challenging personal jurisdiction by filing a Motion to Quash Summons.  On February 14, 2019, Respondents / Cross-Petitioners timely filed their Response to the Petition to Confirm Contractual Arbitration Award as well as a Motion to Dismiss Proceeding as to Dan Koetting.

13.     This Cross-Petition to Vacate Arbitration Award is timely filed within three months, and within 100 days, after service of the signed Final Award.  *See* 9 U.S.C. § 12; C.C.P. § 1288.

### Grounds for Vacatur of the Arbitration Award

14.     The arbitrator's award should be vacated in its entirety pursuant to 9 U.S.C. § 10 and C.C.P. § 1286.2 because the arbitrator exceeded his powers in several respects:

5

**EXHIBIT 13-57**

D * R * A * F * T
2/6/19

(a)     The arbitrator exceeded his powers by holding the Koettings personally liable, under an alter ego theory, for alleged breaches by Rockhill and Redondo.  The Koettings were not parties to the Agreements and thus never consented to arbitrate claims against them.  The arbitrator had no power to require the Koettings to participate in the arbitration.  Moreover, assigning personal liability against the Koettings exceeds the remedial authority granted in the arbitration provision.  In addition, the personal liability of the Koettings (under an alter ego theory) was not an issue within the scope of the arbitration provision.

(b)     The arbitrator exceeded his remedial powers, which were expressly limited by Section 8(a)(ii) of the Agreements.  The Final Award impermissibly grants remedies to GGS and CLS that do not enforce, but actually contradict, clear provisions of the Agreements—resulting in an award that is not rationally related to the Agreements.  Specifically:

(i)     The Final Award calculates damages for loans made to customers of GGS and CLS despite an absence of proof of the facts necessary to make the calculation required by the Agreements.

(ii)     The Final Award fails to apply the contractual compensation rate in calculating the damages for loans made to customers of GGS and CLS.

(iii)     The Final Award grants windfall damages to GGS and CLS for post-termination payments, in violation of applicable law, by failing to account for expenses paid by Rockhill and Redondo pursuant to Section 5(c) of the Agreements.

(iv)     The Final Award grants windfall damages to GGS and CLS, in violation of applicable law, by failing to recognize amounts owed by GGS and CLS to Rockhill and Redondo pursuant to Section 5(c) of the Agreements.

6

**EXHIBIT 13-58**

D * R * A * F * T
2/6/19

(v)     The Final Award grants windfall damages to GGS and CLS with respect to the Legal Defense Fund, in violation of applicable law and Section 3(i) of the Agreements.

(c)     The arbitrator exceeded his powers by finding that Rockhill and Redondo breached the implied covenant of good faith and fair dealing, contrary to Delaware law.  Although the arbitrator acknowledged that Delaware law governs the Agreements, the arbitrator ignored Delaware law restricting application of the implied covenant of good faith and fair dealing.  In addition, the arbitrator ignored Delaware law in ruling that Rockhill and Redondo owed certain duties to GGS and CLS that were not found in, and were inconsistent with, the Agreements.

15.     The arbitrator's award should be vacated because the arbitrator manifestly disregarded the applicable law by:

(a)     awarding damages to GGS and CLS for breach of contract and breach of the implied covenant of good faith and fair dealing that did not compensate GGS and CLS for the breach but amounted to an impermissible windfall, contrary to Delaware law; and

(b)     ruling that Rockhill and Redondo breached the implied covenant of good faith and fair dealing, contrary to Delaware law.

16.     The arbitrator acknowledged that Delaware law governed the Agreements but ignored controlling principles of Delaware law with respect to these issues.

17.     If the Court determines that a new hearing is warranted, the Court should order a rehearing before a new arbitrator pursuant to C.C.P. § 1287.  Rockhill does not consent to a rehearing before the same arbitrator.

**Alternative Request for Modification or Correction of the Award**

7

**EXHIBIT 13-59**

18.     If the Final Award is not vacated in its entirety, then it should be modified or corrected pursuant to C.C.P. § 1286.6 and 9 U.S.C. § 11.

