1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    REDONDO MANAGEMENT, LLC, et al.,        Case No. 24-cv-06104-TLT

8                Plaintiffs,

9          v.                                **ORDER GRANTING MOTION TO
                                             DISMISS**
10   BRADLEY ARANT BOULT CUMMINGS            Re: Dkt. No. 44
     LLP, et al.,
11
                Defendants.
12

13         On August 28, 2024, Plaintiffs Redondo Management, LLC ("Redondo") and Mark J.

14   Koetting ("Koetting") (collectively, "Plaintiffs") filed a complaint against Defendants Bradley

15   Arant Boult Cummings LLP ("BABC") and S. David Smith ("Smith") (collectively,

16   "Defendants"). ECF 1. Plaintiffs' claims stem from Defendants' representation of Plaintiffs in an

17   arbitration that took place in Denver, Colorado. ECF 37, ¶¶ 48–74.

18         Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and

19   improper venue. ECF 44. The Court found this matter appropriate for resolution without oral

20   argument. ECF 52; *see* Civil L.R. 7(1)(b) (authorizing courts to dispense with oral argument on

21   any motion except where an oral hearing is required by statute).

22         Having considered the papers filed by the parties, and for the reasons stated below, the

23   Court **GRANTS** Defendants' motion to dismiss with prejudice.

24   **I.    BACKGROUND**

25         **A.    Procedural History**

26         On August 28, 2024, Plaintiffs filed a complaint against Defendants. ECF 1. The action

27   was related but not consolidated with *Rockhill Consulting Group, LLC v. Bradley Arant Boult*

28   *Cummings LLP*, 3:24-cv-06085. ECF 15. Defendants filed a motion to dismiss; however, prior to

United States District Court
Northern District of California

1    the conclusion of briefing, Plaintiffs amended their complaint.  ECF 24, 37.  The amended

2    complaint alleges: (1) professional negligence, (2) breach of written contract, (3) breach of

3    implied contract, and (4) breach of fiduciary duty.  ECF 37, ¶¶ 139–166.

4         Defendants filed a motion to dismiss the amended complaint for lack of personal

5    jurisdiction and improper venue.  ECF 44.  Plaintiffs timely filed an opposition, and Defendants

6    timely filed a reply.  ECF 49, 51.  In conjunction with their opposition, Plaintiffs also request

7    judicial notice of 19 exhibits.  ECF 50.

8         **B.    Factual History**

9              **1.   The Parties**

10        Plaintiff Mark J. Koetting resides in Kansas.  ECF 37, ¶ 6.  Koetting is the manager of

11   Redondo, a Delaware limited liability company with its principal place of business in Overland

12   Park, Kansas.  *Id.* ¶ 7.

13        Defendant BABC is an Alabama law firm with offices in Alabama, District of Columbia,

14   Florida, Georgia, Mississippi, North Carolina, Tennessee, and Texas.  ECF 44, Declaration of

15   David Roth ("Roth Decl.") ¶ 2.  BABC does not have an agent for service of process in California

16   and is not qualified to do business in California.  *Id.* ¶ 3.  BABC also pays no taxes in California.

17   *Id.* ¶ 4.

18        Out of BABC's 711 lawyers, 13 are licensed in California and 12 are dually licensed in

19   California and other jurisdictions.  *Id.* ¶ 5.  None of the California-licensed attorneys reside in

20   California.  *Id.*  Two BABC partners, Wendell Allen and Jeffrey Anderson, represented Plaintiffs

21   in the enforcement of the arbitration in Humbolt County.  ECF 50, Exhibits ("Exs.") 2–5.  Neither

22   partner is licensed to practice in California and were admitted *pro hac vice*.  *Id.*; ECF 37, ¶ 92.

23        Defendant Smith is a former partner at BABC who lives in Houston, Texas and is a

24   member of the Texas State Bar.  ECF 37, ¶ 9; ECF 44, Declaration of S. David Smith ("Smith

25   Decl.") ¶ 3.

26        In the related action, *Rockhill Consulting Group, LLC v. Bradley Arant Boult Cummings

27   LLP*, Rockhill also alleges legal malpractice against Defendants stemming from the same

28   arbitration in which the claims against Rockhill and Redondo were consolidated.  ECF 15; ECF

United States District Court
Northern District of California

United States District Court
Northern District of California

1    37, ¶¶ 3, 50.  Rockhill is similarly structured as Redondo and is managed by Mark Koetting's

2    brother, Daniel Koetting.  ECF 37, ¶¶ 5–6.  Because Defendants jointly represented both Redondo

3    and Rockhill in the arbitration, some facts in this action and the *Rockhill* action overlap.  *Id.* ¶ 3.

4    **2.  Redondo's Consulting Agreement with Clear Loan Solutions**

5    Redondo entered into a consultant and independent contractor agreement with Clear Loan

6    Solutions, LLP ("CLS"), a tribal lending entity organized under the Indian Tribe, Big Lagoon

7    Rancheria ("BLR"), to operate an online consumer lending program.  ECF 37, ¶¶ 11–14.  BLR is

8    based in Humboldt County, California.  *Id.* ¶ 13.