19.     There was an evident material miscalculation of damages figures in the Final Award, as alleged above.

20.     The arbitrator exceeded his powers, as alleged above.  To the extent that the Final Award may be corrected without affecting the merits of the decision upon the controversy submitted, the Final Award should be modified or corrected to address the arbitrator's errors.

21.     The arbitrator awarded upon a matter not properly submitted to him, namely, the personal liability of the Koettings.  The Final Award should be corrected to delete any reference to personal liability of the Koettings.

### Relief Requested

Respondents / Cross-Petitioners respectfully request that the Court:

A.     Enter an order vacating the Final Award in its entirety;

B.     If the Final Award is not vacated in its entirety, enter an order modifying or correcting the Final Award.

C.     Award Respondents / Cross-Petitioners the costs of suit, including attorneys' fees, incurred in this matter; and

D.     Award such other and further relief as the Court may deem proper.

February 14, 2019                                         Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents

8

**EXHIBIT 13-60**

D * R * A * F * T
2/6/19

DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

9

**EXHIBIT 13-61**

D * R * A * F * T
2/6/19

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## CROSS-PETITION TO VACATE ARBITRATION AWARD

Respondents / Cross-Petitioners Dan Koetting, Rockhill Consulting Group, LLC ("Rockhill"), and Redondo Management, LLC ("Redondo") submit this Memorandum of Points and Authorities in Support of their Cross-Petition to Vacate Arbitration Award.[3]

### Procedural and Factual Background

Rockhill Consulting Group, LLC ("Rockhill") provided consulting services to Green Gate Services, LLC ("GGS") pursuant to a Consultant and Independent Contractor Agreement dated August 30, 2013. Dan Koetting was Rockhill's president. Redondo Management, LLC ("Redondo") provided similar services to Clear Loan Solutions, LLC ("CLS") pursuant to a nearly identical Consultant and Independent Contractor Agreement dated August 30, 2013. Mark Koetting was Redondo's managing partner.

GGS and CLS are "Tribal Lending Entities" established by the Big Lagoon Rancheria Tribe (the "Tribe"). Under the Agreements, Rockhill and Redondo served as the executive directors of GGS and CLS, respectively—managing the day-to-day operations of GGS's and CLS's consumer lending programs. Among other things, the Agreements detailed the responsibilities of Rockhill and Redondo, as well as the compensation due for their services and the compensation due to GGS and CLS for the loans within their portfolios.[4] In January 2018, GGS and CLS terminated the Agreements, giving rise to this dispute.

---

[3]    Although the grounds for vacatur of the arbitration award apply equally to Respondent Mark Koetting, he has specially appeared to challenge personal jurisdiction by filing a Motion to Quash Summons. Until the Court rules on the pending Motion to Quash Summons, Mark Koetting does not join in this Cross-Petition to Vacate Arbitration Award.

[4]    Petitioners' assertion that "[t]he underlying agreements provided that Rockhill and Redondo—*through their respective designated employees and principals, Dan Koetting and Mark Koetting, respectively*—would act as executive directors" (Mem. of Points and Authorities in Support of Petition to Confirm at 6 (emphasis added)) is simply false. The Agreements do not

10

**EXHIBIT 13-62**

D * R * A * F * T
2/6/19

Section 8 of the Agreements called for arbitration of any "dispute arising under [the] Agreement[s]." Section 8 further provided that "[t]he remedies available through arbitration are limited to enforcement of the provisions of [the] Agreement[s]." As Petitioners have acknowledged, the Agreements evidence a transaction involving commerce and thus are subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16. (Memorandum of Points and Authorities in Support of Petition to Confirm at 6.)

In January 2018, GGS commenced an arbitration against Dan Koetting and Rockhill. Rockhill filed a counterclaim against GGS. Redondo then commenced an arbitration against CLS, which filed a counterclaim against Redondo and Mark Koetting. The two cases were consolidated before a single arbitrator, Gordon W. Netzorg.

On May 18, 2018, Respondents filed a Motion Relating to Joinder of Parties, asking the arbitrator to dismiss the Koettings from the arbitration because they were not parties to the Agreements and thus had not consented to arbitration. On June 12, 2018, the arbitrator entered an Order denying that motion on the ground that the Koettings were estopped from objecting to arbitration.