9    Throughout the negotiation of the consulting agreement, Redondo received legal advice

10   from Jennifer Galloway, a solo practitioner in the State of Florida.  *Id.* ¶ 16.  In 2017, the

11   relationship between CLS and Redondo became contentious and ultimately terminated on January

12   8, 2018.  *Id.* ¶ 17.  CLS then took control of all bank accounts associated with and used to operate

13   the loan program.  *Id.* ¶ 18.

14   CLS initiated arbitration with the American Arbitration Association ("AAA") in

15   Sacramento, California.  *Id.* ¶ 21.  The consulting agreement between CLS and Redondo provided

16   that any arbitration would be heard in Sacramento, California, and that enforcement of the award

17   would be in the Northern District of California or the Superior Court in Humboldt County.  *Id.* ¶

18   22.

19   **3.  BABC's Retainer Agreement with Redondo and Koetting**

20   On January 10, 2018, Plaintiffs and Defendants entered into an Attorney Client

21   Engagement Agreement.  *Id.* ¶ 26; ECF 37-1.  The agreement was sent to Koetting's address in

22   Kansas.  ECF 37-1, at 1.  The agreement was signed by both Smith and Koetting.  *Id.* at 4.  The

23   agreement stated that the "State Bar of Texas investigates and prosecutes complaints of

24   professional misconduct against attorneys licensed in Texas."  *Id*.

25   Galloway had advised Plaintiffs to retain BABC and Smith to represent them in the

26   dispute.  ECF 37, ¶ 23.  Galloway served as Plaintiffs' co-counsel for Plaintiffs, until the

27   representation was consolidated when Galloway joined BABC as a partner in or about April or

28   May 2018.  *Id*.

United States District Court
Northern District of California

1    On February 14, 2018, Defendants, on Redondo's behalf, filed a counter demand for

2    arbitration against CLS with the AAA in California for multiple breaches of the consulting

3    agreement. *Id.* ¶ 34.

4    **4.  The Mediation**

5    On March 22, 2018, the parties participated in an all-day mediation in San Francisco,

6    California. *Id.* ¶ 45.  Smith flew to San Francisco for the mediation. *Id.*  The parties did not come

7    to a resolution and the parties instead prepared for arbitration. *Id.* ¶ 47.

8    **5.  The Arbitration**

9    Based on BABC's advice, Plaintiffs agreed to allow Gordon Netzorg to act as the

10    arbitrator. *Id.* ¶ 48.  Following a preliminary hearing, the arbitrator consolidated the instant action

11    with the *Rockhill* action and set the arbitration for September 10, 2018 in Denver, Colorado. *Id.* ¶¶

12    40, 50. Plaintiffs allege that consultation was a poor strategic decision by BABC given that

13    Redondo and Rockhill had no operating overlap, and Rockhill significantly overshadowed

14    Redondo in terms of size of the loan operations. *Id.* ¶ 52.

15    To prepare for the arbitration, Smith traveled to and from California on September 4, 2018

16    to prepare Koetting's brother, Daniel, for arbitration. *Id.* ¶ 75.  Plaintiffs further allege that

17    BABC's invoices were divided between Rockhill and Redondo, each of whom were billed for

18    one-half the legal services and costs, including all of Defendants' California related activities. *Id.*

19    ¶ 78.

20    Plaintiffs allege that BABC failed to properly prepare for the arbitration. *Id.* ¶¶ 53–70.

21    Following an adverse interim award, Netzorg issued the final adverse ruling on December 26,

22    2018. *Id.* ¶ 71.  The final ruling found wholly for the TLEs, denied all of Plaintiffs' claims, and

23    found Koetting as an alter ego of Redondo, and therefore personally liable. *Id.*

24    **6.  The Arbitration Enforcement**

25    CLS sought to confirm the arbitration award in Humboldt County Superior Court in an

26    action entitled *Green Gate Services, LLC et al., v. Dan Koetting, et al., Humboldt County Superior*

27    *Court*, Case No. CV190030 (the "Humboldt County Action"). *Id.* ¶¶ 84–85.  Plaintiffs engaged

28    the local counsel with the explicit provision that they would work at the direction of BABC

4

United States District Court
Northern District of California

1    partner, Wendell Allen.  *Id.* ¶ 87.  Two BABC partners, Wendell Allen and Jeffrey Anderson,

2    were admitted *pro hac vice* and represented Plaintiffs in the enforcement of the arbitration in

3    Humbolt County.  *Id.* ¶ 92; ECF 50, Exs. 2–5.

4         On April 8, 2019, Allen and Anderson traveled to California to oppose the confirmation of

5    the arbitration award and the entry of judgment, and to quash the service of the summons as to

6    Koetting for lack of personal jurisdiction.  *Id.* ¶ 95.  BABC remained as counsel of record for

7    Plaintiffs in the Humboldt County Superior Court Action until March 16, 2021.  *Id.* ¶ 102.  The

8    court in the Humboldt County Action ultimately determined that Koetting was subject to personal

9    jurisdiction in California and entered judgment against Plaintiffs on November 18, 2024 after

10   several appeals.  *Id.* ¶¶ 91, 105–06.