The arbitrator conducted a hearing in Denver, Colorado from September 10 through September 12, 2018. After further briefing, the arbitrator issued a Final Award dated December 22, 2018, determining that Rockhill and Redondo were liable for breach of contract and breach of the implied covenant of good faith and fair dealing. (The arbitrator expressly rejected all other claims.) The arbitrator assessed damages of more than $10.9 million against Rockhill and Dan

---

identify the Koettings at all, except to show their names as signatories on behalf of Rockhill and Redondo. Petitioners are improperly suggesting that the Koettings were named in the Agreements.

**EXHIBIT 13-63**

D * R * A * F * T
2/6/19

Koetting, and more than $3.1 million against Redondo and Mark Koetting. The arbitrator ruled that the Koettings were liable for the breaches of Rockhill and Redondo under an alter ego theory.

Respondents timely filed a Motion for Modification of the Final Award, but the arbitrator denied the motion.

Respondents / Cross-Petitioners strongly disagree with the arbitrator's characterization of their conduct in the Final Award and continue to believe that they were entitled to an award in their favor based on the plain terms of the Agreements. In light of the standards of judicial review of arbitration awards, however, Respondents / Cross-Petitioners focus their request for vacatur of the award on the errors that most clearly demonstrate the arbitrator's exceeding his powers under the Agreements and applicable law.

<strong>Argument</strong>

**I.      The Award Should Be Vacated In Its Entirety.**

The arbitrator's award should be vacated in its entirety. C.C.P. § 1286.2(d) provides that a court "shall vacate the award" if the court determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Under California law, "[a]n arbitrator exceeds his powers by acting without subject matter jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, . . . fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law." *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 182 Cal. App. 4h 503, 511 (2010).

Likewise, 9 U.S.C. § 10 provides that a court may vacate an award "where the arbitrators exceeded their powers." "[A]rbitrators exceed their powers . . . when the award is completely irrational, or exhibits a manifest disregard of law." *Sanchez v. Elizondo*, 878 F.3d 1216, 1221-22

12

<strong>EXHIBIT 13-64</strong>

D * R * A * F * T
2/6/19

(9th Cir. 2018) (quotations and citations omitted); *accord Aspic Eng'g & Constr. V. ECC Centcom Constructors LLC*, 2019 WL 333339, at *3 (9th Cir. Jan. 28, 2019).  An award is "completely irrational" where it "fails to draw its essence from the agreement"—that is, where it is not "derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Sanchez*, 878 F.3d at 1222 (quotations omitted).  In other words, an arbitrator "may not . . . disregard contract provisions to achieve a desired result." *Aspic*, 2019 WL 333339, at *4.  Manifest disregard of the law exists where the arbitrator recognized, but then ignored, applicable law.  *See Sanchez*, 878 F.3d at 1223.

### A.   The arbitrator exceeded his powers by requiring the Koettings to arbitrate and then making them personally liable for damages under an alter ego theory.

The arbitrator acted beyond his jurisdiction and exceeded his powers by requiring Dan Koetting and Mark Koetting—who were not parties to the Agreements—to arbitrate the claims asserted against them, and then by making them liable for the damages award under an alter ego theory.  *See Benaroya v. Willis* 23 Cal. App. 5th 462, 475 (2018); *Gravillis*, 182 Cal. App. 4th at 511.  Arbitration is a matter of contract and consent; thus, "[a]bsent an enforceable agreement [to arbitrate], an arbitration award is invalid." *Toal v. Tardif*, 178 Cal. App. 4th 1208, 1220 (2009). Petitioners have the burden to "prove by a preponderance of the evidence that a valid arbitration contract exists," and this Court "may not confirm [the] award without first finding the parties agreed in writing to arbitrate their dispute, unless a judicial determination of the issue has already been made." *Id*.  There has been no prior judicial determination of the effect of the arbitration provisions on the Koettings.

### (1)   The arbitrator had no power to determine the rights and obligations of the Koettings, who were not parties to the Agreements.