11   **II.    LEGAL STANDARDS**

12        **A.    Federal Rule of Civil Procedure 12(b)(2)**

13        Under Rule 12(b)(2), a party may assert a defense for lack of personal jurisdiction.  Fed. R.

14   Civ. P. 12(b)(2).  "Where a defendant moves to dismiss a complaint for lack of personal

15   jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."

16   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  When "the motion

17   is based on written materials rather than an evidentiary hearing, the plaintiff need only make a

18   prima facie showing of jurisdictional facts."  *Id.* (cleaned up) (internal citations omitted).  In those

19   cases, the court only inquires into whether the plaintiff's "pleadings and affidavits make a prima

20   facie showing of personal jurisdiction."  *Id.* (internal citations omitted).  Uncontroverted

21   allegations in the complaint must be taken as true; conflicts between the parties "over statements

22   contained in affidavits" must be resolved in plaintiff's favor.  *Id.*

23        Rule 4(k)(1)(A) provides that the district court "applies the law of the state in which the

24   district court sits" because there is no applicable federal law governing personal jurisdiction.  *Id.*

25   (citing Fed. R. Civ. P. 4(k)(1)(A)).  California's long-arm jurisdictional statute is coextensive with

26   federal due process requirements, meaning the "jurisdictional analyses under state law and federal

27   due process are the same."  *Id.* at 800–01.  "For a court to exercise personal jurisdiction over a

28   nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant

United States District Court
Northern District of California

1    forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and

2    substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (citing *Int'l Shoe Co. v. Washington*, 326

3    U.S. 310, 316 (1945)).

4            **B.**    **Federal Rule of Civil Procedure 12(b)(3)**

5         Under Rule 12(b)(3), a defendant may assert a defense for dismissal under the theory of

6    improper venue.  Fed. R. Civ. P. 12(b)(3).  Under 28 U.S.C. Section 1391(b), a civil action may be

7    brought in:

8            (1) a judicial district in which any defendant resides, if all defendants
     are residents of the State in which the district is located; (2) a judicial

9            district in which a substantial part of the events or omissions giving
     rise to the claims occurred, or a substantial part of property that is the

10           subject of action is situated; or (3) if there is no district in which an
     action may otherwise be brought as provided in this section, any

11           judicial district in which any defendant is subject to the court's
     personal jurisdiction with respect to such action.

12   28 U.S.C. § 1391(b).  When the venue is improper, the Court must "dismiss, or if it in in the

13   interest of justice, transfer such case to any district or division in which it could have been

14   brought."  *Id*. § 1406(a).

15   **III.**    **REQUEST FOR JUDICIAL NOTICE**

16        Plaintiffs request that the Court take judicial notice of 19 exhibits in connection to the

17   motion to dismiss.  ECF 50.  Defendants do not oppose Plaintiffs' request.

18        Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not

19   subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute"

20   if it is "generally known," or "can be accurately and readily determined from sources whose

21   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).

22        Here, all 19 exhibits are court records that are appropriate for judicial notice.  ECF 50, at

23   2–4; *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018); *see also Mendez v.*

24   *Optio Solutions, LLC*, 219 F. Supp. 3d 1012, 1014 (S.D. Cal. 2016) ("Judicial notice of court

25   records is routinely accepted.").  Exhibits 1 to 17 and 19 are directly relevant to this action

26   because they involve court records from the arbitration enforcement proceedings.  The Court

27   **GRANTS** Plaintiffs' request for judicial notice as to the existence of Exhibits 1 to 17 and 19.

28

1    Exhibit 18 is a court record from Daniel Koetting's divorce proceedings.  *See* ECF 50-18.

2   Daniel Koetting is Plaintiff Mark Koetting's brother.  ECF 37, ¶ 6.  Plaintiffs seek judicial notice

3   of this exhibit to demonstrate that Daniel Koetting experienced damages in California as a result

4   of the alleged malpractice.  ECF 49, at 13.  However, Daniel Koetting's damages are not relevant

5   to the instant action involving Mark Koetting.  Therefore, the Court **DENIES** request for judicial

6   notice as to Exhibit 18.  *See Blye v. California Supreme Court*, No. 11-cv-5046-DWM, 2014 WL

7   295022, at *1 (N.D. Cal. Jan. 21, 2014) ("Although the Rules of Evidence do not expressly require

8   a fact to be relevant for it to be judicially noticed, an irrelevant fact is one not of consequence in

9   determining the action, *see* Fed. R. Evid. 401(b), and therefore cannot be classified as an

10  adjudicative fact."); *see also* Fed. R. Evid. 201(a) ("This rule governs judicial notice of an

11  adjudicative fact only, not a legislative fact.").

12  **IV.    DISCUSSION**

13      **A.    The Court lacks personal jurisdiction over Defendants.**

14      "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant

15  must have at least 'minimum contacts' with the relevant forum such that the exercise of

16  jurisdiction does not 'offend traditional notions of fair play and substantial justice.'"