13

**EXHIBIT 13-65**

At the outset, the arbitrator had no power to determine the rights or obligations of the Koettings, who were not parties to the Agreements, including the arbitration provisions. Respondents hereby incorporate by reference the arguments and authorities set forth in the Memorandum of Points and Authorities in Support of Motion to Dismiss Proceeding as to Dan Koetting (filed on this same date).

**(2)     The alter ego issue was not within the arbitrator's jurisdiction.**

The arbitrator also exceeded his powers by ruling on the personal liability of the Koettings (under an alter ego theory), which was not an issue properly within the scope of the arbitrator's authority.  *See Gravillis*, 182 Cal. App. 4th at 511.  Under Section 8(a) of the Agreement, the arbitrator was authorized only to decide "a dispute arising under [the] Agreement," including a dispute as to breach or "the proper interpretation of the terms and conditions" of the Agreement. As the leading commentator explains, the "arising under" language is *limiting*:

> A broad arbitration provision, such as one providing for arbitration of all disputes "arising out of or relating to" this agreement, will require arbitration for any matter that relates to the contract, including fraud in the inducement.  However, a clause providing for the arbitration of "any dispute arising hereunder" means *arising under the contract itself and does not cover matters or claims independent of the contract or collateral to it.*

Domke on Commercial Arbitration § 8:14 (Aug. 2018 Update) (emphasis added).  Indeed, "[t]he phrase 'arising under' has been called relatively narrow as arbitration clauses go." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983) (quotations omitted).[5]

---

[5]     *See also Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 923 (9th Cir. 2011) (holding that "the narrow interpretation of 'arising under' [in *Mediterranean Enterprises*] controls" an arbitration clause using the same language); *Tracer Res. Corp. v. National Envt'l Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("The 'arising out of' language is of the same limited scope as the 'arising under' language in *Mediterranean Enterprises*."); *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 353 n.20 (2015) ("A dispute arises out of an

14

**EXHIBIT 13-66**

D * R * A * F * T
2/6/19

Arbitration of a dispute "arising under" a contract "is restricted to disputes and controversies relating to the interpretation of the contract and matters of performance."[6] *Id.* at 1464 (quotations omitted); *accord Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) ("[A]rbitration clauses should be applied only to claims that bear on the duties and obligations under the Agreement.").

Whether Rockhill and Redondo were alter egos of the Koettings—such that the Koettings may be responsible for damages—is not an issue that arises under the Agreements themselves, and it has no bearing on whether Rockhill and Redondo breached their obligations under the Agreements. It is a collateral issue that was not properly before the arbitrator.[7]

> **B.      The arbitrator exceeded his remedial powers, which were expressly limited by the Agreements.**

"An exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers." *Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179, 1185 (2008). Here, Section 8(a)(ii) of each Agreement provided that "[t]he remedies available through arbitration are *limited to enforcement of the provisions of [the] Agreement.*" (Emphasis added.)

---

agreement when the claim or dispute relates to the interpretation and performance of the contract itself.") (quotations omitted).

[6]      The limitation on arbitration remedies—allowing only "enforcement of the provisions of [the] Agreement[s]" (Agreement § 8(a)(ii))—confirms that the scope of any arbitration was limited to disputes arising under the terms of the Agreements and did not include ancillary or collateral issues.

[7]      It makes no difference that the Agreement calls for application of the AAA Commercial Rules—which authorize an arbitrator to determine the arbitrability of any claim—because *the Koettings are not parties to the Agreement*. *See Benaroya*, 23 Cal. App. 5th at 474 ("Appellant, as a nonsignatory to the agreement, did not agree to delegate *any* issues to the arbitrator.").

15

**EXHIBIT 13-67**

That is a clear limitation on the remedial powers of the arbitrator, which the arbitrator clearly exceeded.

### (1) The arbitrator failed to apply the compensation formula set forth in the Agreements.

The single largest element of the damages against Rockhill and Dan Koetting is "$7,189,850 for loans made to customers of GGS." (Final Award at 28, ¶ 1(c)(i).) Similarly, the single largest element of damages against Redondo and Mark Koetting is "$1,702,850 for loans made to customers of CLS." (*Id*., ¶ 1(d)(i).) Those damages far exceed the remedies available under the Agreements.