17  *Schwarzenegger*, 374 F.3d at 801 (citing *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316

18  (1945)).  "Under the minimum contacts analysis, a court can exercise either general or all-purpose

19  jurisdiction or specific and conduct-linked jurisdiction."  *AM Trust v. UBS AG*, 78 F. Supp. 3d

20  977, 982 (N.D. Cal. 2015) (internal quotations omitted).

21      "[J]urisdiction depends only upon each defendant's relationship with the forum."  *Sher v.*

22  *Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).  Jurisdiction "over each defendant must be

23  established individually."  *Id.*

24      Here, Defendants argue that the Court lacks both general jurisdiction and specific

25  jurisdiction over both Defendants.  Plaintiffs argue that jurisdiction was established through

26  Defendant's representation of Plaintiffs in the arbitration proceedings.  The Court will address

27  each argument in turn.

28

United States District Court
Northern District of California

1                    **1.  The Court lacks general jurisdiction over both Defendants.**

2          Defendants argue that the Court lacks general jurisdiction over both Defendants.  ECF 44,

3   at 10.  In opposition, Plaintiffs argue that the Court should exercise general jurisdiction over

4   Defendants.  ECF 49, at 27.

5          "In the context of general jurisdiction, minimum contacts exist where a defendant has

6   'substantial' or 'continuous and systematic' contacts with the forum state, even if the case is

7   unrelated to those contacts."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir.

8   2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  The

9   "minimum contacts test" is "not susceptible to mechanical application; rather, the facts of each

10  case must be weighed to determine whether the requisite 'affiliating circumstances' are present."

11  *Kulko v. Superior Ct. of Cal.*, 436 U.S. 84 (1978).

12         These contacts must "approximate physical presence in the forum state."  *Schwarzenegger*,

13  374 F.3d at 801.  The Court, however, has not "developed a precise checklist" of factors but

14  instead considers "whether the defendant makes sales, solicits or engages in business in the state,

15  serves the state's markets, designates an agent for service of process, holds a license, or is

16  incorporated there."  *Tuazon*, 433 F.3d at 1172.   "It is the nature and extent of the contacts that

17  determines whether they are substantial or continuous and systematic."  *Id.* (internal citations

18  omitted).

19                          **a.  BABC**

20         The Court first addresses general jurisdiction as to BABC.  BABC is an Alabama limited

21  liability partnership with a principal place of business in Alabama.  ECF 37, ¶ 8.  Because BABC

22  does not have principal place of business in California, this weighs against a finding of general

23  jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (explaining that courts look to

24  a corporation's place of incorporation and principal place of business to establish general

25  jurisdiction); *In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n.14

26  (S.D. Cal. 2018) (noting that courts have held that this test applies to non-corporate entities such

27  as limited liability partnerships and limited partnerships); *see also Waldman v. Palestine*

28  *Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("[T]here is no reason to invent a different test

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    for general personal jurisdiction depending on whether the defendant is an individual, corporation,

2    or another entity.").

3            BABC also has no offices in California and does not own or lease any office space or other

4    property in California.  Roth Decl. ¶ 3.  It does not have an agent for service of process in

5    California.  *Id.*  It has no bank accounts, telephone numbers, or mailing address in California.  *Id.*

6    ¶ 4.  It has never paid taxes in California.  *Id.*; *see Marvix Photo, Inc. v. Branch Tech., Inc.*, 647

7    F.3d 1218, 1225 (9th Cir. 2021) (holding that defendant's contacts with California fell short when

8    defendant had no offices or staff in California, was not registered to do business in the state, had

9    no registered agent for service of process, and paid no state taxes).

10            Furthermore, the contacts that Plaintiffs rely on are insufficient to meet the continuous and

11    systematic standard.  Plaintiffs note that BABC has thirteen attorneys licensed to practice law in

12    California, BABC consented to California jurisdiction as a litigant in a prior unrelated case, and

13    BABC appeared in over 120 California cases between January 10, 2018 and September 17, 2024,

14    which it argues makes California the "seventh most frequented forum in which [BABC]

15    practices."  ECF 37, ¶¶ 120–22, 125, 134–36.  BABC has also represented California clients and

16    admits to doing so on its website.  *Id.* ¶¶ 130–33.  Further, BABC's website contains information

17    regarding California law, notable California cases, and information regarding California clients.

18    *Id.* ¶¶ 118–19.

19            While these facts establish that BABC has contacts in California, these contacts are

20    limited.  None of the thirteen attorneys with California bar licenses live in California, and twelve

21    of these attorneys are dually licensed in other states.  Roth Decl. ¶ 5.  Further, its thirteen lawyers

22    make up less than 5 percent of the firm.  *Id.*  While BABC did appear in 120 California cases,

23    these cases were over the course of seven years, averaging only 17 cases per year.  ECF 51, at 7.

24    During that same period, BABC appeared in 3,759 cases around the county, meaning that BABC's

25    California cases made up around 3 percent of its total cases.  Ybarra Decl. ¶ 15.  Looking at these

26    contacts together suggests that BABC's contacts with the state were limited and occasional rather

27    than continuous and systematic.  *Compare with Tuazon*, 433 F.3d at 1173 (holding that the

28

1    defendant's contacts were not limited when defendant had a presence in the state for half a century

2    and generated "enormous" revenue there).