With respect to customer loans, the Agreements specifically provided the measure of compensation for GGS and CLS:

> a monthly minimum of $5,000 or $15,000 per one million dollars [1.5%] of gross combined active loan advances as of the last business day each month, whichever is greater then.

(Agreements, Ex. A.) Plainly, GGS and CLS were never entitled to receive 100% of the value of loans made to their customers but *only* 1.5% of the "gross combined active loan advances" each month.[8] The arbitrator acknowledged this contractual formula (*see* Final Award at 19-20) but failed to apply it. In other words, he "disregard[ed] contract provisions to achieve a desired result." *Aspic*, 2019 WL 333339, at *4.

---

[8]    When the arbitrator asked Petitioners' witness Shawna Neyra how GGS and CLS had been damaged by "remarketed" loans made to GGS and CLS customers, Ms. Neyra acknowledged that the 1.5% compensation rate must be considered. (Transcript Day 2 at 284-88.) Ms. Neyra explained, "I'm sure there's some way that you can make an average over—over the payments and, you know, let's say, what, in 2014, you know, if there were an extra $3 million, you can equate to how many loans you could do with $3 million *and then you could equate out the one-and-a-half percent*." (*Id*. at 288 (emphasis added).) The applicability of the 1.5% compensation rate was thus conceded by GGS and CLS.

16

**EXHIBIT 13-68**

Under the Agreements, the damages to GGS and CLS for "remarketed" loans would be computed as follows:

**.015 x ("gross combined active loan advances" each month) x (months of loss)**

As the parties seeking damages for this alleged breach, GGS and CLS bore the burden to present evidence of the facts relevant to that calculation. *See Bennett v. Plantations E. Condo. Ass'n*, 2013 WL 493329, at *1 (Del. Super. Ct. Jan. 16, 2013).[9]  But GGS and CLS failed to prove the "gross combined active loan advances" in each month of the alleged period of breach—such that the correct calculation under the Agreements could not be made.[10]  Given that failure of proof, the damages for these items should have been *zero*.

At the very least, the arbitrator should have applied the 1.5% compensation rate prescribed by the Agreement to the evidence that GGS and CLS did present—the total loan amounts shown in Exhibit 521 (on which the arbitrator relied).  As it stands, the Final Award assesses damages that bear no rational relation to the contractual compensation formula and therefore cannot be said to be derived from the Agreements or to "enforce[] the provisions of the Agreement[s]."

Moreover, this damages award reflects a manifest disregard of the law.  The arbitrator acknowledged that the Agreements are governed by Delaware law (*see* Final Award at 10, 15-16, 23 (citing Delaware cases)), but then ignored Delaware law making clear that "[c]ontract damages

---

[9]    The Agreements are governed by Delaware law.  (Agreements §§ 8(a)(ii) & 13(f).)  Under Delaware law, "[t]he plaintiff . . . has a responsibility of proving damages . . . by a preponderance of the evidence.  Damages cannot be speculative.  The plaintiff must prove her damages with a reasonable degree of precision.  Reasonable estimates are permissible . . . if the [arbitrator] is given a reasonable basis to make a responsible estimate of damages." *Bennett*, 2013 WL 493329, at *1 (quotations omitted).

[10]    GGS and CLS relied exclusively on Exhibit 521, which did not provide the month-by-month data necessary to calculate compensation due under the Agreement.

17

**EXHIBIT 13-69**

D * R * A * F * T
2/6/19

are designed to place the injured party . . . in the same place as he would have been if the contract had been performed.  Such damages should not act as a windfall." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009).  The arbitrator's damages for "remarketed" loans—far exceeding the compensation called for by the Agreements—are windfall damages that are not allowed under Delaware law.