3           BABC also does not solicit business in California.  Although BABC has a website, which

4    Plaintiffs state is "filled with analysis of California law, notable California cases, and information

5    regarding California clients," the website does not explicitly advertise to individuals in California

6    and only highlights its California representations in a fraction of its attorneys' biographies.  *See,*

7    *e.g.*, ECF 49, Declaration of Mark B. Wilson ("Wilson Decl."), Exs. 1–12.  Therefore, the website

8    neither explicitly advertises nor solicits business from California clients, which weigh against a

9    finding of general jurisdiction.

10          As for whether BABC consented to jurisdiction, BABC filed one anti-SLAPP motion in

11   the Los Angeles Superior Court in February 2021.  *Shabsis, et al. v. Maki, et al.*, Case No.

12   19STCV30802 (Cal. Super. Ct. 2021); ECF 49-14, Declaration of Eric A. Ybarra ("Ybarra Decl.")

13   ¶ 20.  Plaintiffs suggest that BABC's failure to raise a jurisdictional objection prior to filing the

14   anti-SLAPP in this unrelated action from four years ago is sufficient to establish general

15   jurisdiction.  However, Plaintiffs do not cite to any caselaw in support of this assertion.  *See* ECF

16   49, at 28.  The Court rejects this argument.  *See also Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d

17   1482, 1490 (9th Cir. 1993) (finding that plaintiff's filing an unrelated action does not subject

18   plaintiff to personal jurisdiction for all cases involving plaintiff in the same forum).

19          In sum, while BABC has some contacts with California, these contacts are insufficient to

20   establish general jurisdiction.  *See Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851

21   n.3 (9th Cir. 1993) (noting that defendant's "lack of incorporation, license or authorization to do

22   business, offices, property, employees, payment of taxes, advertising, solicitation," or sales in the

23   forum state were not sufficiently 'continuous and systematic' to support general jurisdiction).  The

24   Court finds that it lacks general jurisdiction over BABC.

25                    **b.  Smith**

26          The Court next addresses general jurisdiction as to Smith.  In their opposition, Plaintiffs do

27   not address contacts giving rise to general jurisdiction as to Smith specifically.  Instead, Plaintiffs

28   combine the alleged contacts as to BABC with Smith and conclude that the Court has general

United States District Court
Northern District of California

1    jurisdiction over Smith.  However, jurisdiction "over each defendant must be established

2    individually." *Sher*, 911 F.2d at 1365.  Here, Smith's contacts with California do not meet the

3    continuous and systematic standard.  Smith is a resident of Texas and an active member of the

4    Texas bar.  Smith Decl. ¶ 3.  He has never resided in or practiced law in California.  *Id.* ¶ 4.

5    Further, he does not own real property, pay taxes, or engage in business in California.  *Id.* ¶¶ 4–5.

6          Smith does have some contacts to California.  Smith attended a one-day mediation in San

7    Francisco.  ECF 37, ¶ 45.  He traveled to California for two days to prepare Koetting's brother for

8    the arbitration.  *Id.* ¶ 75.  However, these minimal contacts do not establish "'substantial' or

9    'continuous and systematic' contacts with the forum state." *Tuazon*, 433 F.3d at 1172 (9th Cir.

10   2006).  The Court finds that it lacks general jurisdiction as to Smith.

**2.  The Court lacks specific jurisdiction over both Defendants.**

12         Parties also dispute whether the Court can exercise specific jurisdiction as to either

13   Defendant.  To determine whether the Court may exercise specific jurisdiction over a nonresident

14   defendant, the Court applies the following three-part test:

> (1) The non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident thereof;
> or perform some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

21         "The plaintiff bears the burden on the first two prongs."  *Boschetto v. Hansing*, 539 F.3d

22   1011, 1016 (9th Cir. 2008) (internal citations omitted).  "If the plaintiff establishes both prongs

23   one and two, the defendant must come forward with a compelling case that the exercise of

24   jurisdiction would not be reasonable." *Id.* (internal citations omitted).  "But if the plaintiff fails at

25   the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id.* (citing *Pebble

26   Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).

*United States District Court*
*Northern District of California*

11

1    As an initial matter, Plaintiffs argue that because two BABC partners were admitted as *pro*

2  *hac vice* in an enforcement action after the arbitration had concluded, the Court can forego any

3  further analysis and find personal jurisdiction for both BABC and Smith.  *See* ECF 49, at 17–18.

4  The Court declines Plaintiffs' invitation and applies the prongs set forth by the Ninth Circuit.

5    **a.  Defendants did not purposefully avail themselves of California.**

6    Defendants argue that they did not purposely avail themselves of California.  ECF 44, at

7  13.  Plaintiffs contend that Defendants did purposely avail themselves of California through their

8  representation of Plaintiffs.  ECF 49, at 20.