> **(2)     The arbitrator failed to account for expenses paid by Rockhill pursuant to Section 5(c) of the Agreement.**

The arbitrator also improperly assessed damages of $2,900,000 for "payments made to Rockhill after termination."  (Final Award at 28, ¶ 1(c)(ii) & 1(d)(ii).)  The arbitrator relied on Exhibit 520, which shows only the gross amount of payments made to Rockhill ($2,900,000) after January 8, 2018.  But Rockhill presented evidence—undisputed by GGS—that Rockhill continued paying *expenses* after that date, which benefited GGS.  *See* Exhibit 517 and Transcript Day 2 at 183-84 & 190-91 (Than Thai identifying "direct expenses tied to the [GGS] portfolio").  Rockhill paid those expenses pursuant to Section 5(c) of its Agreement with GGS:

> If [Rockhill] is terminated per this Section 5(c), [Rockhill] and GGS
> *shall continue . . . in the performance of [their] duties* unless and
> until the dispute or termination is decided per the terms of Section 8
> [the arbitration provision].

(Emphasis added.)  The arbitrator found that GGS terminated the Agreement pursuant to Section 5(c). (Final Award at 17.)  Thus, to "enforce[] the provisions of the Agreement[s]," the arbitrator's damages award for post-termination payments to Rockhill had to reflect the post-termination expenses paid by Rockhill pursuant to Section 5(c).

The only evidence presented at the hearing that shows the amounts of expenses paid by Rockhill after termination is Exhibit 517—which shows that Rockhill paid about $2,167,752 in expenses from January to June 2018.  *That evidence was undisputed.*  Failure to account for those

**EXHIBIT 13-70**

D * R * A * F * T
2/6/19

expenses resulted in another impermissible windfall to GGS, in violation of Delaware law, and an award that is not rationally related to, or derived from, the Agreement.

### (3)    The arbitrator failed to recognize amounts owed by GGS to Rockhill pursuant to Section 5(c) of the Agreements.

The arbitrator further exceeded his remedial powers by awarding GGS damages without recognizing amounts owed by GGS to Rockhill at the time of termination.  As explained above, the arbitrator found that GGS terminated the Agreement pursuant to Section 5(c), which provided that:

> If GGS terminates this Agreement pursuant to this Section 5(c) . . . GGS agrees to promptly tender payment for all services rendered by [Rockhill] in accordance with the terms set forth in this Agreement, and for all approved expenses incurred prior to the date of such termination . . . .

Thus, for any award to "enforce[] the provisions of the Agreement," the arbitrator had to account for amounts owed by GGS to Rockhill *before* termination (pursuant to Section 5(c)).

Exhibit 321 shows that GGS owed Rockhill $1,799,261.24 as of December 31, 2017 for services rendered by Rockhill.  *That evidence was undisputed.*  By awarding GGS damages that did not reflect this undisputed amount of payments due before termination, the arbitrator did not enforce the provisions of the Agreement but actually contravened Section 5(c) and manifestly disregarded Delaware law forbidding windfall damages.

### (4)    The arbitrator ignored Section 3(i) of the Agreements in awarding damages related to the Legal Defense Fund.

The arbitrator further exceeded his remedial powers by assessing damages of $193,822.50 against Respondents for failure to establish the Legal Defense Fund.  (Final Award at 29, ¶ 1(f).) That award—placing 100% of the cost of the Fund on Rockhill and Redondo (and the Koettings)— exceeds the limitation of remedies in Section 8(a)(ii) of the Agreement because it does not enforce,

19

**EXHIBIT 13-71**

but actually contravenes, Section 3(i). That provision expressly required *both* Rockhill and Redondo on one hand, *and* GGS and CLS on the other hand, to "maintain and fund" the Legal Defense Fund. Indeed, the arbitrator acknowledged that the obligation was placed on both parties to each Agreement, not just one. (Final Award at 20-21.) The arbitrator's 100% assessment against Rockhill and Redondo (and the Koettings) is flatly contrary to Section 3(i) and thus does not "enforce the provisions of the Agreement." And the award reflects a manifest disregard of Delaware law forbidding windfall damages.

###### C.    The arbitrator exceeded his powers by concluding that Rockhill and Redondo breached the implied covenant of good faith and fair dealing.