9    Courts "often use the phrase 'purposeful availment' in shorthand fashion, to include both

10 purposeful availment and purposeful direction" but the concepts of availment and direction are

11 distinct.  *Schwarzenegger*, 374 F.3d at 802.  While purposeful availment is used in "suits sounding

12 in contract," purposeful direction is used "in suits sounding in tort."  *Id.*  In this case, purposeful

13 availment applies because the case sounds in contracts rather than intentional torts.  *See Holland*

14 *Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (explaining that the

15 three-part "effect" test only applies to intentional torts, not to "breach of contract and negligence

16 claims.").

17   To determine whether "a defendant purposefully availed himself of the privilege of doing

18 business in a forum state typically consists of evidence of the defendant's actions in the forum,

19 such as executing or performing a contract there."  *Schwarzenegger*, 374 F.3d at 802.  "By taking

20 such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within

21 the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357

22 U.S. 235, 253 (2004).  "In return for these 'benefits and protections,' a defendant must—as a quid

23 for a quo—'submit to the burdens of litigation in that forum.'"  *Schwarzenegger*, 374 F.3d at 802

24 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  However, "the mere

25 existence of a contract with a party in the forum state does not constitute sufficient minimum

26 contacts for jurisdiction."  *Sher*, 911 F.2d at 1362.  The court must turn to "prior negotiations and

27 contemplated future consequences, along with the terms of the contract and the parties' actual

28

12

1    course of dealing to determine if the defendant's contacts are substantial and not merely random,

2    fortuitous, or attenuated." *Id.* (citing *Burger King*, 471 U.S. at 479, 480).

3        Because this case involves the personal availment of non-resident law firms, the Court will

4    also consider the persuasive *Jacqueline B.* factors to assess whether Defendants have

5    "purposefully availed themselves of a forum state's benefits." *Jacqueline B. v. Rawls L. Grp.,*

6    *P.C.*, 68 Cal. App. 5th 243, 255 (Cal. Ct. App. 2021).

7        The *Jacqueline B.* factors include: (1) "whether the malpractice plaintiff/former client lived

8    in the forum state at the time the firm or lawyers were retained, as well as when the allegedly

9    defective legal services were provided"; (2) whether "the firm or lawyers were physically located

10    in the forum state, licensed to practice law there, used those licenses to perform the legal services

11    at issue, or were cocounsel with lawyers located in the state"; (3) "whether the retainer agreement

12    was executed in the forum state or whether the obligation to pay for legal services under the

13    agreement was enforceable solely through the forum state's legal process"; (4) "whether the legal

14    services alleged to be defectively provided were provided in the forum state, and if the services

15    involved litigation, whether the firm or its lawyers acquired evidence in the forum state, filed suit

16    in the forum state, or otherwise invoked the forum state's legal process"; and (5) whether "the

17    legal services provided or the plaintiff's malpractice lawsuit relied upon application—or

18    misapplication—of the laws of the forum state." *Id.* at 255–56.  The Court looks to "the totality of

19    these factors in assessing whether a firm or lawyers have purposefully availed themselves of the

20    forum state." *Id.* at 256.

21        As an initial matter, Plaintiffs argue that Defendants' contacts with California in the related

22    *Rockhill* action should also be considered in the instant action.  Plaintiffs argue that because

23    BABC agreed to consolidate claims for Rockhill and Redondo in the arbitration, all mistakes made

24    in representing the Rockhill contributed to the adverse results against Plaintiffs.  ECF 49, at 10;

25    ECF 37, ¶ 50.

26        Defendants argue that only Defendants' contacts with California are relevant, not

27    Defendant's communications with persons who reside in California, such as Koetting's brother.

28    ECF 51, at 9.  For example, in *Drayton v. Eastlink Prods., Inc.*, plaintiff argued that defendants'

13

United States District Court
Northern District of California

1    contact with other defendants in California was sufficient to establish specific jurisdiction. No.

2    LA 17-CV-06408-VAP, 2018 WL 5266870, at *5 (C.D. Cal. Mar. 20, 2018). Specifically,

3    plaintiff argued that although defendant lived in New York, he received emails from another

4    defendant who lived in California. *Id.* at *7. The court held that "[p]laintiff [could ]not rely on

5    [d]efendants' contacts with other defendants to establish specific jurisdiction; rather, [p]laintiff

6    [had to] demonstrate that [d]efendants [had] minimum contacts with California." *Id.*; *see also*

7    *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("'[M]inimum contacts' analysis looks to the

8    defendant's contacts with the forum State itself, not the defendant's contacts with persons who

9    reside there.").

10        However, unlike in *Drayton*, the Court does not consider Defendants' contacts with

11    Koetting's brother simply because Koetting's brother resides in California. Because the *Rockhill*

12    and *Redondo* matters were consolidated for the arbitration, Defendants' communications with

13    Koetting's brother in California regarding the consolidated action are relevant here. The Court

14    will consider Defendants' contacts with California in the context of preparing both matters for the

15    arbitration.

16                                     **i.    BABC**

17        For BABC's contacts with California, Plaintiffs assert that BABC attorneys traveled to

18    California to attend a full day mediation, to prepare Koetting's brother for the arbitration, and to

19    participate in the Humboldt County enforcement action. Plaintiffs also argue that BABC

20    communicated with Koetting's brother in California through emails, phone calls, and billing

21    statements.