The arbitrator also exceeded his powers by awarding damages to GGS and CLS for breach of the implied covenant of good faith and fair dealing—arbitrarily remaking the contract, *see Gravillis*, 182 Cal. App. 4th at 511, in manifest disregard of controlling law, *see Sanchez*, 878 F.3d at 1222. The arbitrator acknowledged that Delaware law applied (*see* Final Award at 15), but then ignored the applicable law.

In Delaware, "[t]he implied covenant of good faith and fair dealing involves a 'cautious enterprise,'" appropriate only where the party alleging breach identifies "developments or contractual gaps that . . . neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). This doctrine "only applies to developments that could not be anticipated, not developments that the parties simply failed to consider." *Id*. at 1126. Most important, Delaware law does not allow an arbitrator to employ the implied covenant to "rewrite the contract." *Id*.

Here, the arbitrator failed to identify any "contractual gap" that needed to be filled, or any development that "could not be anticipated." He simply rewrote the Agreements to turn "independent contractors" with specific identified duties (Agreements § 2(a)) into agents with generalized duties to "act for the benefit of" GGS and CLS. (Final Award at 16.) The arbitrator

**EXHIBIT 13-72**

acknowledged the applicable law, but ignored it to reach a result that remakes the Agreements, fails to draw its essence from the Agreements, and is not derived from the Agreements.

## IV.      In the Alternative, the Award Should be Modified or Corrected.

If the Final Award is not vacated in its entirety, it should be modified or corrected pursuant to C.C.P. § 1286.6 and 9 U.S.C. § 11 because (1) there was an evident miscalculation of the damages figures, as explained above; (2) the arbitrator exceeded his powers, as explained above; and (3) the arbitrator awarded upon a matter not properly submitted to him, namely, the issue of alter ego liability. "Where a part of an arbitration award cannot be confirmed due to the arbitrator's error of law, the award may be corrected by striking the erroneous part if doing so does not affect the merits of the part that remains." *Sargon Enters., Inc. v. Browne George Ross LLP*, 15 Cal. App. 5th 749, 771 (2017); *accord Coutee v. Barrington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) (an award may be vacated *in part* "if the arbitrator[] acted beyond [his] authority" in a manner that was restricted to specific aspects of the award).

If the Court believes that the arbitrator's errors demonstrated above may be addressed without affecting the merits of the remainder of the Final Award, then the Court should modify or correct the Final Award to:

(1)      remove any discussion of alter ego liability of the Koettings;

(2)      reduce the damages for loans made to GGS and CLS customers to zero (due to failure of proof) or at least to reflect the 1.5% compensation rate set forth in Exhibit A to the Agreements;

(3)      reduce the damages for post-termination payments by the undisputed amount of expenses paid pursuant to Section 5(c) of the Agreements;

21

**EXHIBIT 13-73**

(4)    reduce the damages by the undisputed amount of payments owed pursuant to Section 5(c) of the Agreements;

(5)    reduce the damages for the Legal Defense Fund to reflect the parties' shared obligation under Section 3(i) of the Agreements.

## Conclusion

For the reasons set forth above, Respondents / Cross-Petitioners respectfully request that this Court vacate the Final Award in its entirety or, in the alternative, modify or correct the Final Award as requested above.[11]

February 14, 2019                                Respectfully submitted,

_____

Nancy K. Delaney

Attorney for Respondents / Cross-Petitioners
DAN KOETTING, MARK KOETTING,
ROCKHILL CONSULTING GROUP, LLC,
and REDONDO MANAGEMENT, LLC

---

[11]    If the Court determines that a new hearing is warranted, the Court should order a rehearing before a new arbitrator.  *See* C.C.P. § 1287.  Rockhill does not consent to rehearing before Mr. Netzorg.

22

**EXHIBIT 13-74**

D * R * A * F * T
2/6/19

### DECLARATION OF NANCY K. DELANEY IN SUPPORT OF
### CROSS-PETITION TO VACATE ARBITRATION AWARD

1. My name is Nancy K. Delaney. I am an attorney with Mitchell, Brisso, Delaney & Vrieze in Eureka, California, which serves as counsel for Respondents in this action. I am over the age of 18 years, a citizen of the United States, and not a party to this action. The facts stated herein are within my personal knowledge or based upon matters contained in the attached records, with which I am familiar.