22        BABC's communication with Koetting's brother through emails and phone calls, and

23    BABC's reception of payments made in California do not establish deliberate creation of a

24    substantial connection in the state. *See Sher*, 911 F.2d at 1362 (holding that phone calls and letters

25    to California, as well as payments made from a California bank, were not a "deliberate creation"

26    of a substantial connection with California).

27        Further, because a Florida lawyer referred Plaintiffs to BABC, BABC did not solicit

28    Plaintiffs' business. ECF 37, ¶ 23. The referral shows that BABC did not undertake affirmative

1    action to promote business within California, indicating that BABC lacks a substantial connection

2    with California.  S*ee Sher*, 911 F.2d at 1362 ("There is no 'substantial connection' with California

3    because neither the partnership nor any of its partners undertook any affirmative action to promote

4    business within California.").

5         Next, BABC attorneys' trips to California are also not sufficient to establish a substantial

6    connection with the state.  Here, BABC partners traveled to California three times as part of the

7    representation.  Smith and BABC co-counsel attended a full-day mediation in San Francisco,

8    California.  ECF 37, ¶ 45.  Smith also traveled to California to prepare Koetting's brother ahead of

9    the arbitration.  *Id.* ¶ 75.  BABC partners, Allen and Anderson, traveled to argue before the

10   Humboldt County Superior Court to oppose the confirmation of the arbitration award.  ECF 50,

11   Exs. 2–5.  Neither partner is licensed to practice in California and were admitted *pro hac vice*.  *Id.*;

12   ECF 37, ¶ 92.  However, these trips to California do not create a substantial connection with

13   California.

14        For example, in *Sher*, the Court determined whether a Florida law firm representing a

15   California client in a criminal proceeding in Florida had purposely availed itself in California.

16   *Sher*, 911 F.2d at 1362.  The Court observed that the defendant lawyer had traveled to Los

17   Angeles to meet with Plaintiffs on three occasions.  *Id.* at 1363.  However, the Court noted that

18   these visits, while in context of the parties' actual course of dealing, were out of convenience to

19   the Plaintiffs.  *Id.*  The Court found that these three trips were too attenuated to create a substantial

20   connection with California.  *Id.*; *but see id.* (finding purposeful availment due to the creation of a

21   deed of trust in favor of the law firm, encumbering plaintiffs' California home); *see also Davis v.*

22   *Cranfield*, 71 F.4th 1154, 1166 (9th Cir. 2023) (holding that the two trips by defendant's

23   employees to the forum state were too attenuated and did not establish defendant's attempt to gain

24   the benefit and protection of the forum state).  Like in *Sher* and *Davis*, the Court finds that

25   BABC's visits to California are too attenuated to create a substantial connection with California.

26        BABC's participation in the Humboldt County Superior Court action also does not

27   evidence of a substantial connection with California.  Plaintiffs emphasize that BABC consented

28   to specific jurisdiction in California because two of its partners appeared *pro hac vice* in the

United States District Court
Northern District of California

15

1    Humboldt County Superior Court action.  ECF 49, at 17.  Plaintiffs argue that California Rule of

2    Court 9.40 provides that an "out-of-attorney is subject to jurisdiction in California for charges of

3    professional misconduct arising out of his or her pro hac vice appearance in the state."  *Id.* at 17–

4    18 (citing Cal. R. Ct. 9.40).

5            However, Allen and Anderson, who appeared *pro hac vice* in Humboldt County Superior

6    Court, did not participate in the arbitration and are not named defendants in the instant litigation.

7    Plaintiffs argue that the enforcement action would not have occurred had it not been for

8    Defendants' negligence in the arbitration.  However, Plaintiffs do not assert any negligence in the

9    enforcement action itself and do not cite to any caselaw that would suggest to the contrary.  The

10   Court finds that jurisdiction is not proper based on the partners' *pro hac vice* appearances.  *See*

11   *Adv. Multilevel Concepts, Inc. v. Stalt, Inc.*, No. 11-cv-6679-SC, 2012 WL 1835734, at *4 (N.D.

12   Cal. May 21, 2012) (finding that *pro hac vice* appearances cannot establish jurisdiction where the

13   underlying claims are unrelated to the appearances).

14           Further, the *Jacqueline B.* factors affirm a finding of no purposeful availment.  For the first

15   factor, neither Plaintiff lived or resided in California at the time they retained Defendants and at

16   the time of the events of the instant action.  ECF 37, ¶¶ 6–7.  For the second factor, neither BABC

17   nor any of its attorneys are physically located in California.  Roth Decl. ¶ 3.  The two *pro hac vice*

18   attorneys who represented Plaintiffs during the arbitration enforcement were both barred in

19   Alabama and were physically based in Alabama.  ECF 50, Exs. 2–5.  Plaintiffs also do not allege

20   that Smith worked with any California co-counsel.  *See* ECF 37, ¶¶ 16, 26.  These factors weigh

21   against purposeful availment.