2. Rockhill Consulting Group, LLC ("Rockhill") provided consulting services to Green Gate Services, LLC ("GGS") pursuant to a Consultant and Independent Contractor Agreement dated August 30, 2013. A true and correct copy of the Rockhill/GGS Agreement is attached as **Exhibit A** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal). Dan Koetting was Rockhill's president.

3. Redondo Management, LLC ("Redondo") provided similar services to Clear Loan Solutions, LLC ("CLS") pursuant to a nearly identical Consultant and Independent Contractor Agreement dated August 30, 2013. A true and correct copy of the Redondo/CLS Agreement is attached as **Exhibit B** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal). Mark Koetting was Redondo's managing partner.

4. GGS and CLS are "Tribal Lending Entities" established by the Big Lagoon Rancheria Tribe. Under the Agreements, Rockhill and Redondo served as the executive directors of GGS and CLS, respectively—managing the day-to-day operations of GGS's and CLS's consumer lending programs. Among other things, the Agreements detailed the responsibilities of Rockhill and Redondo, as well as the compensation due for their services and the compensation due to GGS and CLS for the loans within their portfolios. In January 2018, GGS and CLS terminated the Agreements, giving rise to this dispute.

23

**EXHIBIT 13-75**

D * R * A * F * T
2/6/19

5.      Section 8 of the Agreements called for arbitration of any "dispute arising under [the] Agreement[s]." Section 8 further provided that "[t]he remedies available through arbitration are limited to enforcement of the provisions of [the] Agreement[s]."

6.      In January 2018, GGS commenced an arbitration against Rockhill, which filed a counterclaim against GGS. Redondo then commenced an arbitration against CLS, which filed a counterclaim against Redondo. The two cases were consolidated before a single arbitrator, Gordon W. Netzorg of Denver, Colorado.

7.      Respondents repeatedly objected to the arbitrator's exercise of jurisdiction over the Koettings.

8.      On May 18, 2018, Rockhill and Redondo filed a Claimants' Motion Relating to Joinder of Parties, asking the arbitrator to dismiss Dan Koetting and Mark Koetting from the arbitration. A true and correct copy of the motion is attached as **Exhibit C** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal). On June 12, 2018, the arbitrator denied that motion and required the Koettings to participate in the arbitration. A true and correct copy of the arbitrator's June 12, 2018 order is attached as **Exhibit D** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).

9.      The arbitrator conducted a hearing in Denver, Colorado from September 10 through September 12, 2018. True and correct copies of relevant portions of the Hearing Transcript and Hearing Exhibits are attached as **Exhibits E-J** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal):

E      Excerpts from Hearing Transcript (Day 2)

F      Excerpts from Hearing Transcript (Day 3)

24

**EXHIBIT 13-76**

G        Hearing Exhibit 521

H        Hearing Exhibit 520

I        Hearing Exhibit 517

J        Hearing Exhibit 321

10.    After further briefing, the arbitrator issued a Final Award dated December 22, 2018, determining that Rockhill and Redondo were liable for breach of contract and breach of the implied covenant of good faith and fair dealing.  (The arbitrator expressly rejected all other claims.)  The arbitrator assessed damages of more than $10.9 million against Rockhill and Dan Koetting, and more than $3.1 million against Redondo and Mark Koetting.  The arbitrator ruled that the Koettings were liable for the breaches of Rockhill and Redondo under an alter ego theory.  A true and correct copy of the Final Award is attached as **Exhibit K** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).

11.    On January 11, 2019, Respondents / Cross-Petitioners filed a Motion for Modification of Final Award, asking the arbitrator to modify the Final Award to correct significant errors in the computation of damages.  The arbitrator denied the motion.  A true and correct copy of the Motion for Modification of Final Award is attached as **Exhibit L** (conditionally lodged under seal pending determination of Respondents' Motion to File Documents Under Seal).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

February _____, 2019

_____
Nancy K. Delaney

25

**EXHIBIT 13-77**