22           For the third factor, the retainer agreement indicates that Defendants sent the retainer

23   agreement to Kansas to be signed.  ECF 37-1, at 1.  Furthermore, the retainer agreement itself

24   states that the "State Bar of Texas investigates and prosecutes complaints of professional

25   misconduct against attorneys licensed in Texas."  *Id.* at 4.  Therefore, there is no indication that

26   the "obligation to pay for legal services under the agreement was enforceable solely through

27   [California]'s legal process."  *Jacqueline B.*, 68 Cal. App. 5th at 256.  This factor weighs against

28   purposeful availment.

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1      For the fourth factor, the "legal services alleged to be defectively provided" were provided

2  in the forum state. Although in the initial complaint Plaintiffs alleged professional negligence

3  only as to the arbitration in Denver, Colorado, Plaintiffs subsequently amended the complaint to

4  also include brief allegations of professional negligence in the one-day mediation in San

5  Francisco, California, and in preparing Koetting's brother in California. ECF 37, ¶¶ 46, 75. After

6  amendment, this factor weighs in favor of purposeful availment.

7      Finally, as to the fifth factor, there are no allegations in the amended complaint that

8  suggest that the arbitration was premised on California law. Plaintiffs allege that the subsequent

9  enforcement action was premised on California law. *See* ECF 37, ¶¶ 77, 89. However, the

10  "misapplication" of law alleged in this malpractice action was based on the arbitration—not the

11  representation in the subsequent enforcement action. Thus, this factor weighs against purposeful

12  availment.

13      In totality, the *Jacqueline B.* factors weigh against a finding of purposeful availment.

14  Here, Defendants' contacts with California are even sparser than in the related *Rockhill* action.

15  The retainer agreement was not signed in California and all parties to this action are located

16  outside of California. BABC's limited contacts with the state are insufficient to establish

17  substantial connection with California. Accordingly, the Court finds that BABC did not

18  purposefully avail itself of the privilege of conducting activities in California.

19                          **ii.    Smith**

20      Similarly, the Court does not find purposeful availment as to Smith. The analysis above

21  for BABC applies in the same force to Smith. *See supra* Section II.A.2.a.i. Smith did not

22  deliberately create a substantial connection with California.

23      First, Smith did not solicit business in California, as a Florida attorney referred Plaintiffs to

24  him. ECF 37, ¶ 23. His communications with Koetting's brother were not enough to create a

25  substantial connection. *See Sher*, 911 F.2d at 1362 (holding that phone calls and letters to

26  California did not create a substantial connection with the state). Smith also only traveled to

27  California twice: once for the mediation and once for witness preparation of Koetting's brother.

28  ECF 37, ¶¶ 45, 75. This travel is too attenuated of a contact to create a substantial connection.

17

1    *See Sher*, 911 F.2d at 1363 (holding that three trips to California as part of a representation of a

2    California client were too attenuated to create a 'substantial connection' with California).  Smith's

3    representation ended after the arbitration in Denver, Colorado as he did not represent Plaintiffs in

4    the arbitration enforcement in California.  Smith did not establish a substantial connection with

5    California.  Accordingly, the Court finds that Smith did not purposefully avail himself of the

6    privilege of conducting activities in California.

7                    **b.   The Court need not reach the remaining specific jurisdiction prongs.**

8            Because Plaintiffs' arguments fail under the purposeful availment prong, the Court need

9    not reach the remaining prongs.  *See Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the

10   first step, the jurisdictional inquiry ends and the case must be dismissed."); *Pebble Beach Co.*, 453

11   F.3d at 1155 (holding that the court "need not address whether the claim arose out of or resulted

12   from [the defendant's] forum-related activities or whether an exercise of jurisdiction is

13   reasonable…"); *see Soelect, Inc. v. Hyundai Motor Co.*, No. 23-cv-05405-CRB, 2024 WL

14   4293911, at *9 (N.D. Cal. Sept. 24, 2024) (finding that because plaintiff did not meet the

15   purposeful direction prong, the court need not reach the reasonableness prong).

16           Accordingly, because the Court finds no purposeful availment, the Court **GRANTS**

17   Defendants' motion to dismiss for lack of personal jurisdiction.

18           **B.      The Court need not reach the issue of venue.**

19           Having found a lack of personal jurisdiction, the Court need not reach the question of

20   venue.  *See Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 987 (N.D. Cal. 2016)

21   (denying as moot the motion for dismiss for improper venue because the court granted the motion

22   to dismiss for lack of personal jurisdiction); *Prevail Legal, Inc. v. Gordon*, No. 21-cv-07173-BLF,

23   2021 WL 1947578, at *3 (N.D. Cal. May 14, 2021) (finding that because the court lacked personal

24   jurisdiction, it need not reach the arguments regarding venue).

25   **V.    CONCLUSION**

26           After careful consideration of the motion, briefs, and oral arguments, and for the reasons

27   stated above, the Court **GRANTS** with prejudice Defendants' motion to dismiss for lack of

28   personal jurisdiction.

United States District Court
Northern District of California

1          This Order resolves ECF 44.

2          **IT IS SO ORDERED.**

3   Dated: February 13, 2025

4                                                    _____
                                                     TRINA L. THOMPSON
5                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

19